# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| STEPHANIE PRICE, EMILY FITZMORRIS, KATHLEEN BATES, and PAUL SCOTT, on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>COMMISSIONER, currently Lori Shibinette, in their official capacity as Commissioner of the New Hampshire Department of Health and Human Services; and NEW HAMPSHIRE DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>　　　　　Defendants. | Case No. 1:21-cv-00025<br><br><br>**CLASS ACTION COMPLAINT** |

## I.　　INTRODUCTION

1.　　Plaintiffs, who are people with disabilities enrolled in New Hampshire's Choices for Independence Medicaid Waiver ("CFI Waiver"), bring this class action, on behalf of themselves and a class of similarly situated individuals, challenging the New Hampshire Department of Health and Human Services' ("NHDHHS") violation of their rights under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the Medicaid Act, and the Fourteenth Amendment to the United States Constitution.

2.　　Specifically, Plaintiffs challenge NHDHHS' failure to provide them with the community-based, long-term care services available through the CFI Waiver and for which the state has found them eligible.  These CFI services are generally less costly to administer than care in nursing facilities.

3.     NHDHHS' failure places the Plaintiffs, and others similarly situated, at risk of going into an institutional setting to secure the services that they need and should be able to get in their homes. NHDHHS' failure in this regard is all the more harmful—and potentially lethal—in the context of the COVID-19 public health crisis, which has hit the state's nursing facilities particularly hard.

4.     Defendants also are depriving the Plaintiffs of their due process rights to notice of, and an opportunity to challenge the denial of the services they need.  Plaintiffs, and the proposed class, are at grave risk of suffering deteriorating health and related complications because of their unmet needs, placing them at risk of unnecessary institutionalization.  Avoiding unnecessary segregation in hospitals and nursing facilities is precisely why the CFI Waiver program exists. *See, e.g.*, *Olmstead v. L.C ex rel. Zimring*, 527 U.S. 581, 601 (1999) (acknowledging that "[s]ince 1981, Medicaid has provided funding for state-run home and community-based care through a waiver program").

5.     The Defendants, or their contractors, have determined that each Plaintiff is eligible for nursing facility level of care, and that he or she can receive this level of care at home with appropriate supports and services.  As such, Plaintiffs have two options for receiving the long-term care services that they require: community-based CFI Waiver services or institutional care in nursing facilities.  Defendants' failure to provide Plaintiffs the CFI Waiver services for which they are eligible with reasonable promptness, or at all, violates the Plaintiffs' rights under the Medicaid Act.

6.     Defendants' failure to provide Plaintiffs the CFI Waiver services that they need places Plaintiffs in danger.  The CFI Waiver services that Plaintiffs have been assessed to need but have not received include a range of community-based long-term care services.  These services are essential for Plaintiffs' physical and mental well-being.  Without adequate and consistently-

delivered CFI Waiver services and supports, Plaintiffs often are placed in precarious situations that that can precipitate medical and psychosocial crises for Plaintiffs and can, in turn, make it necessary for them to seek emergency care in hospitals and/or longer-term care in nursing facilities.

7.      Each of the named Plaintiffs desperately desires to remain in their communities and does not want to be institutionalized.  This is precisely why each of the named Plaintiffs sought CFI Waiver services.

8.      In its landmark decision interpreting the Title II of the ADA, *Olmstead v. L.C. ex rel. Zimring*, the Supreme Court determined that the unnecessary institutionalization of people with disabilities is per se discrimination.  527 U.S. at 597, 601.  The Court found that states must rectify such discrimination except in the narrow circumstance when doing so would be unreasonable, because the state would have to fundamentally alter its programs and services.  *Id*., 527 U.S. at 604-06.  On information and belief, NHDHHS's implementation of the relief requested here would not fundamentally alter New Hampshire's programs and services.

9.      The *Olmstead* decision "reflects two evident judgments."  First, "institutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life."  *Id*., 527 U.S. at 600-01.  Second, "confinement in an institution severely diminishes the everyday life activities of individuals, including family relations, social contacts, work options, economic independence, educational advancement, and cultural enrichment." *Id*.

10.      Moreover, as the COVID-19 public health crisis has made clear, institutionalization places people with disabilities at a heightened risk of serious illness and death. With over eighty percent of New Hampshire's COVID-19-related deaths occurring in nursing facilities, unnecessary

institutionalization of New Hampshire residents who can be served in their home communities is not only costly, it is deadly. *See* New Hampshire Dep't of Health and Human Services, COVID-19 Dashboard (Dec. 20, 2020), https://www.nh.gov/covid19/documents/case-summary.pdf; *see also* Mark Hayward, "New Hampshire Ranks No. 1 – in Covid-19 Nursing Home Deaths," *New Hampshire Union Leader*, Dec. 26, 2020, https://www.unionleader.com/news/health/coronavirus/new-hampshire-ranks-no-1----in-covid-19-nursing-home-deaths/article_e0c58f5e-f6c1-5e9e-bdaa-7b2ac059c753.html.

11.     The administrative and service failures, and persistent workforce shortages, which place Plaintiffs at risk of institutionalization, are not recent developments unknown to NHDHHS officials.  New Hampshire officials have, in fits and starts, examined some of the problems plaguing the administration of the CFI Waiver.  Yet, they have consistently failed to address them. As a result, the system's overall dysfunction has only grown as Defendants have continued to fail to deliver the services that Plaintiffs have been assessed to need.  Despite the grave conditions faced by Plaintiffs, NHDHHS officials continue to ignore Plaintiffs' preference for and right to cost-effective, integrated, community-based care in favor of more expensive institutional care.

12.     Because New Hampshire officials have failed to take action to remedy the longstanding defects in the administration of the CFI Waiver program that place Plaintiffs at risk of unnecessary institutionalization, Plaintiffs are left with no recourse but to bring this lawsuit.

13.     Through this lawsuit, Plaintiffs seek declaratory and injunctive relief on behalf of themselves and a class of similarly situated individuals who face an impermissible risk of institutionalization due to Defendants' acts or omissions. The relief Plaintiffs seek through this class action will benefit not just themselves but the defined class of similarly situated individuals

through resulting structural changes to the state's administration of the CFI Waiver program. These changes will save lives and likely even save the state money.

## II.   JURISDICTION AND VENUE

14.     This is an action for declaratory and injunctive relief for violations of Title II of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101 *et seq*.; Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794; Title XIX of the Social Security Act (the "Medicaid Act"), 42 U.S.C. § 1396a *et seq*., and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, under 42 U.S.C. § 1983.

15.     Jurisdiction is based on 28 U.S.C. §§ 1331 and 1432 for violations of 42 U.S.C. § 1983, Title II of the ADA, and the Rehabilitation Act.

16.     Plaintiffs' claims for declaratory and injunctive relief are authorized under 28 U.S.C. §§ 2201-2202.  At all relevant times, Defendants have acted under the color of state law.

17.     Venue is proper in the District of New Hampshire pursuant to 28 U.S.C. § 1391(b), because Defendants operate and perform their official duties in the District of New Hampshire, and all acts and omissions giving rise to the claims in this action occurred therein.

## III.   THE PARTIES

### A.     The Individually-Named Plaintiffs

18.     Stephanie Price is 34 years old and lives in New Hampshire.

19.     Emily Fitzmorris is 36 years old and lives in New Hampshire.

20.     Kathleen Bates is 59 years old and lives in New Hampshire.

21.     Paul Scott is 69 years old and lives in New Hampshire.

22.     The four individually-named Plaintiffs represent a class of similarly situated individuals, defined, in Paragraph 122 below, as persons who, during the pendency of this lawsuit, have been placed at risk of unnecessary institutionalization because the Defendants, by act or

omission, have failed to provide them the community-based long-term care services through the CFI Waiver program for which they have been found eligible and assessed to need (the "Plaintiff Class").

    **B.    The Defendants**

23.    Defendant Commissioner of the New Hampshire Department of Health and Human Services ("NHDHHS"), a state agency which receives federal funds, is currently Lori Shibinette. The Commissioner is therefore a public agency director responsible for operation of a public entity pursuant to 42 U.S.C. §§ 12131(1)(A) and (B).  The NHDHHS Commissioner oversees New Hampshire's Medicaid programs, including its CFI Waiver. The Commissioner has authorization and responsibility for implementing a comprehensive and coordinated system of CFI Waiver services to ensure that New Hampshire residents enrolled in the CFI Waiver receive the services to which they are entitled, and to ensure that the CFI Waiver is administered in a manner that complies with federal law.  The Commissioner also is responsible for ensuring that the administrative methods that the state employs to operate the CFI Waiver program comply with federal law.  The Commissioner likewise is authorized to and responsible for implementing NHDHHS's hearing and appeals process; as such she is responsible for ensuring that CFI Waiver participants receive notice and an opportunity for a fair hearing when CFI Waiver services are denied, terminated or reduced.  *Cf.* N.H. RSA 126-A:5, VIII; N.H. Admin. Rule He-C 201.05.  The NHDHHS Commissioner is sued in their official capacity.

