UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| STEPHANIE PRICE, ET AL.,<br><br>      Plaintiffs,<br><br>vs.<br><br>NEW HAMPSHIRE DEPARTMENT OF HEALTH AND HUMAN SERVICES, COMMISSIONER, ET AL.,<br><br>      Defendants. | Case No. 21-cv-25-PB |

**STIPULATION REGARDING PRODUCTION
OF ELECTRONICALLY STORED INFORMATION**

Pursuant to Federal Rule of Civil Procedure 26(c) and (f), Plaintiffs and Defendants (each, a "Party" and, collectively, the "Parties") have stipulated and agreed to the following terms with respect to the production of electronically stored information ("ESI") in this action as set forth herein (the "ESI Stipulation"):

**GENERAL PROVISIONS**

1.      This ESI Stipulation is being entered into to facilitate the collection, processing, production and exchange of documents and information by the Parties in the form of ESI. The Parties expressly recognize and agree that this ESI Stipulation is solely limited to this action and shall not govern any other future litigation between the Parties whether arising in this or any other court, mediation or arbitration forum.

2.      To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs. The terms of this ESI Stipulation should be construed to ensure the prompt, efficient, and cost-effective

exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules, and any orders by the Court.

3.  The parties recognize that this ESI Stipulation is based on facts and circumstances as they are currently known to each party, and that modifications to this ESI Stipulation may become necessary as more information becomes known to the parties during the course of discovery.

4.  Consistent with the Parties' obligations under Rule 26(f) of the Federal Rules of Civil Procedure, the obligation to preserve documents commenced upon the filing of the above-captioned action. The Parties shall meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of ESI that have been or should be preserved in connection with this litigation. If a producing Party becomes aware of a failure to preserve or the loss or destruction of responsive and non-duplicative ESI sought by a requesting Party where such failure, loss, or destruction occurred after the commencement of this litigation, the producing Party agrees to promptly notify the requesting Party and meet and confer on the circumstances surrounding such destruction or loss of ESI and whether such ESI is available from other sources. If a producing Party is aware of data that is not reasonably accessible but that is likely to contain unique, relevant ESI, the Party will identify for the receiving Party the source from which it claims the data is not reasonably accessible.

## DEFINITIONS

The following definitions apply to the terms used in this ESI Stipulation:

5.  The term "ESI" includes, but is not limited to, emails and attachments, voicemail, instant messaging and other electronic communications, word processing documents, text files, hard drives, spreadsheets, graphics, audio and video files, databases, calendars, telephone logs,

4837-1807-2311.1

transaction logs, phone text messages, Internet usage files, offline storage or information stored on removable media, information contained on laptops or other portable devices and network access information and backup materials, Native Files and the corresponding Metadata which is ordinarily maintained. The Parties shall make a reasonable inquiry to ascertain whether they possess or control discoverable information in the form of telephone call logs, voice-mails, instant messages, and mobile phone text and picture messages. To the extent a Party reasonably believes discoverable information exists in telephone call logs, voice-mails, instant messages, and mobile phone text and picture messages, the Party shall preserve the discoverable information. However, a Party has no duty to preserve telephone call logs, voice-mails, instant messages, and mobile phone text and picture messages if, after reasonable inquiry, the Party believes that no discoverable information exists on such telephone call logs, voice-mails, instant messages, and mobile phone text and picture messages.

6. The term "Native File(s)" means ESI in the electronic format of the application in which such ESI was created, viewed, stored and/or modified. Native Files are a subset of ESI.

7. The term "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; or (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, sent, received or otherwise manipulated by a user of such system. Metadata is a subset of ESI.

8. The term "Load File" means a file that relates to a set of scanned or electronic images or electronically processed files that indicate where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load File may also contain data relevant to the individual documents, such as Metadata, coded data, text, and the

like. Load Files must be obtained and provided in prearranged formats to ensure transfer of accurate and usable production images and data.

9. The term "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard litigation support software. The most common forms of Static Images used in litigation are ESI provided in either Tagged Image File Format (TIFF, or .TIF files) or Portable Document Format (PDF).

10. The term "OCR text" means text that is generated by converting Static Images into searchable text format.

11. The term "Producing Party" shall mean any Party to this action or any third-party, including its counsel, retained experts, directors, officers, employees, or agents, who produces any Discovery Material during discovery for this action.

12. The term "Discovery Material" shall mean any document, material, item, testimony, or thing produced, served, exchanged, or generated during the discovery process.