24.    Defendant NHDHHS is the state's single state Medicaid agency which receives federal funding under the Medicaid Act and is responsible for administering New Hampshire's Medicaid programs, including the CFI Waiver, in compliance with the Medicaid Act.

25.     The Defendants are each responsible for ensuring that Plaintiffs and Plaintiff Class members, all of whom are participants in the CFI Waiver program, receive the medically-necessary waiver services and critical procedural protections to which they are entitled under the ADA, the Rehabilitation Act, the Medicaid Act, and the Fourteenth Amendment to the U.S. Constitution.

## IV.     STATEMENT OF FACTS

### A.     New Hampshire's Choices for Independence Medicaid Waiver Program is an Alternative to Nursing Facility Level of Care.

26.     "The Medicaid Home and Community-Based Services (HCBS) waiver program is authorized in § 1915(c) of the Social Security Act.  The program permits a State to furnish an array of home and community-based services that assist Medicaid beneficiaries to live in the community and avoid institutionalization."  *See* New Hampshire Dep't of Health and Human Services, Application for § 1915(c) Home and Community-Based Services Waiver Renewal of Choices for Independence Waiver ("CFI Waiver Renewal Application") (June 21, 2017), at 1 ("Purpose of the HCBS           Waiver           Program"),           available           at https://www.dhhs.nh.gov/dcbcs/bds/documents/cfiwaiver2017.pdf.

27.     "The goal of the Choices for Independence [] Waiver, administered by [NHDHHS] [], is to support elders and adults with disabilities to live independently in the community."  *Id*. at 3.

28.     The current iteration of the CFI Waiver, approval for which was renewed by the Center for Medicare and Medicaid Services ("CMS") effective July 1, 2017 through June 30, 2022, authorizes New Hampshire to serve 3,692, 3,729, and 3,766 unduplicated participants in 2020, 2021, and 2022, respectively. *Id*. at 23 (Appendix B).  Despite these maximum limits, the CFI Waiver program serves fewer older adults and people with disabilities annually than the maximum numbers authorized.

29.     All CFI Waiver participants are categorically eligible for nursing facility level of care.   N.H. Admin. Rule He-E 801.03(a)(4)-(5).   An applicant can only satisfy the clinical eligibility requirements for admission onto the waiver if NHDHHS determines, based on a medical eligibility assessment conducted by NHDHHS personnel, that the applicant meets criteria for the nursing facility level of care set forth in New Hampshire's regulations.  *Id.*; N.H. Admin. Rule He-E 801.03(4)-(6).

30.     NHDHHS's enrollment of an individual in the CFI Waiver reflects not only its determination that the individual requires nursing facility level of care, but also its determination that with CFI Waiver services the individual can be safely and adequately served in an integrated, community-based setting.

31.     The signing and submission of a CFI Waiver application constitutes an expression of the applicant's choice to receive CFI Waiver services as an alternative to institutional care.  N.H. Admin. Rule He-E 801.03(a)(7).

**B.      NHDHHS Administers the CFI Waiver in a Way that Discriminates Against Plaintiffs and the Plaintiff Class, Denies Them Reasonably Prompt Services, and Fails to Give Them Due Notice of Service Failures.**

  **1.      *Defendants provide CFI Waiver services based on available provider capacity rather than participants' assessed service needs*.**

32.     Defendants have failed to provide Plaintiffs and Plaintiff Class members CFI Waiver services for which they are eligible in the amount and with the frequency that they have been assessed to need.

33.     Rather than promptly receiving needed services following their enrollment in the CFI Waiver program, Plaintiffs and Plaintiff Class members suffer protracted delays in the onset of all or part of their waiver services, frequent interruptions in their waiver services, and/or the

unexpected cessation of their waiver services (collectively referred to hereinafter as "Service Gaps").

34.     Defendants' chronic failure to provide CFI Waiver services to the participants who need them stems, in part, from New Hampshire's longstanding and well-documented shortage of available service providers.  *See, e.g.*, New Hampshire Fiscal Policy Institute, Medicaid Home- and Community-Based Care Service Delivery Limited By Workforce Challenges (Mar. 15, 2019), http://nhfpi.org/research/health-policy/medicaid-home-and-community-based-care-service-delivery-limited-by-workforce-challenges.html ("Choices for Independence Medicaid Waiver services are often delivered in the homes of those in need, but provider agencies struggle to supply services when they have too few workers to deliver them."); Governor's Comm'n on Health Care and Community Support Workforce, Report to Governor Hassan: Recommendations on Health Care and Community Support Workforce (Dec. 16, 2016), https://www.nhbr.com/content/uploads/data-import/e8159973/hc-20161216-recommendations.pdf.

35.     New Hampshire's shortage of service providers has limited the delivery of certain types of CFI Waiver services more than others.  For example, the shortage of personal care, home health aide, and homemaker service providers is particularly acute.

36.     The critical lack of service providers results, in part, from the state's failure to set adequate rates for CFI Waiver services relative to the compensation provided to nursing facilities and other competing businesses.  *Cf.* Governor Christopher T. Sununu, My Turn: Gov. Sununu on Medicaid Rates and the Budget, Concord Monitor: Opinion (Aug. 20, 2019), https://www.concordmonitor.com/Sununu-budget-NH_-27773073;   Governor   Christopher   T.

Sununu, 2017 Budget Address (Feb. 9, 2017), available at https://www.governor.nh.gov/news-and-media/2017-budget-address.

37.    Yet Defendants have also failed to take reasonable non-monetary measures to increase the number of available CFI Waiver service providers.  Developing an adequate number of service providers requires active efforts to recruit, train, and place would-be providers.  Other health care professionals in New Hampshire have recognized the need for active recruitment of service providers and have sought and obtained the resources necessary to do so.  *See, e.g.*, NH Needs Caregivers!: New Hampshire LNA Training Initiative, https://nhneedscaregivers.org/about/ (last visited Nov. 12, 2020) (initiative of New Hampshire Health Care Association which sought and obtained a CMS grant of $641,000 to recruit, assist, and place licensed nurse assistants in nursing facilities across the state).

38.    Absent an adequate number of CFI Waiver service providers and/or reasonable efforts by Defendants to accurately identify, manage and/or fill Service Gaps, Plaintiffs and Plaintiff Class members receive services based on the available, underdeveloped supply rather than their manifest, assessed need.  New Hampshire's supply-driven CFI Waiver system ignores Plaintiffs' and Plaintiff Class members' actual need; participants receive services if, when, and only to the extent that an available provider can be identified.  As a result, Plaintiffs and Plaintiff Class members do not receive CFI Waiver services in the amount that they need to remain safely in their homes; nor do they receive such services with the predictability and regularity necessary to prevent dangerous conditions that place them at risk of unnecessary institutionalization.

### 2.    *Defendants fail to monitor whether CFI participants are receiving the CFI Waiver services that participants have been assessed to need.*

39.    Notwithstanding abundant, publicly-available reports of the grave shortage of service providers for CFI Waiver services, Defendants do not actively monitor or otherwise

attempt to systematically and accurately quantify the discrepancy between Plaintiffs' and Plaintiff Class members' assessed service needs and the CFI Waiver services, if any, that they actually receive.

40.     Upon information and belief, Defendants do not solicit reports from CFI Waiver case managers on the nature or magnitude of the unmet service needs of CFI Waiver participants. While New Hampshire administrative rules require CFI Waiver case managers to perform periodic reviews of participants' unmet service needs and to devise plans to remediate those needs, there is no requirement or mechanism for CFI Waiver case managers' reporting of this information to NHDHHS officials.  *Cf.* N.H. Admin. Rule He-E 805.10.

41.     Moreover, because NHDHHS fails to monitor or assess any discrepancy between the assessed service needs of CFI Waiver participants and the waiver services that are delivered, it cannot accurately perform the program integrity evaluations or utilization reviews required by federal and state regulations.  *Cf.* 42 C.F.R. §§ 455 & 456; N.H. Admin. Rule He-E 801.32. This failure also means that NHDHHS cannot address such discrepancies for program participants.