**IDENTIFICATION AND COLLECTION OF RESPONSIVE DOCUMENTS**

13. The Parties shall meet and confer in an effort to conduct discovery of ESI in the most efficient and effective manner. Specifically, the Parties will attempt in good faith to come to an agreement on search and culling methods used to identify responsive ESI. The Parties will make reasonable efforts to meet and confer regarding any proposed limitations on the scope of discovery of ESI, including custodians, custodial and non-custodial sources, date ranges, file types, or any additional proposed method to cull ESI for review (*e.g.*, search terms, technology-assisted review, predictive coding). The Parties agree that all grounds for objections should be supported by specific information in accordance with the Federal Rules of Civil Procedure. The Parties will not

seek Court intervention without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

    a.    **Sources**

The Parties shall, within 25 days of the filing of this ESI Protocol, meet and confer, together with representatives of each Party's IT staff, to discuss discovery of ESI. Additionally, within 25 days of the filing of this ESI Stipulation, the Parties will disclose and discuss <u>an initial list</u> of custodial and non-custodial data sources likely to contain responsive ESI.

The Parties will, within 50 days following the filing of this ESI Stipulation, disclose and discuss <u>all</u> custodial and non-custodial data sources likely to contain responsive ESI. The Parties will identify and describe in that time period the electronic systems, including servers, email systems, archival systems, portable data, inactive or legacy systems, and cloud-based systems, likely to contain responsive documents, and any document-retention schedules or policies, auto-delete functions, routine purging, mailbox-size limits), or other practices likely to impact the existence or accessibility of responsive documents or ESI. As part of these efforts, the Parties will identify and describe sources likely to contain responsive ESI that a Party asserts should not be searched or are not reasonably accessible and explain the bases for such assertions. All Parties retain the right, upon reviewing initial production of ESI, and conducting other investigation and discovery, to request that ESI from additional custodial or non-custodial sources be searched and shall meet and confer regarding any such requests.

    b.    **Identification of Custodians**

The Parties shall, within a reasonable time after the filing of this ESI Stipulation, identify the persons whose files are likely to contain documents and ESI responsive to such requests and whose files the responding Party proposes to search, including a description of each proposed

4837-1807-2311.1

custodian's job title and dates of relevant employment. The Parties retain the right, upon reviewing the initial production of ESI, and conducting other investigation and discovery, to request that files from additional custodians be searched and shall meet and confer regarding any such requests.

## ESI SEARCH METHODOLOGY

14. The Parties shall, within a reasonable time after the filing of this ESI Stipulation, meet and confer about methods to search ESI to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

15. Each Party will provide a list of proposed search terms, which shall contain search terms that it believes would lead to the identification of responsive documents. Each Party will also provide a search term hit report, including to the extent possible a description of the locations searched, the number of documents that hit on each term, and the total number of documents that would be returned by using the proposed search term list. The Parties will agree upon a schedule for the exchange of search terms and search term hit reports.

## PRODUCTION FORMATS

16. Unless the parties agree otherwise, ESI shall be produced in the form specified herein. No Producing Party may reformat, scrub or alter the ESI to intentionally downgrade the usability of the data.

17. Parties may produce ESI in native format. If a party produces ESI natively, they shall adhere to the following criteria:

    a. Email will be produced in PST format. Preferably each PST will be named for the custodian corresponding to the mailbox it is collected from.

    b. Non-email ESI (ex. Word Documents, Excel Files, PDFs, Medicaid claims data, New Heights data, other electronic database data, etc.) should be

collected and produced in a manner that, to the extent such information exists, identifies the custodian who possessed the ESI and, to the extent possible, maintaining the folder structure as it was kept in the ordinary course of business.

c. Redactions. For any native file requiring redactions, the producing party may create a PDF image of the native, apply the redactions, and produce the redacted PDF. A redaction log should accompany any productions containing redacted ESI so that the receiving party can readily identify documents that contain redactions.

d. If any ESI file format requires special treatment not contemplated by these parameters, the parties agree to meet and confer to discuss how to proceed.

18.     With the exception of the documents identified in Paragraph 24, if a Party does not produce ESI in native format as specified in paragraph 17, parties shall produce all ESI in single-page TIFFs, in Group IV black and white format (300 DPI), with Load Files for all documents. To the extent that the produced document is a color document where the colors are necessary to understand the substance of the document, the image shall be produced in color as a JPEG file. The production of documents in non-native format pursuant to this Paragraph shall be governed by Paragraphs 19-24 of this ESI Stipulation. Paragraphs 19-24 of this ESI Stipulation shall not govern the production of documents in native format pursuant to Paragraph 17.