42.     Defendants should collect accurate information regarding Plaintiffs' and Plaintiffs Class members' assessed and unmet service needs through several means.  For example, with relatively modest effort, Defendants could collect comprehensive, timely, and actionable information regarding the discrepancy between CFI Waiver participants' assessed service needs and those that they have actually received through state's own electronic information management and service authorization systems, New Hampshire EASY Gateway to Services and/or New Heights, or through some other reporting mechanism.

43.     By failing to do so, Defendants have declined to collect the very information that would allow them to monitor the shortcomings of the CFI Waiver service delivery system, quantify

the magnitude of Plaintiffs' and Plaintiff Class members' unmet service needs, and meaningfully

seek to address those unmet needs.

      **3.**      ***Even when NHDHHS officials have been advised of CFI Waiver Service Gaps, they have failed to take reasonable action to address them.***

44.      Despite their failure to timely demand, collect, and assess information about service

discrepancies, Defendants do have some material information about critical inadequacies in CFI

Waiver services.  Notwithstanding the availability of such information, Defendants have failed to

take reasonable action to address those inadequacies or otherwise manage the CFI Waiver program

in ways that minimize the risk of harm to CFI Waiver participants who are not receiving the

services that they need.

45.      NHDHHS's data on its payment of claims for authorized CFI Waiver services (*i.e.*,

reimbursements to providers for service delivery) during state fiscal years 2018 and 2019 reflect

significant discrepancies between CFI Waiver services for which payment was authorized, and

those services that were actually delivered and paid.  Defendants authorized payment for 1.3

million more quarter-hour units of agency-directed personal care services in 2018 than were

actually delivered and paid for.  The discrepancy between authorized and paid units for agency-

directed personal care services increased to 1.7 million in 2019.  *See* New Hampshire Department

of Health and Human Services, "CFI Service Authorizations Prorated, with Dates of Service in

SFY2018 and 2019, and including claims paid against authorizations through 2/29/2020" (public

record maintained by NHDHHS available upon request).  NHDHHS paid claims for only 55

percent of authorized home health aide (per visit) service authorizations in state fiscal years 2018

and 2019.  *Id*.

46.      The discrepancies between service payments authorized and claims paid against

those authorizations in State Fiscal Years 2018 and 2019, as significant as they are, underrepresent

the unmet needs of CFI Waiver participants for waiver-based services.  NHDHHS's data do not accurately reflect the services – in the amount and frequency – that CFI Waiver participants were assessed to need but for which no payment authorization was submitted through the state's electronic information management and service authorization system because no service provider was available to deliver the service.

47.     As shown by the unmet need reflected in NHDHHS's CFI Waiver program data, Defendants have long failed to administer the CFI Waiver program in a manner that maximizes its capacity to meet the assessed service needs of Plaintiffs and Plaintiff Class members.

48.     For example, despite the workforce shortage and its impact on the delivery of CFI Waiver services, Defendants have failed to develop and operationalize an adequate infrastructure for self-directed care that would enable CFI Waiver participants to locate and engage service providers for the waiver services that they need in an efficient manner.

49.     Defendants likewise have failed to ensure that the CFI Waiver program's resources are efficiently and effectively deployed to meet the needs of Plaintiffs and Plaintiff Class members to the greatest extent possible.  The administration of the CFI Waiver is rife with policies and procedures that are not uniformly implemented and/or overseen; unclear directives to case management and service provider agencies; and the failure to develop a coherent and effectively working system for assessments, service authorizations, care planning, and service delivery.  The net effect of these administrative failures on CFI Waiver participants who do not receive needed services is immense.

50.     Even amid the public health crisis posed by COVID-19 (and despite the high infection and fatality rates in New Hampshire's nursing facilities), Defendants have failed to ensure that CFI Waiver participants receive vital services that would help to avert the need for

unnecessary and potentially dangerous or even deadly hospitalization and/or nursing facility placements.

> **4.** ***Defendants' Systematic Failure to Provide (1) Notice of the Denial, Termination, or Reduction of Services and (2) an Opportunity to Challenge Same in a Fair Hearing Deprives Plaintiffs and Plaintiff Class Members of the Ability to Contest Their Non-Receipt of Those Services.***

51.     NHDHHS and the Commissioner have an affirmative and non-delegable duty to administer the CFI Waiver program in a manner that ensures that CFI Waiver participants receive the services that they have been assessed to need or to provide participants notice of the denial, termination, or reduction of those services and an opportunity to appeal that denial.  Defendants often fail to provide notice of the right to appeal.

52.     Once a CFI Waiver participant's case manager assesses the participant's service needs and prepares the participant's care plan as set forth in Section V.D below, the case manager must request authorization from NHDHHS to pay for the services in the care plan for which a provider is available, and can, but is not required to, submit an authorization for services for which no provider is available.  *See* N.H. Admin. Rule He-E 801.05(b).

53.     NHDHHS and the Commissioner must ensure that all services requested for a CFI Waiver participant are reviewed and either authorized or denied.  N.H. Admin. Rule He-E 801.06(a).  "When the service authorization does not include all the services requested, the applicant or participant shall be sent a notice, including [t]he requested service; [t]he authorized service; [a] statement regarding the reason and the legal basis for the denial; and [i]nformation concerning the applicant's right of appeal pursuant to He-C 200. . ."  N.H. Admin. Rule He-E 801.06(d); *see also* N.H. Admin. Rule He-E 801.06(e)-(g) (providing for an applicant or participant's right to request reconsideration of the service authorization and appeals of same).

54.     NHDHHS and the Commissioner likewise have a duty to provide CFI Waiver participants notice of the reduction or termination of CFI Waiver services for which they have been approved.  N.H. Admin Rule He-E 801.07(e)(2).

55.     When a case management agency is unable to secure a provider to deliver some or all of the services that a CFI Waiver participant needs, the practical effect of the failure to deliver the service is to deny the participant services or otherwise reduce the services provided.  When services are effectively denied or reduced, however, Plaintiffs and Plaintiff Class members are not provided any notice of the denial of or reduction in services, nor are they provided an opportunity to seek redress for that denial or reduction.

56.     Defendants' failure to provide CFI Waiver participants notice of the denial of or reduction in the amount of their services due to provider unavailability results largely from the structural defects in the CFI Waiver program.  Indeed, NHDHHS routinely issues notices of decision when an individual is found ineligible for the CFI Waiver program or it decides to reduce or terminate services that a CFI Waiver participant is receiving for reasons unrelated to service provider unavailability.  But when NHDHHS fails to deliver services due to provider unavailability, no such notice is issued to the CFI Waiver participant.

57.     NHDHHS' failure to provide CFI Waiver participants notice of their right to contest the denial, reduction, or termination of their waiver services denies participants the ability to request a hearing and a continuation of services pending the completion of the hearing.  CFI Waiver participants are thus deprived of the ability to challenge the denial, reduction or termination of services and the service-related safeguards that accompany their right to a fair hearing regarding their CFI Waiver services.  N.H. Admin Rule He-E 801.07(e)(2)(c).

15

58.     NHDHHS and the Commissioner thus systematically fail to provide Plaintiffs and Plaintiff Class members the procedural due process—specifically, notice of NHDHHS's decisions regarding service requests and their right to appeal that decision—to which participants are entitled under the United States Constitution and the Medicaid Act.

### C.     Defendants' Failures Harm Plaintiffs and Plaintiff Class

**1.     *Defendants' Failure to Provide Plaintiffs and Plaintiff Class Members CFI Waiver Services Places Them at Risk of Unnecessary Institutionalization.***

59.     Defendants' failure to provide Plaintiffs and Plaintiff Class members all or part of the CFI Waiver services that they need, and for which they are eligible, places them at risk of unnecessary institutionalization.

60.     Defendants have determined, based on their clinical assessment of Plaintiffs' and Plaintiff Class members' physical and mental condition, that they qualify for nursing facility level of care, and that they can safely receive this level of care through home- and community-based services.  Plaintiffs and Plaintiff Class members are therefore eligible for medically-necessary long-term care services, and can obtain those services in their homes and communities through the CFI Waiver or in institutional settings, including nursing facilities.

61.     Plaintiffs and Plaintiff Class members have chosen to receive the medically-necessary long-term care services that they need in their homes and communities through the CFI Waiver.

62.     Plaintiffs and Plaintiff Class members need CFI Waiver services, such as personal care, home health aide, and homemaker services, to live safely in the community.  These services enable Plaintiffs and Plaintiff Class members to navigate essential activities of daily living (*e.g.*, transferring from bed to chairs, toileting, bathing, meal preparation and consumption, medication

management, and light housekeeping that eliminates the clutter that can create fall risks) without needing to enter nursing facilities to obtain this vital support.