19.     Hidden content, tracked changes or edits, comments, notes, and other similar information, to the extent viewable within the native file, shall also be imaged so that such content is viewable on the image file. Nothing in this paragraph requires the modification or alteration of

any document or data in order to make any hidden content, tracked changes or edits, comments, notes, and other similar information viewable.

20. E-mails and their attachments shall be produced as a complete unit. If a responsive parent e-mail has non-responsive attachments, they shall be produced as complete families. Non-responsive parent documents with any responsive attachment(s) shall also be produced as complete families. Embedded objects and files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved. The Parties agree that in-line images such as logos need not be extracted as separate documents as long as they are displayed in the parent document.

21. The Parties shall produce Metadata Load Files for each ESI document which include the following fields:

| Field | Description |
| --- | --- |
| BegProd | Bates number corresponding to the first page of the document. |
| EndProd | Bates number corresponding to the last page of the document. |
| BegProdAtt | Bates number corresponding to the first page of a document family. |
| EndProdAtt | Bates number corresponding to the last page of a document family. |
| PageCount | Number of pages/images for the document. |
| Custodian | Name of the person from where file is produced. |
| Author | The author of the document or Sender of Email |
| Recip | The recipient(s) of the document/Email. |
| CC | The individuals copied on the document/Email, if any. |
| BCC | The individuals blind copied on the Email, if any. |
| DocTitle | The title of a document or the subject of an email. |
| DocType | Type of document, such as Microsoft Word, Adobe Portable Document Format, Microsoft Excel. |
| Date Sent | The date an email was sent. |
| Time Sent | The time an email was sent. |
| Date Received | The date an email was received. |

| | |
|---|---|
| Time Received | The time an email was received. |
| Date Created | The date the file was created, if available. |
| Time Created | The time the file was created, if available. |
| Date Last Modified | The date the file was last modified, if available. |
| Time Last Modified | The time the file was last modified, if available. |
| Folder | The folder the document is stored in. |
| LastAuthor | Last Edited By |
| MD5Hash | MD5HASH of electronic files |
| TextPath | Path to the records' corresponding text file. Do not include actual text in load files. |
| Native | The file path that the corresponding production Native file resides in. |

22.     The Parties shall provide extracted text for all files that originated in electronic form. When no extracted text is available for a file that originated in electronic format, OCR text shall be provided unless the production of OCR text for such document is not technologically feasible. Extracted or OCR text shall be provided with one text file per document. OCR text shall be provided for all documents that originated in hard copy, i.e., hard copy that was scanned for purposes of the production.

23.     If a document is redacted, the Producing Party shall produce OCR text of the un-redacted portions of the document. No text from the redacted portion of the document will appear in the text file. Failure to withhold OCR text from a redacted portion of a document by a Producing Party shall not be deemed a waiver of any privilege associated with that document. Documents, whether redacted for privilege or lack of relevance, shall indicate what pages or portions of pages have been redacted.

24.     The Parties shall provide Native Files for PPT, XLS, Audio, Video, and non-standard format documents that are not amenable to conversion into TIFF format. If the use of a

Native File requires proprietary software, the Producing Party will inform the other Parties of that fact. For any document produced as a Native File, the Parties shall also produce a TIFF placeholder with a sequential Bates number that corresponds with the Native File.

25. The Producing Party shall make reasonable efforts to remove password or other security protection from any Native File prior to production. If, after reasonable efforts, the security protection cannot be removed from a Native File, a placeholder PDF, TIFF or JPEG image may be produced in place of the Native File indicating that security protection could not be removed from the document or that the document could not be processed. Upon reasonable request from any other Party, the Producing Party shall provide the Native File with a password.

26. All documents must be endorsed with sequential Bates numbers on the lower right-hand corner of all images. Any claimed confidentiality status as per the Court's Protective Order will be endorsed in the lower left corner of all images. If the Producing Party produces ESI in native format pursuant to paragraph 17, the parties shall agree to a process for the identification and maintenance of native documents designated as confidential subject to the Protective Order.

27. The Parties will make reasonable efforts to de-duplicate ESI documents globally prior to production.

28. The Parties may produce ESI via FTP transmission, removable USB flash drives, CD/DVD, or other media as otherwise agreed, and shall identify the Bates range contained in the respective production.