63.     Indeed, studies have confirmed that the use of home health services delays the need for nursing facility entry for older adults.  *See, e.g*., Y. Young, J. Kalamara, L. Kelly, *et al*., *Is Aging in Place Delaying Nursing Home Admission?*, 16 J. Am. Med. Dir. Assoc. e901-e906 (2015).

64.     In order for Plaintiffs and Plaintiff Class members to remain safe and stable in their community, however, they must receive the CFI Waiver services that they need – in the amount and with the frequency that they need them, reliably and without interruption.  Although Plaintiffs and Plaintiff Class members may also be eligible for and/or receiving other services outside of the CFI Waiver program, the availability of those services does not eradicate the risk of institutionalization arising from CFI Waiver Service Gaps.

65.     Defendants' failure to provide Plaintiffs and Plaintiff Class members the CFI Waiver services that they need, and their failure to ensure that those services are provided reliably, places Plaintiffs and Plaintiff Class members at risk of the physical deterioration and medical and psychosocial crises that can result from the failure to consistently manage their medical and psychosocial conditions.

66.     For example, when Plaintiffs and Plaintiff Class members do not receive the personal care or home health services that they need, they can suffer dangerous falls, broken bones, medication errors, dehydration, skin breakdowns, infections, and malnutrition, all of which are recognized contributors to the need for acute medical care in hospitals.  Indeed, most short- and long-term nursing facility stays follow hospitalization rather than direct entry from the resident's home. *See, e.g*., Young, *et al*., *Aging in Place*, 16 J. Am. Med. Dir. Assoc., at 131; *see also* Rachel

M. Werner, Norma B. Coe, Mingyu Qi, and R. Tamara Konetzka, *Patient Outcomes After Hospital Discharge to Home with Home Health Care vs. to a Skilled Nursing Facility*, 179(5) JAMA Intern. Med. 617-23 (2019) (Of 17,235,854 hospitalizations reviewed in study of Medicare claims data, 61.2% of hospitalized individuals were discharged to a skilled nursing facility during study period).

67.     As importantly, when Plaintiffs and Plaintiff Class members receive fewer CFI Waiver services than they need, or receive services intermittently or inconsistently, they often face precarious living and health conditions that can trigger the same health crises that arise in the absence of any services.  As a consequence, they may require acute medical treatment and extended periods of stabilization and/or rehabilitation in nursing facilities or similar segregated settings.  For example, in the absence of adequate and consistent personal care services, Plaintiffs and Plaintiff Class members who need assistance with transfers, toileting, or meal preparation may fall or go without essential nutrition for extended periods.  In the absence of adequate and consistent homemaker services, Plaintiffs and Plaintiff Class members who struggle to walk unassisted can fall and require emergency medical care and extended rehabilitation.  Similarly, those who do not receive adequate and consistent homemaker assistance in obtaining groceries can suffer malnutrition.  Defendants' failure to provide Plaintiffs and Plaintiff Class members with the CFI Waiver services that they need, reliably and with adequate frequency and duration, places them perpetually at risk of medical and psychosocial crises that can result in their requiring institutional care.

68.     Adequate and consistently-delivered CFI Waiver services would avert the physical decline, inability to navigate essential activities of daily living safely, and preventable health crises

that Plaintiffs and Plaintiff Class members suffer in the absence of those medically-necessary CFI Waiver services and supports.

69.     Rather than administering the CFI Waiver in a manner that reliably provides the services for which Plaintiffs and Plaintiff Class members are eligible, Defendants fail to provide medically-necessary CFI Waiver services adequately and consistently, and, in so doing, leave Plaintiffs and Plaintiff Class members one avoidable crisis away from needing institutional care.

### 2.     *Impact on Named Plaintiffs*

70.     The impact that Defendants' failures have on the named Plaintiffs is typical and illustrative of the impact on the class Plaintiffs seek to represent.

### a.     Stephanie P.

71.     Stephanie is 34 years old and lives in an apartment. She has a qualifying disability and has been diagnosed with, among other things, Hypermobile Ehlers-Danlos Syndrome, Chiari Malformation/Low lying cerebral tonsils, Hypogammaglobulinemia, Mast Cell Activation Syndrome, Dysautonomia, Gastroparesis, Postural Orthostatic Tachycardia Syndrome, Neurally mediated syncope, other spinal instabilities in the C-spine and upper T-spine, Neurogenic bladder, a history of bacteremia and recurrent staphylococcus aureus infection, complex PTSD, and a variety of environmental allergies. She requires the administration of medication through a port, and uses a wheelchair for mobility. When in her home, Stephanie is usually confined to her bed or wheelchair and she is at risk for falls.

72.     Stephanie lives at home with her companion pet bird, Clover. She enjoys being involved in her community, and desires to resume work when her health issues stabilize. Stephanie wants to continue to live in her own home, regain her mobility, and avoid any short or long-term institutionalization.

73.    In September 2019, NHDHHS determined that Stephanie was eligible for the CFI Waiver, reflecting that she is eligible for nursing home level of care but able to be appropriately supported with CFI services in her home.

74.    Stephanie waited nearly a year to receive any of the personal care and homemaker CFI services she was determined to need.  Although those services just started, she is only getting a fraction of what she needs.

75.    Stephanie has not received any notice from NHDHHS advising her that services are not being provided and that she has a right to a fair hearing to seek redress.

76.    Stephanie does not have much help to address the lack of CFI services.  Her brother stops by periodically to remove her trash and her mother comes by occasionally to drop off some medications for her.  Without CFI services, Stephanie remains for long periods of time in her bed, sometimes in her own urine, and is unable to bathe, toilet, and prepare appropriate meals.

77.    As a consequence of these circumstances, Stephanie's mobility has deteriorated to the point that she now has to rely on a wheelchair.  When trying to move around her apartment without assistance, she has fallen, requiring her to call emergency services to help her get up.  In addition, over the last year, because of her inability to maintain good hygiene and be more mobile, she has developed infections in her port (and the PICC line she previously had) that required several hospitalizations, and dangerous blood clots that recently required another hospitalization. Because of the lack of services, she continues to be at risk of further institutionalization.

78.    If NHDHHS was properly managing the CFI program so that Stephanie was able to receive the services that she needs, she would be able to maintain a healthy and safe lifestyle in her home, regain some mobility and independence, and avoid the stress and harm associated with unavailable CFI services, including the ongoing risk of institutionalization.

**b.   Emily F.**

79.     Emily is a tetraplegic as a result of an accident in 2018. She is paralyzed and, although she has some gross motor functions, such as the use of her arms, she lacks fine motor skills.  She relies on a wheelchair, requires a Hoyer lift for transfers to and from her bed to her chair, and uses a specialized motorized bed to reduce the risk of pressure sores.  Emily also has a catheter and urine bag.

80.     Emily lives in her own apartment with her teenage son.  She wants to continue to live in her own home safely and with reliable services, enjoy going out into the community, and doing her own errands and shopping.  She also wants to avoid unnecessary short- or long-term institutionalization.

81.     In December 2018, NHDHHS determined that Emily was eligible for the CFI Waiver, reflecting that she is eligible for nursing home level of care but able to be appropriately supported with CFI services in her home.

82.     Other than for brief periods of time since December 2018, Emily has been without any of the 37 hours a week of personal care, homemaker, and nursing CFI services that she was determined to need.

83.     Emily has not received any notice from NHDHHS advising her that these services are not being provided and why, or that she has a right to a fair hearing to seek redress.

84.     Although she is able to get about 4-6 hours a week in VNA nursing services, Emily relies primarily on her 70-year-old mother to assist her on a daily basis with what she should be getting in CFI services.  Her mother has to help her in getting in and out of bed and into her wheelchair, taking care of laundry, cleaning, and cooking and with personal hygiene, including attending to her catheter.  Her mother has postponed hip replacement surgery for about two years

because she is Emily's primary caregiver.  When Emily's mother is unavailable, Emily has to wait until her mother can arrive or try to enlist the help of a friend.  Lack of adequate CFI services places Emily at risk of developing pressure sores and infections, and other complications, that could lead to hospitalizations.

85.     If NHDHHS was properly managing the CFI program so that she was able to receive the services that she needs, Emily would be able to maintain a healthy and safe lifestyle in her home, and avoid the stress and harm associated with unavailable CFI services, including the ongoing risk of institutionalization.

**c.     Kathleen B.**

86.     Kathleen lives in a home she rents from her parents.  She has a qualifying disability and has been diagnosed with cerebral palsy and scoliosis.  Because of her disabilities, she relies on a wheelchair and assistance for transfers in and out of her bed and chair, dressing, toileting, and bathing.   Kathleen wants to live in her own home.