**NO WAIVER**

29. Nothing herein shall be interpreted or deemed to waive any privilege recognized by law, including attorney-client privilege, the attorney work-product doctrine, and/or any other privilege that may be applicable, or shall be construed to imply that any documents produced under

the terms of this ESI Stipulation are properly discoverable, relevant, or admissible in this action or in any other litigation, mediation, or arbitration. Additionally, nothing in this ESI Stipulation shall be deemed to waive or limit either Party's right to object to the production of certain ESI pursuant to Federal Rule of Civil Procedure 26, on the ground that the sources are not reasonably accessible because of undue burden or cost, or are not proportional to the needs of the case, or are being withheld as documents subject to the attorney-client privilege or attorney work-product doctrine, or any other appropriate ground. Where manual searching and reviewing of ESI for responsiveness and privilege may be unduly burdensome or costly to a Party, or not proportional to the needs of the case, the Parties may discuss use of a search term protocol or proposed searching methodologies to aid in or make more efficient the ESI collection, review, and production process. Neither Party is obligated to use a proposed search term protocol or proposed searching methodologies, and if the Parties agree to a proposed search term protocol or proposed searching methodologies, the Producing Party does not waive any objections to production pursuant to Federal Rule of Civil Procedure 26, including, but not limited to, objections relating to burden or proportionality.

30. The Parties agree to promptly alert each other concerning any technical problems associated with complying with this ESI Stipulation. To the extent compliance with this ESI Stipulation imposes an undue burden with respect to any protocol, source, or search term, the Parties shall promptly confer in an effort to resolve the issue. If the Parties are unable to resolve the issue by mutual agreement after such conference, the Party seeking relief may move the Court for relief for good cause shown.

31. This ESI Stipulation may be changed by order of the Court or further signed written agreement of the Parties, and is without prejudice to the rights of any Party to move for relief from

any of its provisions, or to seek or agree to different or additional procedures or protections for any particular ESI materials or information.

32. Nothing herein shall amend, alter, or otherwise change or supersede the terms and conditions contained in the Court's Protective Order.

Dated:  September 10, 2021

STEPHANIE PRICE, EMILY FITZMORRIS, and KATHLEEN BATES on behalf of themselves and all others similarly situated,

By Their Attorneys,

*/s/ Mark Tyler Knights*

Cheryl S. Steinberg (#10063)
NEW HAMPSHIRE LEGAL ASSISTANCE
117 N. State Street
Concord, NH 03301
T: (603) 206-2210
csteinberg@nhla.org
Kay E. Drought (#12851)
NEW HAMPSHIRE LEGAL ASSISTANCE
154 High Street
Portsmouth, NH 03801
T: (603) 206-2253
kdrought@nhla.org

Kierstan E. Schultz (#20682)
kschultz@nixonpeabody.com
Mobile: 412-303-0648
W. Daniel Deane (#18700)
ddeane@nixonpeabody.com
Mark Tyler Knights (#670991)
mknights@nixonpeabody.com
NIXON PEABODY LLP
900 Elm Street, 14th Floor
Manchester, NH 03101
T: (603) 628-4000
F: (603) 628-4040

Pamela E. Phelan (#10089)
Pamelap@drcnh.org
Mobile: (603) 491-4157
Todd R. Russell (#14237)
Toddr@drcnh.org
Mobile: (603) 264-4943
DISABILITY RIGHTS CENTER–
NEW HAMPSHIRE
64 North Main Street, Suite 2
Concord, NH 03301
T: (603) 228-0432
F: (603) 225-2077

Kelly Bagby (*pro hac vice*)
M. Geron Gadd (*pro hac vice*)
Susan Ann Silverstein (*pro hac vice*)
kbagby@aarp.org
ggadd@aarp.org
ssilverstein@aarp.org
AARP FOUNDATION
601 E Street NW
Washington, DC 20049
T: (202) 434-2060
F: (202) 434-6622

|  |  |
|---|---|
|  | JOHN M. FORMELLA<br>ATTORNEY GENERAL |
| By: | */s/ Seth M. Zoracki*<br>Anthony J. Galdieri (#18594)<br>Senior Assistant Attorney General<br>Seth M. Zoracki (#267887)<br>Assistant Attorney General<br>Amanda N. Palmeira (#269464)<br>Assistant Attorney General<br>Civil Bureau<br>(603) 271-3650<br>Anthony.galdieri@doj.nh.gov<br>Seth.zoracki@doj.nh.gov<br>Amanda.N.Palmeira@doj.nh.gov |

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Kay E. Drought, hereby certify that the foregoing *Stipulation Regarding Production of Electronically-Stored Information* was filed through the ECF System and served electronically on the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: September 10, 2021          */s/ Kay E. Drought*

                                   Kay E. Drought

4837-1807-2311.1