87.     Kathleen is active in the community and actively advocates for people with disabilities throughout New Hampshire.

88.     In 1992, NHDHHS determined that Kathleen was eligible for the CFI Waiver, reflecting that she is eligible for nursing home level of care but able to be appropriately supported with CFI Waiver services in her home.

89.     Kathleen, however, has struggled to consistently receive the CFI services that she needs.  Currently, although she is authorized to receive over 35 hours a week in personal care services, she is only getting a few hours of services a week.

90.     Kathleen has not received notices from the NHDHHS advising her about these Service Gaps and that she has a right to a fair hearing to seek redress of such a circumstance.

91.     When service workers are not available, Kathleen must choose between lying in her bed and going without food or water or calling her friend who has a limited ability to assist. These circumstances jeopardize Kathleen's health, putting her in jeopardy of developing infection, sores and/or falling and at serious risk of being institutionalized.

92.     If NHDHHS was properly managing the CFI Waiver so that she was able to receive the services that she needs, Kathleen would be able to maintain a healthy and safe lifestyle in her home and avoid the stress and harm associated with unpredictable and unavailable CFI services and the risk of institutionalization.

### d.     Paul S.

93.     Paul is 69 years old and resides in a home that he owns. He has a qualifying disability, having broken his neck approximately 11 years ago and become paralyzed from the neck down.  Paul has severe atrophy of his hands, uses a colostomy bag and catheter, and relies on a wheelchair for mobility and a Hoyer lift for transfers.  He needs assistance with transfers, bathing, dressing, toileting, cleaning, and emptying the colostomy bag and changing the catheter on a daily basis.

94.     Until recently, Paul worked part-time at an antique store.  While his outside activities have been curtailed due to the pandemic, he enjoys bird watching.  Paul desires to remain in his own home and avoid short- or long-term institutionalization.

95.     In April 2011, NHDHHS determined that Paul was eligible for the CFI Waiver, reflecting that he is both eligible for nursing home level of care and able to be appropriately supported with CFI services in his home.

96.     Paul, however, routinely receives far fewer services than he needs.  Currently, he needs 40 hours of personal care services, but is not getting any of these services.

97.     Paul has not received any notice from NHDHHS advising him that services are not being provided and that he has a right to a fair hearing to seek redress.

98.     When services are not provided, Paul relies on friends for assistance or he goes without services.  When he is without services, he is confined to his bed and unable to attend to his colostomy bag or other daily needs.  As a consequence, he is prone to developing pressure sores and infections, leading to hospitalizations that could have been avoided.  Without services he remains at risk of further institutionalization.

99.     If NHDHHS was properly managing the CFI program so that he was able to receive the services that he needs, Paul would be able to maintain a healthy and safe lifestyle in his home, and avoid the stress and harm associated with unavailable CFI services, including the ongoing risk of institutionalization.

## V.      STATUTORY AND REGULATORY FRAMEWORK

### A.      The Requirements of the Americans with Disabilities Act, the Rehabilitation Act, and Their Implementing Regulations.

100.     In enacting the ADA, Congress sought to end the unnecessary segregation and institutionalization of people with disabilities and their resulting lack of full participation in and access to community services and activities.  It found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination continue to be a serious and pervasive social problem."  42 U.S.C. § 12101(a)(2).

101.     Regulations promulgated to implement Title II of the ADA thus require New Hampshire to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d) (1991). This regulation embodies the "integration mandate" that has long been recognized and enforced by federal courts, including this one.  The hallmark of an "integrated setting" is that it "enables

24

individuals with disabilities to interact with nondisabled persons to the fullest extent possible." 28 C.F.R. Pt. 35, App. B.

102.     The United States Supreme Court's *Olmstead* decision held that unnecessary institutionalization of individuals with disabilities is a form of discrimination under Title II of the ADA.  527 U.S. at 597, 601.  In so holding, the Supreme Court interpreted the ADA's "integration mandate" as requiring persons with disabilities to be served in the community when: (1) the state determines that community-based treatment is appropriate; (2) the individual does not oppose community placement; and (3) community placement can be reasonably accommodated.  527 U.S. at 607.

103.     The ADA's prohibition of unnecessary institutionalization applies equally to those who are improperly institutionalized and those who are at risk of unnecessary institutionalization. *See Kenneth R. ex rel. Tri-County CAP, Inc./GS v. Hassan*, 293 F.R.D. 254, 260 (D.N.H. 2013) ("The Court accepts the [at risk of institutionalization] theory as viable."); *see also Pashby v. Delia*, 709 F.3d 307, 322 (4th Cir. 2013); *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1181 (10th Cir. 2003).

104.     Under the ADA, a state's determination that community-based treatment is appropriate for an individual is a clinical finding.  If the state's medical personnel determine that the medical and support needs of a person with a disability can safely be met in the community, then the state must provide access to services in the community.  As long as the individual does not oppose community placement and a community placement can be accommodated, the state has a duty to provide that person services in a community-based, non-institutional setting.  *See Olmstead*, 527 U.S. at 602, 607.

105.    The ADA implementing regulations require New Hampshire to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, including segregation, unless it can demonstrate that making the modifications would fundamentally alter the nature of its services or programs. 28 C.F.R. § 35.130(b)(7); *Olmstead*, 527 U.S. at 603-06.

106.    The regulations implementing Title II of the ADA also prohibit states from utilizing "criteria or methods of administration" that have the effect of subjecting individuals with disabilities to any form of discrimination prohibited by the ADA, including segregation.  28 C.F.R. § 35.130(b)(3).

107.    Specifically, regulations implementing Title II of the ADA provide that "[a] public entity may not, directly or through contractual or other arrangements, utilize criteria or other methods of administration: (i) that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; [or] (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the entity's program with respect to individuals with disabilities."  28 C.F.R. § 35.130(b)(3).

108.    Section 504 of the Rehabilitation Act, on which the ADA is modeled, provides comparable protections against disability discrimination by recipients of federal funds, such as Defendants in this action.  The Rehabilitation Act requires recipients of federal funds to provide services to persons with disabilities in the most integrated setting.  29 U.S.C. § 794(a) (prohibiting discrimination on the basis of disability); 28 C.F.R. § 41.51(a) ("No qualified handicapped person, shall, on the basis of handicap, be . . . subjected to discrimination under any program or activity that receives or benefits from federal assistance."), (d) ("Recipients shall administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped

persons."); 45 C.F.R. § 84.4(b)(2) (services must be in "most integrated setting appropriate to the person's needs").   The Rehabilitation Act also makes it a violation of the Act to use methods of administration that subject individuals to discrimination.  28 C.F.R. § 41.51(b)(3) (a recipient of federal funds may not, directly or through contractual or other arrangements, utilize criteria or methods of administration that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap); 45 C.F.R. § 84.4(b)(4) (recipient of federal funds may not, directly or through contractual or other arrangements, utilize criteria or methods of administration that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap).

> **B.**    **The Medicaid Act Requires That Medicaid Waiver Services Be Delivered with Reasonable Promptness.**

109.    The Medicaid program is jointly operated and funded by the federal government and participating states to provide medical assistance and medically-necessary supportive services to, *inter alia*, low-income individuals with disabilities.  42 U.S.C. §§ 1396-1396v.  Once a state chooses to participate, it must operate its Medicaid program in compliance with federal statutory and regulatory requirements.  42 U.S.C. § 1396a.  New Hampshire has elected to participate in Medicaid, and, therefore, must comply with the requirements of the federal Medicaid Act and its implementing regulations.  New Hampshire's submission and CMS' approval of the CFI Medicaid waiver further requires the state to comply with all regulations that govern waiver administration.

110.    The Medicaid Act and its implementing regulations require NHDHHS to provide medical assistance to Medicaid beneficiaries, including CFI Waiver participants, with reasonable promptness.  42 U.S.C. § 1396a(a)(8); 42 C.F. R. § 435.930(a)-(b).

111.    CFI Waiver services are medical assistance under the Medicaid Act.

112.    Section 1983 entitles Plaintiffs to enforce these requirements.

27

**C.     The United States Constitution and the Medicaid Act Require that CFI Waiver Participants Be Afforded Due Process.**

113.    The Medicaid Act and its implementing regulations require NHDHHS to provide CFI Waiver participants written notice of its decision to deny, reduce, or terminate waiver services and an opportunity to challenge same in fair hearing.  *See* 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.00 *et seq*.  This notice must contain a statement of what action NHDHHS intends to take and the effective date of the action, a clear statement of the specific reasons supporting the intended action, the specific regulations that support the action, and the individual's right to request a hearing to address matters pertaining to the denial of or reduction in services.  42 C.F.R. § 431.210.  NHDHHS also must schedule a hearing when requested by a beneficiary in connection with a change in the amount or type of benefits or services.  42 C.F.R. § 431.220.  Notice and a hearing are required also when the practical effect of an indefinite delay in services is a denial or reduction of the same.  A CFI Waiver participant's request for a fair hearing regarding the denial or reduction of services also triggers a stay of the state's ability to terminate or reduce services pending the conclusion of the hearing.

114.    Constitutional due process requirements mandate that Defendants provide meaningful notice of adverse actions regarding CFI Waiver services and an opportunity for CFI Waiver participants to be heard regarding same.

**D.     The CFI Waiver Program**

115.    The services provided to participants through the CFI Waiver constitute medical assistance under the Medicaid Act.  CFI Waiver services include adult day health/adult medical day services, home health aide, homemaker, personal care, respite, adult family care, adult in-home services, community transition services, environmental accessibility services, home-delivered meals, non-medical transportation, and participant directed and managed services,

personal emergency response system, residential care facility services, skilled nursing, specialized medical equipment, and supportive housing services.  *See* N.H. Admin. Rule He-E 801.12(b).

116.    The services New Hampshire delivers through the CFI Waiver are a cost-effective means of supporting older adults and people with disabilities in integrated settings.  In its 2017 CFI Waiver renewal application, NHDHHS assured CMS (as it was required to do) that the aggregate cost of providing waiver-based services to CFI Waiver participants in the community would not exceed the cost of providing them nursing facility care under the Medicaid state plan. *See* CFI Waiver Renewal Application, at 5 (Average Per Capita Expenditures); Appendix J (demonstration of cost-neutrality).

117.    Moreover, NHDHHS has determined, for each CFI Waiver participant, that the cost of providing medically-necessary CFI Waiver services in a community-based setting is "the same as, or lower than, the Medicaid cost of nursing facility services."  N.H. Admin. Rules He-E 801.03(a)(6), 801.04(b) (cost neutrality determination by registered nurse employed or designated by the Department), He-E 801.09 (cost comparison).

118.    Once NHDHHS enrolls an individual in the CFI Waiver program, New Hampshire regulations direct NHDHHS to assign the individual to a case management agency.  The assigned case management agency is required to conduct a comprehensive assessment of the CFI Waiver participant's needs and prepare a person-centered comprehensive care plan for that participant. *See* N.H. Admin. Rule He-H 801.05.

119.    While each CFI Waiver participant's comprehensive care plan must be developed based on the participant's specific care needs, and these needs reflect informal supports provided by family members, friends, and other community-based resources, the Medicaid Act and its implementing regulations preclude the state from conditioning the determination of a CFI Waiver

participant's eligibility for or receipt of supportive services on the presence or absence of informal supports. *See, e.g.*, 42 C.F.R. 441.301(c)(2)(v) (any natural supports must be voluntarily rendered).

120. NHDHHS does not deliver case management or other CFI Waiver services directly. It contracts with case management and other service provider agencies to deliver CFI Waiver services to CFI Waiver participants.

121. New Hampshire law provides that CFI Waiver participants who are aggrieved by NHDHHS decisions or actions are entitled to written notification of such decision or action and an opportunity to file an appeal. *See* N.H. Admin. Rules He-C 203.01 *et seq*. NHDHHS's administrative rules require that notices be sent to any applicant for or recipient of CFI Waiver services whose request is denied. The required notice must include a statement regarding the reasons for and legal basis of the denial and information about the applicant's or participant's right to appeal the denial. N.H. Admin. Rule He-E 801.04(e). Similarly, when service authorizations do not include all services that a CFI Waiver participant has requested, NHDHHS is required to notify the applicant or participant of the same along with a statement regarding the reason for and legal basis of the denial of services and information about the individual's right to appeal the denial, including by providing an explanation of why the missing services should be provided. N.H. Admin Rule He-E 801.06(d) and (e). Similar rights to notice and an opportunity to be heard apply on participants' redetermination of eligibility and reauthorization of services. *See* N.H. Admin. Rule He-E 801.07(e).

## VI.   CLASS ALLEGATIONS

122. Pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, the individually-named Plaintiffs bring this action on behalf of themselves and a class of similarly

situated individuals.  In particular, Plaintiffs seek to represent a class of people who, during the pendency of this lawsuit, have been placed at risk of unnecessary institutionalization because the Defendants, by act or omission, have failed to provide them the community-based long-term care services through the CFI Waiver program for which they have been found eligible and assessed to need (the "Plaintiff Class").

123.    The Plaintiff Class is so numerous that joinder of all members is not practicable. Upon information and belief, the Plaintiff Class consists of hundreds or even thousands of the approximately 3,500 individuals that New Hampshire is authorized to serve through the CFI Waiver annually.   CFI Waiver Service Gaps make many current CFI Waiver participants vulnerable to crises which place them at risk of institutionalization on any given day.  Moreover, the Plaintiff Class is likely to expand during the pendency of this action as more persons are deemed eligible for and assessed to need CFI Waiver services, but are denied reasonably prompt provision of some or all of those services, without adequate due process, and as a result, face an impermissible risk of institutionalization.  Joinder also is not practicable because membership in the Plaintiff Class is not static, class members likely lack the requisite knowledge and financial means to maintain individual actions, and class members are geographically dispersed throughout the state.

124.    Common questions of law and fact that are central to the claims of Plaintiffs and Plaintiff Class members include, but are not limited to, the following:

a.        Whether Defendants administer their programs and services in a manner that causes them to fail to provide Plaintiffs and Plaintiff Class members CFI Waiver services that they have been assessed to need;

b.      Whether Defendants' failure to provide the services that the Plaintiffs and Plaintiff Class members need and for which they are eligible places them at risk of institutionalization in violation of the ADA and Rehabilitation Act;

c.      Whether Defendants' failure to provide Plaintiffs and Plaintiff Class members CFI Waiver services that they have been assessed to need, entirely or for protracted periods of time, constitutes a failure to deliver CFI Waiver services with reasonable promptness in violation of the Medicaid Act;

d.      Whether Defendants' failure to monitor the delivery of services to CFI participants to identify gaps between CFI Waiver services that Plaintiffs and Plaintiff Class members have been assessed to need and CFI Waiver services that they receive constitutes a method of administering the CFI Waiver that violates the ADA and the Rehabilitation Act;

e.      Whether Defendants' failure to address gaps between CFI Waiver services that Plaintiffs and Plaintiff Class members are assessed to need and those that they receive constitutes a method of administering the CFI Waiver program that violates the ADA and the Rehabilitation Act;

f.      Whether Defendants' failure to provide Plaintiffs and Plaintiff Class members notice of NHDHHS's effective denial, reduction, or termination of CFI Waiver services that they have been assessed to need, and an opportunity to challenge that denial, reduction, or termination in a fair hearing, constitutes a denial of due process in violation of the Fourteenth Amendment to the U.S. Constitution and the Medicaid Act.

125.    Additionally, this class action satisfies the commonality requirement because the prosecution of separate actions by Plaintiffs and individual members of the Plaintiff Class would

create a risk of inconsistent or varying decisions, establishing incompatible rules of law for the provisions of services to people with disabilities served by the CFI Waiver program.

126.    Plaintiffs' claims are typical of those of the members of the Plaintiff Class in that Plaintiffs are persons with disabilities enrolled in the CFI Waiver program who are not receiving the waiver services for which they are eligible, at all or with reasonable promptness, and who have not received adequate notice of the denial, termination, or reduction of their CFI Waiver services nor an opportunity to challenge same, and are at risk of unnecessary institutionalization as a result of Defendants' failure to provide them the waiver services for which they are eligible. Plaintiffs' claims and those of the Plaintiff Class arise from the same systematic, unlawful, and discriminatory policies and practices of Defendants. The relief Plaintiffs seek will inure to the benefit of all class members equally.

127.    Plaintiffs will fairly and adequately protect the interests of the class. The named Plaintiffs will vigorously represent the interests of unnamed class members, and all members of the proposed class will benefit from the named Plaintiffs' efforts. The interests of the proposed class and the named Plaintiffs are identical. The Plaintiffs are represented by counsel who are knowledgeable about disability discrimination litigation in federal courts, Medicaid law, and the prosecution and management of class actions.

128.    Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs seek declaratory and injunctive relief on behalf of the Plaintiff Class and do not assert individualized claims for damages. Defendants, their agents, employees, and predecessors and successors in office have acted, refused to act, and/or will act on grounds generally applicable to the class, thereby making final injunctive or declaratory relief appropriate to the class as a whole under Rule 23(b)(2) of the Federal Rules of Civil Procedure. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

338, 361 (2011).   Class members share a common need for the Defendants to reform the administration of the CFI Waiver services in a manner that will benefit all class members. Defendants' policies and practices that result in class members being deprived of some or all of the services that they have been assessed to need harm the members in the class in the same way. Injunctive relief to address those policies and practices will address the risk of harm to all members of the class.  A class action is superior to individual lawsuits for resolving this controversy.

129.    Defendants' actions, as alleged herein, have resulted in and will continue to result in irreparable injury to Plaintiffs and Plaintiff Class members for which they have no plain, speedy, or adequate remedy at law.  Plaintiffs and Plaintiff Class members will suffer irreparable injury in that they will be placed at risk of institutionalization and/or harm to their health.

130.    An actual controversy exists between Plaintiffs and Plaintiff Class members and Defendants in that Defendants' failure to ensure the delivery the CFI Waiver services for which Plaintiffs and Plaintiff Class members are eligible puts them at risk of unnecessary institutionalization and deprives them of vital procedural protections.  Defendants' actions and failures to act violate the rights of Plaintiffs and Plaintiff Class members under the ADA, the Rehabilitation Act, the Medicaid Act, and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.  Plaintiffs and Plaintiff Class members therefore seek a declaration as to their rights and Defendants' corresponding duties with respect to the matters alleged herein.

## VII.   LEGAL CLAIMS

### COUNT I
### Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*
### (Violation of the ADA's Integration Mandate)
### (Against Defendants Commissioner and NHDHHS)

131.    Plaintiffs reallege and incorporate the allegations in Paragraphs 1 through 130 above as if fully set forth herein.

132.     Each Plaintiff and Plaintiff Class member is a "qualified individual with a disability" within the meaning of the ADA in that they: (1) have a physical impairment that substantially limits one or more major life activities; and (2) meet the essential eligibility requirements for enrollment in and receipt of community-based services through New Hampshire's CFI Waiver.

133.     Each Plaintiff and Plaintiff Class member can receive medically-necessary long-term care services in a community setting and desires to do so.

134.     Defendants have failed to provide or ensure the provision of the CFI Waiver services that Plaintiffs and Plaintiff Class members have been assessed to need and in fact need in order to remain in the community.

135.     Defendants' actions have placed the Plaintiffs and Plaintiff Class members at risk of unnecessary institutionalization (e.g., in nursing facilities, hospitals, or similar facilities), in order to obtain long-term care services, in violation of the ADA's integration mandate.

**COUNT II**
**Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*.**
**(Methods of Administration Violation)**
**(Against Defendants Commissioner and NHDHHS)**

136.     Plaintiffs reallege and incorporate the allegations in Paragraphs 1 through 130 above as if fully set forth herein.

137.     Each Plaintiff and Plaintiff Class member is a "qualified individual with a disability" within the meaning of the ADA in that they: (1) have a physical impairment that substantially limits one or more major life activities; and (2) meet the essential eligibility requirements for enrollment in and receipt of community-based services through New Hampshire's CFI Waiver.

138.    Defendants use criteria and methods of administration that subject Plaintiffs and Plaintiff Class members to discrimination on the basis of disability, including risk of unnecessary institutionalization, by, among other things, failing to:  (a) administer the CFI Waiver program to ensure that participants receive the services that they have been assessed to need; (b) administer the program to ensure the reliable and predictable delivery of services without Service Gaps that leave Plaintiffs and Plaintiff Class members vulnerable to dangerous conditions that place them at risk of medical and psychosocial crises for which they might need institutional care; (c) monitor Plaintiffs' and Plaintiff Class members' service needs, their receipt of services, and any Service Gaps; (d) maintain an accurate and reliable system that notifies Plaintiffs and Plaintiff Class members when services are being effectively denied, reduced and/or terminated because of a service gap and provides them an opportunity to seek to redress; and (e) allocate proportionately greater resources for community-based long-term care than institutional care consistent with the needs and desires of Plaintiffs and Plaintiff Class members.

## COUNT III
### Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*
### (Violation of Integration Mandate)
### (Against Defendants Commissioner and NHDHHS)

139.    Plaintiffs reallege and incorporate the allegations in Paragraphs 1 through 130 above as if fully set forth herein.

140.    Each Plaintiff and Plaintiff Class member is a "qualified person with a disability" within the meaning of the Rehabilitation Act, because they: (1) have physical and/or mental impairments that substantially limit one or more major life activities; and (2) meet the essential eligibility requirements for community-based services under New Hampshire's CFI Waiver.

141.    Each Plaintiff and Plaintiff Class member can receive medically-necessary long-term care services in a community setting and wishes to do so.

142.     Defendants have failed to provide or ensure the provision of the CFI Waiver services that Plaintiffs and Plaintiff Class members have been assessed to need and do need to remain in the community.

143.     Defendants' actions have placed the Plaintiffs and Plaintiff Class members at risk of unnecessary institutionalization (e.g., in nursing facilities, hospitals, or similar facilities), in order to obtain long-term care services, in violation of the Rehabilitation Act's integration mandate.

**COUNT IV**
**Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq*.**
**(Methods of Administration Violation)**
**(Against Defendants Commissioner and NHDHHS)**

144.     Plaintiffs reallege and incorporate the allegations in Paragraphs 1 through 130 above as if fully set forth herein.

145.     Each Plaintiff and Plaintiff Class member is a "qualified individual with a disability" within the meaning of Section 504 of the Rehabilitation Act in that they: (1) have a physical impairment that substantially limits one or more major life activities; and (2) meet the essential eligibility requirements for enrollment in and receipt of community-based services through New Hampshire's CFI Waiver.

146.     Defendants use criteria and methods of administration that subject Plaintiffs and Plaintiff Class members to discrimination on the basis of disability, including risk of unnecessary institutionalization, by, among other things, failing to:  (a) administer the CFI Waiver program to ensure that participants receive the services that they have been assessed to need; (b) administer the program to ensure the reliable and predictable delivery of services without Service Gaps that leave Plaintiffs and Plaintiff Class members vulnerable to dangerous conditions that place them at risk of medical and psychosocial crises for which they might need institutional care; (c) monitor

Plaintiffs' and Plaintiff Class members' service needs, their receipt of services, and any Service Gaps; (d) maintain an accurate and reliable system that notifies Plaintiffs and Plaintiff Class members when services are being effectively denied, reduced and/or terminated because of a service gap and provides them an opportunity to seek to redress; and (e) allocate proportionately greater resources for community-based long-term care than institutional care consistent with the needs and desires of Plaintiffs and Plaintiff Class members.

**COUNT V**
**Medicaid Act, 42 U.S.C. § 1396(a)(8)**
**(Denial of Reasonably Prompt Services)**
**(Against Defendant Commissioner)**

147.    Plaintiffs reallege and incorporate the allegations in Paragraphs 1 through 130 above as if fully set forth herein.

148.    Defendant Commissioner's operation and administration of the CFI Waiver is subject to federal Medicaid law, including but not limited to, 42 U.S.C. § 1396a(a)(8) and 42 C.F.R. § 435.930(a)-(b).

149.    Defendant Commissioner is obligated to provide medical assistance to Plaintiffs and Plaintiff Class members with reasonable promptness.  CFI Waiver services constitute medical assistance under the Medicaid Act.

150.    By failing to provide CFI Waiver services to the Plaintiffs and Plaintiff Class members with reasonable promptness, or at all, the Defendant Commissioner violates 42 U.S.C. § 1396a(a)(8) and its implementing regulations 42 C.F.R. § 435.930(a)-(b), for which they are liable to Plaintiffs under 42 U.S.C. § 1983.

**COUNT VI**
**Claim under 42 U.S.C. § 1983, Deprivation of Federal Constitutional Rights**
**(Denial of Procedural Due Process)**
**(Against Defendant Commissioner)**

151.    Plaintiffs reallege and incorporate the allegations in Paragraphs 1 through 130 above as if fully set forth herein.

152.    Plaintiffs and Plaintiff Class members are entitled under federal law to adequate notice and opportunity for pre-termination or pre-reduction hearing on any termination or reduction in medical care and services.  *See Goldberg v. Kelly*, 397 U.S. 254 (1970) (holding that due process requires that welfare beneficiaries be given effective notice and right to a hearing).

153.    Plaintiffs and Plaintiff Class members are enrolled in the CFI Waiver program, and are eligible for, and have a legitimate and important interest in receiving, the waiver services.  The services are necessary for their continued ability to live independently and be integrated in their communities to the same degree as persons without disabilities.  As such, they enjoy a constitutionally-protected property interest in receiving the CFI Waiver services that they need.

154.    Plaintiffs and Plaintiff Class members are not receiving all or part of the CFI Waiver services that they are entitled to receive and need to remain stable and safe in their communities.  Despite being effectively denied services or suffering a reduction or termination thereof, Defendant Commissioner does not provide Plaintiffs or Plaintiff Class members with notice explaining that the services are being effectively denied, reduced, or terminated, the reasons for the denial, reduction or termination of same, and that the denial or reduction of services can be appealed under state administrative procedures.

155.    Absent notice of the denial of services, or, at minimum, the delay that Plaintiffs and Plaintiff Class members will endure before receiving them, and an opportunity to challenge that

denial or delay, Plaintiffs and Plaintiff Class members lose the opportunity to secure action by Defendant Commissioner to rectify their lack of services and the injuries that flow therefrom.

156.     Defendant Commissioner would not be unduly burdened by providing Plaintiffs and Plaintiff Class members with timely, detailed notice of the reasons for their initial or ongoing lack of CFI Waiver services and providing an opportunity for them to contest the denial or delay of those services through the state's administrative hearing process.

157.     Defendant Commissioner, acting under the color of state law, has violated the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, in contravention of 42 U.S.C. § 1983.

**COUNT VII**
**Violation of the Medicaid Act, 42 U.S.C. § 1396(a)(3)**
**(Deprivation of Notice and Right to Fair Hearing)**
**(Against Defendant Commissioner)**

158.     Plaintiffs reallege and incorporate the allegations in Paragraphs 1 through 130 above as if fully set forth herein.

159.     Plaintiffs and Plaintiff Class members are enrolled in the CFI Waiver program and entitled to adequate notice and a fair hearing under 42 U.S.C. § 1396(a)(3) and 42 U.S.C. § 1983.

160.     Defendant Commissioner, acting under the color of state law, has effectively denied, reduced and/or terminated Plaintiffs' and Plaintiff Class members' CFI Waiver services when those services are not being delivered in full or in part.

161.     Although NHDHHS has established a procedure to provide a pre-reduction and/or pre-termination notice and fair hearing to any CFI Waiver beneficiary whose services are denied, reduced, or terminated, Defendant Commissioner has effectively denied, terminated, and/or reduced Plaintiffs' and Plaintiff Class members' CFI Waiver services without providing them

notice of the denial, termination, and/or reduction, the legal basis for same, and their right to appeal the denial, together with notice of how CFI Waiver participants may do so.

162.    Defendant Commissioner is denying Plaintiffs and Plaintiff Class members procedural due process by not providing them with the notice and fair hearing required by 42 U.S.C. § 1396a(a)(3) in violation of 42 U.S.C. § 1983.

163.    Defendant Commissioner has, under the color of state law, deprived Plaintiffs and Plaintiff Class members of rights or privileges and immunities secured to them by the Constitution of the United States in violation of 42 U.S.C. § 1983.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Plaintiff Class, request that the Court:

A.    Assume jurisdiction over this action and maintain continuing jurisdiction until Defendants are in full compliance with every order of this Court;

B.    Certify the Plaintiff Class as defined in Paragraph 122 pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure;

C.    Declare that Defendants Commissioner's and NHDHHS's policies, practices, acts and omissions, as set forth in Paragraphs 1 through 130 above, violate Plaintiffs' and Plaintiff Class members' rights under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the Medicaid Act, the United States Constitution, and 42 U.S.C. § 1983, by, *inter alia*:

i.    Denying Plaintiffs and Plaintiff Class members medically-necessary long-term care services in the most integrated setting;

ii.    Discriminating against Plaintiffs and Plaintiff Class members on the basis of disability, and on the basis of severity of disability, by utilizing methods of administration,

adopting and applying policies and engaging in practices that place Plaintiffs and Plaintiff Class members at risk of unnecessary segregation and institutionalization; and

       iii.    Failing to provide CFI Waiver services to Plaintiffs and Plaintiff Class members with reasonable promptness.

       D.    Declare that Defendant Commissioner's denial, reduction, or termination of Plaintiffs' and Plaintiff Class members' CFI Waiver services without adequate notice or opportunity for a fair hearing constitutes a denial of:

       i.    Plaintiffs' and Plaintiff Class members' constitutionally-protected right to due process of law guaranteed to them under the Fourteenth Amendment to the Constitution of the United States; and

       ii.    Plaintiffs' and Plaintiff Class members' right to due process of law under the Medicaid program, Title XI of the Social Security Act, 42 U.S.C. § 1396a *et seq.*, and 42 U.S.C. § 1983.

       E.    Grant a permanent injunction enjoining Defendants to, *inter alia*:

       i.    Provide Plaintiffs and Plaintiff Class members the CFI Waiver services in the amount and with the frequency they are assessed to need, and with reasonable promptness;

       ii.    Collect and maintain accurate information regarding Plaintiffs' and Plaintiff Class members' assessed service needs, the services that they have received, and discrepancies between assessed service needs and services received to identify CFI Waiver Service Gaps; and

       iii.    Provide Plaintiffs and Plaintiff Class members with notice of NHDHHS decisions to deny, reduce, and/or terminate the CFI Waiver services that Plaintiffs and Plaintiff Class members are assessed to need and notice of Plaintiffs' and Plaintiff Class members' right to

challenge any such denial, reduction, and/or termination in a fair hearing conducted in accordance with New Hampshire's administrative rules.

F.      Maintain the injunction above until such time as Defendants can prove they have implemented permanent changes to their administration of the CFI Waiver program such that all Plaintiffs and Class Members are ensured to receive CFI Waiver services to the extent required under federal law and so as to ensure that each Plaintiff and Plaintiff Class member receives medically-necessary CFI Waiver services in the most integrated setting appropriate to their needs.

G.      Award the Plaintiffs the costs of this action and reasonable attorneys' fees pursuant to 10 U.S.C. §794a; 42 U.S.C. §§ 1988, 12133, and 12205; and as otherwise may be allowed by law.

H.      Grant all such other and further relief in favor of Plaintiffs and the Plaintiff Class that the Court deems to be just and equitable.

[*Remainder of This Page Intentionally Left Blank*]

Dated: January 11, 2021

**PLAINTIFFS**,

By their attorneys,

_/s/ Kierstan E. Schultz_

Cheryl S. Steinberg (#10063)
**NEW HAMPSHIRE LEGAL ASSISTANCE**
117 N. State Street
Concord, NH 03301
(603) 206-2210
csteinberg@nhla.org

Kay E. Drought (#12851)
**NEW HAMPSHIRE LEGAL ASSISTANCE**
154 High Street
Portsmouth, NH 03801
(603) 206-2253
kdrought@nhla.org

Pamela E. Phelan (#10089)
Pamelap@drcnh.org
(603) 491-4157 (mobile number)
Todd R. Russell (#14237)
toddr@drcnh.org
(603) 264-4943 (mobile number)
**DISABILITY RIGHTS CENTER –
   NEW HAMPSHIRE**
64 North Main Street, Suite 2
Concord, NH 03301
(603) 228-0432 (general office number)
(603) 225-2077 (general office fax number)

W. Daniel Deane (N.H. Bar # 18700)
Mark Tyler Knights (D.N.H. Bar # 670991)
Kierstan E. Schultz (N.H. Bar # 20682)
ddeane@nixonpeabody.com
mknights@nixonpeabody.com
kschultz@nixonpeabody.com
**NIXON PEABODY LLP**
900 Elm Street, 14th Floor
Manchester, NH 03101-2031
(603) 628-4047 (D. Deane direct office phone)
(603) 628-4027 (M. Knights direct office phone)
(603) 628-4031 (K. Schultz direct office phone)
(844) 675-4275 (facsimile)

Kelly Bagby (_pro hac vice_ motion forthcoming)
M. Geron Gadd (_pro hac vice_ motion forthcoming)
Susan Ann Silverstein (_pro hac vice_ motion forthcoming)
kbagby@aarp.org
ggadd@aarp.org
ssilverstein@aarp.org
**AARP FOUNDATION**
601 E Street NW
Washington, DC  20049
(202) 434-2060 (telephone)
(301) 906-2402 (K. Bagby mobile number)
(786) 972-4324 (G. Gadd mobile number)
(240) 381-4765 (S. Silverstein mobile number)
(202) 434-6622 (facsimile)