# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

STEPHANIE PRICE, ET AL.,

     Plaintiffs,

     vs.

NEW HAMPSHIRE DEPARTMENT OF HEALTH AND HUMAN SERVICES, COMMISSIONER, ET AL.,

     Defendants.

Case No. 21-cv-25-PB

**HEARING REQUESTED**

Table of Contents

Page

I.    INTRODUCTION ........................................................................................................... 1

II.   FACTUAL BACKGROUND ........................................................................................ 2

   A.   PLAINTIFFS ARE PEOPLE WITH DISABILITIES WHOSE INTEGRATION RIGHTS

   HANG IN THE BALANCE ............................................................................................. 2

   B.   DEFENDANTS ADMINISTER THE CFI WAIVER IN A MANNER THAT

   VIOLATES THE ADA AND SECTION 504 ................................................................. 3

III.   ARGUMENT ................................................................................................................. 5

   A.   THE ADA AND SECTION 504 PROHIBIT DEFENDANTS FROM PLACING THE

   PUTATIVE CLASS AT SERIOUS RISK OF BEING INSTITUTIONALIZED .................... 5

   B.   THE PREREQUISITES FOR CLASS CERTIFICATION UNDER RULE 23 ARE MET

   ....................................................................................................................................... 6

      1.   The Class Is So Numerous that Joinder of All CFI Waiver Participants Who Are at

      Risk of Being Institutionalized Is Impractical ........................................................ 8

      2.   Questions of Law and Fact Common to the Class Abound ......................................... 10

      3.   The Named Plaintiffs' Claims are Typical of Those of the Class Members ................ 18

      4.   Named Plaintiffs and Class Counsel Will Adequately Represent the Class ................ 21

      5.   Defendants' Acts and Omissions Apply Generally to the Class Making Class

      Certification Under Rule 23(b)(2) and Injunctive Relief Appropriate ................................. 23

IV.   CONCLUSION AND REQUEST FOR RELIEF ............................................................. 25

i

Table of Contents (continued)

Page

EXHIBITS

Exhibit A        Dr. Mattan Schuchman Declaration In Support of Plaintiffs' Motion for Class
                 Certification

Exhibit B        Declaration of Stephanie Price in Support of Motion for Class Certification

Exhibit C        Declaration of Kathleen Bates in Support of Motion for Class Certification

Exhibit D        Declaration of Emily Fitzmorris in Support of Motion for Class Certification

Exhibit E        Declaration of Robin Carlson in Support of Motion for Class Certification

Exhibit F        Choices for Independence Waiver Feedback Sessions, May 2021 (PLTF-0026559
                 - PLTF-0026582)

Exhibit G        Declaration of Michael J. Petron In Support of Plaintiffs' Motion for Class
                 Certification

Exhibit H        HCBS Waiver Review Final Rpt. for New Hampshire Choices for Independence
                 Waiver Program, June 23, 2021, (NHDHHS056428 – NHDHHS056553)

Exhibit I        Declaration of Ryan Price In Support of Motion for Class Certification

Exhibit J        Declaration of Martha Larrabee in Support of Motion for Class Certification

Exhibit K        Assessment of New Hampshire Long-Term Services and Supports (LTSS): BEAS
                 Validation of Navigant Interview Findings, October 11, 2019, (PLTF-GH-
                 0000661 – PLTF-GH-0000663)

Exhibit L        Guidehouse Report (New Hampshire Long Term Supports and Services (LTSS)
                 for Seniors & Individuals with Physical Disabilities, Findings and
                 Recommendations (NHDHHS0032969 - NHDHHS0032999)

Exhibit M        Excerpts of the Kerri King Deposition, October 1, 2021

Table of Contents (continued)

Page

Exhibit N       New Hampshire LTSS Interview Themes from BEAS Interviews (PLTF-GH-

0000642 – PLTF-GH-0000643)

Exhibit O       Long-Term-Supports-and-Services-in-New-Hampshire_Older-Adults-and-Adults-

with-Physical-Disabilities, Fiscal Policy Institute, July 2022 (PLTF-0023081 –

PLTF-0023135)

Exhibit P       Across the States 2018: Profile of Long-Term Services and Supports in New

Hampshire (PLTF-0027202 – PLTF-0027205)

Exhibit Q       Declaration of Kelly Bagby in Support of Motion for Class Certification

Exhibit R       Declaration of Daniel Deane in Support of Motion for Class Certification

Exhibit S       Declaration of Kay Drought in Support of Motion for Class Certification

Exhibit T       Declaration of Pamela Phelan in Support of Motion for Class Certification

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Federal Cases**

*In re Am. Med. Sys. Inc.*,
  75 F.3d 1067 (6th Cir. 1996) ................................................................19

*Andrews v. Bechtel Power Corp.*,
  780 F.2d 124 (1st Cir. 1985)..........................................................22, 23

*Baby Neal v. Casey*,
  43 F.3d 48 (3d Cir. 1994).....................................................................24

*In re Bank of Boston Corp. Sec. Litig.*,
  762 F. Supp. 1525 (D. Mass. 1991) .....................................................22

*Bezdek v. Vibram USA Inc.*,
  79 F. Supp. 3d 324 (D. Mass. 2015) ....................................................21

*Borum v. Brentwood Vill., LLC*,
  324 F.R.D. 1 (D.D.C. 2018)..................................................................22

*Clough v. Revenue Frontier, LLC*,
  17-cv-411, 2019 WL 2527300 (D.N.H. June 19, 2019) ...........................8

*Cohen v. Brown Univ.*,
  16 F.4th 935 (1st Cir. 2021)..................................................................22

*Coley v. Clinton*,
  635 F.2d 1364 (8th Cir. 1980) ..............................................................24

*DL v. Dist. of Columbia*,
  860 F.3d 713, 726 (D.C. Cir. 2017) ........................................................8

*In re Dial Complete Mktg. and Sales Practices Litig.*,
  312 F.R.D. 36 (D.N.H. 2015) ...............................................................19

*Doe v. Comm'r, N.H. Dept. of Health and Human Servs.*,
  Civ. No. 18-cv-1039-JD, 2020 WL 2129717 (D.N.H. May 4, 2020)......11

*Faherty v. CVS Pharm., Inc.*,
  No. 09-CV-12102, 2011 WL 810187 (D. Mass. 2011) ..........................23

*Fisher v. Okla. Health Care Auth.*,
  335 F.3d 1175 (10th Cir. 2003) ..............................................................7

iv

*Garcia-Rubiera v. Calderon*,
    570 F.3d 443 (1st Cir. 2009) ......................................................................8, 19

*Garnett v. Zeilinger*,
    301 F. Supp. 3d 199 (D.D.C. 2018) .........................................................19

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982).................................................................................1, 22

*Gomes v. Acting Sec'y of U.S. Dep't of Homeland Sec.*,
    561 F.Supp.3d 93 (D.N.H. 2021)..............................................8, 10, 11, 19

*Hawkins ex rel. Hawkins v. Comm'r, N.H. Dept. of Health and Human Servs.*,
    No. Civ. 99-143-JD, 2004 WL 166722 (D.N.H. 2004) ......................11, 24

*Hoyte v. Dist. of Columbia*,
    325 F.R.D. 485 (D.D.C. 2017)..................................................................19

*J.N. v. Oregon Dep't of Educ.*,
    338 F.R.D. 256 (D. Or. 2021) .....................................................................9

*Jack v. Am. Linen Supply Co.*,
    498 F.2d 122 (5th Cir. 1974) .....................................................................10

*Kenneth R. v. Hassan*,
    293 F.R.D. 254 (D.N.H. 2013) ......................................................... *passim*

*Koster v. Perales*,
    108 F.R.D. 46 (E.D.N.Y. 1985)................................................................10

*Lane v. Kitzhaber*,
    283 F.R.D. 587 (D. Or. 2012) ...................................................................12

*M.D. v. Perry*,
    675 F.3d 832 (5th Cir. 2012) .....................................................................24

*M.R. v. Dreyfus*,
    663 F.3d 1100 (9th Cir. 2011), *as amended on denial of rehearing en banc*,
    697 F.3d 706 (9th Cir. 2012) .......................................................................6

*McCuin v. Sec. of Health and Human Servs.*,
    817 F.2d 161 (1st Cir. 1987).....................................................................7, 8

*Moore v. Napolitano*,
    269 F.R.D. 21 (D.D.C. 2010).....................................................................13

*Mulligan v. Choice Mortg. Corp. USA*,
    No. Civ. 96-596-B, 1998 WL 544431 (D.N.H. Aug. 11, 1998) ..............11

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
  522 F.3d 6 (1st Cir. 2008) ....................................................................................................10

*O.B. v. Norwood*,
  No. 15 C 10463, 2016 WL 2866132 (N.D. Ill. May 17, 2016) ..............................................21

*Olmstead v. L.C. ex rel. Zimring*,
  527 U.S. 581 (1999)................................................................................................5, 6, 12

*Oster v. Lightbourne*,
  No. C09-4668, 2012 WL 685808 (N.D. Cal. Mar. 2, 2012)....................................................12

*Ouadani v. Dynamex Operations E., LLC*,
  405 F. Supp. 3d 149 (D. Mass. 2019) ...................................................................................19

*Parent/Prof'l Advocacy League v. City of Springfield*,
  934 F.3d 13 (1st Cir. 2019)....................................................................................................11

*Rapuano v. Trs. of Dartmouth Coll.*,
  334 F.R.D. 637 (D.N.H. 2020) ..............................................................................................19

*Shanley v. Cadle*,
  277 F.R.D. 63 (D. Mass. 2011)................................................................................................7

*Shelton v. Bledsoe*,
  775 F.3d 554 (3d Cir. 2015)......................................................................................................7

*Steimel v. Wernert*,
  823 F.3d 902 (7th Cir. 2016) ....................................................................................................6

*Steward v. Janek*,
  315 F.R.D. 472 (W.D. Tex. 2016) ...................................................................................19, 21

*Van Meter v. Harvey*,
  272 F.R.D. 274 (D. Me. 2011)................................................................................................10

*Conner B. ex rel. Vigurs v. Patrick*,
  272 F.R.D. 288 (D. Mass. 2011).............................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).......................................................................................................... *passim*

*Wright v. Southern N.H. Univ.*,
  565 F. Supp. 3d 193 (D.N.H. 2021).........................................................................................23

*Yaffe v. Powers*,
  454 F.2d 1362 (1st Cir. 1972)..................................................................................................24

**Federal Statutes**

29 U.S.C. § 794(a) ......................................................................................................5

29 U.S.C. §§ 794 *et seq.* ............................................................................................2

42 U.S.C. § 12132 .......................................................................................................5

Americans with Disabilities Act Title II (ADA), 42 U.S.C. §§ 12101 *et seq.*, § 504
    of the Rehabilitation Act ...............................................................................1, 5, 6, 10

Medicaid Act, 42 U.S.C. § 1396a *et seq.* ..................................................................2

**State Statutes**

RSA 151-E:1 ..............................................................................................................14

**Rules**

Fed. R. Civ. P. 23(a)(3) .............................................................................................19

Fed. R. Civ. P. 23(a)(4) .............................................................................................21

Rule 23 ...............................................................................................................1, 6, 7

Rule 23(a) ..............................................................................................7, 11, 21, 24

Rule 23(a)(1) ...............................................................................................................8

Rule 23(a)(2) .............................................................................................................10

Rule 23(b)(2) .................................................................................................... *passim*

**Regulations**

28 C.F.R. § 35.130(b)(7)(i) .........................................................................................5

28 C.F.R. § 35.130(d) .................................................................................................5

42 C.F.R. § 440.70 .....................................................................................................4

**Constitutional Provisions**

United States Constitution Fourteenth Amendment .....................................................2

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

## I.        INTRODUCTION

Plaintiffs' claims are precisely the sort of civil rights claims that are most appropriately and efficiently addressed on a class-wide basis.  Plaintiffs satisfy all the Rule 23 criteria:  the class is so numerous that joinder of all members would be impracticable as the Defendants' violative conduct impacts the civil rights of at least 650 people each month.  Common elements of fact and law abound demonstrating that the members of the class are at serious risk of losing their community-based living arrangements and being forced to seek care in institutional settings because of the manner in which the state administers its home and community-based waiver.  The named Plaintiffs are adequate representatives and are typical of the putative class members because the New Hampshire Department of Health and Human Services ("NHDHHS") has determined each of them eligible to receive services through New Hampshire's Choices for Independence Medicaid Waiver ("CFI Waiver") in integrated community settings but has nevertheless deprived each of them of large percentages of the services they have been determined to need. The Plaintiffs seek injunctive and declaratory relief and are represented by experienced counsel.  A class action is appropriate to conserve "the resources of both the court and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (internal quotation omitted).

Although the stated purpose of the CFI Waiver is to provide a consistent and reliable alternative to nursing facility care where the waiver participants can receive the Medicaid-funded services and supports they need in their homes, NHDHHS is not administering the waiver in a manner that the members of the class can rely upon to keep them safe from being involuntarily forced into institutional care.  NHDHHS's systemic failures violate Title II of the Americans with

1

Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, Section 504 of the Rehabilitation Act (Section 504), 29 U.S.C. §§ 794 *et seq.*, the Medicaid Act, 42 U.S.C. § 1396a *et seq.*, and the Fourteenth Amendment to the United States Constitution.  Plaintiffs seek systemic injunctive relief compelling Defendants to effectively administer the CFI Waiver in a manner that will allow the class to finally have the benefit of the waiver services that the Defendants previously determined Plaintiffs require to avoid unnecessary institutionalization.  This remedy would, in one stroke, redress the legal violations and benefit all class members.

## II.   FACTUAL BACKGROUND

### A.   PLAINTIFFS ARE PEOPLE WITH DISABILITIES WHOSE INTEGRATION RIGHTS HANG IN THE BALANCE

Plaintiffs are people with disabilities who are at serious risk of being institutionalized in nursing facilities or other kinds of institutional settings because of the deficient manner in which Defendants administer the CFI Waiver.  Ex. A, Declaration of Dr. Mattan Schuchman ("Schuchman Decl.")  (¶¶ 13-15); Ex. B, Declaration of Stephanie Price ("Price Decl.")(¶¶ 13-19); Ex. C, Declaration of Kathleen Bates ("Bate Decl.") (¶¶14-19); and Ex. D, Declaration of Emily Fitzmorris ("Fitzmorris Decl.")  (¶¶ 17-22); Ex. E, Declaration of Robin Carlson ("Carlson Decl.")(¶12).  Specifically, the Plaintiffs seek to certify a class defined as:

> CFI Waiver participants who, during the pendency of this lawsuit, have been placed at serious risk of unjustified institutionalization because Defendants, by act or omission, fail to ensure that the CFI participants receive the community-based long term care services and supports through the waiver program for which they have been found eligible and assessed to need.

CFI Waiver services are intended "to enable eligible individuals to remain in their homes and stay active in their communities."  Ex. F, Choices for Independence Waiver Feedback Sessions, May 2021 (Waiver Feedback Sessions), p. 3 (PLTF-0026559 at 26561).  However,

because there are significant gaps in the services that can persist for hours and days, the Plaintiffs are exposed to serious harm.  Ex. A, Schuchman Decl. ¶¶ 63-65.

The gaps in CFI Waiver daily services result in Plaintiffs "missing hands-on services" which "may result in them languishing in their home confined to a bed or a chair and unable to provide for their own basic needs such as nutrition, toileting, and hydration." *Id.* ¶ 64. Furthermore, the gaps that place the class in jeopardy including missing:

> assistance with safe transfer to reduce the risk of falls – the primary cause of injury in older adults, facilitating daily exercises and movements to reduce pain, prevent contractures, and prevent the development of pressure sores (bed sores) and bathing, at least weekly to maintain skin integrity and prevent painful rashes.

*Id.* ¶ 66.

Each named Plaintiff believes that she can safely and successfully remain at home if she were provided the CFI Waiver services the defendants have determined she needs.  Ex. B, Price Decl. ¶ 20; Ex. C, Bates Decl. ¶ 23; Ex. D, Fitzmorris Decl. ¶ 23.   The members of the putative class are similarly situated in that all currently live in the community and given that they have applied to be on the CFI Waiver, have expressed their desire to remain in the community.  As with the Named Plaintiffs all class members need to have their CFI Waiver services delivered consistently and reliably in order to exercise their integration rights under the ADA and Section 504.

## B.   DEFENDANTS ADMINISTER THE CFI WAIVER IN A MANNER THAT VIOLATES THE ADA AND SECTION 504

Defendants administer the CFI Waiver as part of NHDHHS's responsibilities as the single state Medicaid agency.  ECF 1, Complaint ¶ 24.  The "CFI Waiver provides support and services to individuals who are Medicaid eligible and meet the nursing facility level of care through a network of community-based provider agencies who are directly enrolled as NH Medicaid Providers."  Ex. F, Waiver Feedback Sessions (PLTF-0026559 at 26561)

There are a variety of services offered under the CFI Waiver.  Although all CFI Waiver services are important for the integration of the Plaintiffs, Dr. Schuchman has identified that gaps in particular services create an even greater risk of institutionalization. The key services that create the most risk if they are not delivered are a) personal care services, b) homemaker services, c) skilled nursing, and d) home health aide services.  Ex. A, Schuchman Decl. ¶¶ 10, 13.   NHDHHS describes Personal Care Services as including "a range of individually tailored supports to assist with activities of daily living (ADL) such as meal preparation, eating, bathing, dressing, personal hygiene, medication management, community inclusion, and transportation" necessary to access the needed services and "to assist the individual to reside in the most integrated setting appropriate to his/her needs." Ex. F, Waiver Feedback Sessions, p. 7 (PLTF-0026565).   Homemaker services are defined as general household services such as light cleaning or meal preparation.  *Id.* at 6 (PLTF-0026564).  Skilled nursing services provide intermittent skilled nursing services on a long-term basis. *Id.* at 20 (PLTF-0026578).  Home health aide services are defined in regulation as services prescribed by a qualified health care provider to provide in the waiver participant's home. *Id.* citing 42 C.F.R. § 440.70.

Because Defendants do not ensure that critical CFI Waiver services are provided in the amounts for which CFI Waiver participants have been determined to be eligible and approved to receive, the Named Plaintiffs and others similarly situated face serious risk each day of medical and emotional deterioration that will force them into a nursing facility or other institution. Although Defendants have been on notice for years of the deficiencies in the waiver's operation and the human consequences of these deficiencies, it has failed to sufficiently address the issues that imperil the class, making Court ordered class-wide systemic injunctive relief imperative.

### III.    ARGUMENT

**A.    THE ADA AND SECTION 504 PROHIBIT DEFENDANTS FROM PLACING THE PUTATIVE CLASS AT SERIOUS RISK OF BEING INSTITUTIONALIZED**

Title II of the ADA prohibits public entities from discriminating against people with disabilities in how they provide public services. *See* 42 U.S.C. § 12132. Specifically, it mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* Similarly, Section 504 states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

The provisions of Title II of the ADA and its implementing regulations, as well as the Supreme Court's decision in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), set forth the "integration mandate." To satisfy the ADA's integration mandate, a public entity must comply with the ADA's "reasonable modifications" regulation: "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i); *see also Olmstead*, 527 U.S. at 592. In other words, the ADA requires governmental entities to "administer services, programs and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

Under the integration mandate, the Defendants have an affirmative obligation to provide community-based services for individuals with disabilities if such services are desired and appropriate and can be reasonably accommodated, taking into account the state's resources and

the needs of other people with disabilities.  *See Olmstead*, 527 U.S. at 607.  Defendants are further obligated to administer its programs and services in a manner that is not discriminatory.  According to the implementing regulations Defendants may not, "directly or through contractual or other arrangements, utilize criteria or methods of administration" that have "the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability" or "[t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities." 28 C.F.R. § 35.130(b)(3)(i)-(ii).

In its landmark decision in *Olmstead*, the Supreme Court held that the "unjustified institutional isolation of persons with disabilities is a form of discrimination."  *Olmstead*, 527 U.S. at 600.  Under *Olmstead*, public entities must conform their actions to the integration mandate of Title II of the ADA by "administer[ing] services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities" and provide reasonable accommodations to move people with disabilities institutionalized in segregated nursing facilities to integrated settings when: (1) community placement is appropriate; (2) the individuals do not oppose community placement; and (3) return to the community can be reasonably accommodated. *See id.*, 527 U.S. at 587, 591-592.

**B.    THE PREREQUISITES FOR CLASS CERTIFICATION UNDER RULE 23 ARE MET**

Federal courts have certified class actions challenging governmental entities that have placed people with disabilities at risk of being unnecessarily institutionalized.  *See Steimel v. Wernert*, 823 F.3d 902, 914 (7th Cir. 2016) (holding that "the integration mandate is implicated where the state's policies have . . . put [individuals with disabilities] at serious risk of institutionalization."); *M.R. v. Dreyfus*, 663 F.3d 1100, 1116-1117 (9th Cir. 2011) ("An ADA

6

plaintiff need not show that institutionalization is 'inevitable' or that she has 'no choice' but to submit to institutional care in order to state a violation of the integration mandate.  Rather, a plaintiff need only show that the challenged state action creates a serious risk of institutionalization."), *as amended on denial of rehearing en banc*, 697 F.3d 706 (9th Cir. 2012); *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1182 (10th Cir. 2003) (The ADA's "protections would be meaningless if plaintiffs were required to segregate themselves by entering an institution before they could challenge an allegedly discriminatory law or policy that threatens to force them into segregated isolation.").

The Plaintiffs meet the requirements for class certification laid out in Rule 23.  First, the defined class meets any implied threshold criterion that the class is "sufficiently definite to allow the court, parties, and putative class members ascertain class membership."  *Kenneth R.*, 293 F.R.D. at 263 (citing *Shanley v. Cadle*, 277 F.R.D. 63, 67-68 (D. Mass. 2011)).  In actions seeking to certify an injunctive class, "actual membership of the class need not . . . be precisely delimited" because "notice to the members . . . is not required."  *Id.*; *see also Shelton v. Bledsoe*, 775 F.3d 554, 562 (3d Cir. 2015) (holding that a sufficient class under Rule 23(b)(2) is one that meets the requirements of Rule 23(a), is sufficiently cohesive, and can be described by a "readily discernible, clear, and precise statement of the parameters defining the class") (internal quotation marks omitted); *McCuin v. Sec. of Health and Human Servs.*, 817 F.2d 161, 167 (1st Cir. 1987) ("[W]here only declaratory and injunctive relief is sought for a class, plaintiffs are not required to identify the class members once the existence of the class has been demonstrated").

Second, Plaintiff class meets the threshold requirements of Rule 23(a): numerosity, commonality, and typicality, and the named plaintiffs will fairly and adequately protect the class interests. Fed. Rule Civ. Proc. 23(a).  Finally, the Plaintiffs seek injunctive relief under Rule

23(b)(2), allowing certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  Indeed, Rule 23(b)(2) "was designed for exactly this sort of suit," namely, civil rights actions in which "common claims arise from systemic harms that demand injunctive relief."  *DL v. Dist. of Columbia*, 860 F.3d 713, 726 (D.C. Cir. 2017) (citation omitted).

### 1.     The Class Is So Numerous that Joinder of All CFI Waiver Participants Who Are at Risk of Being Institutionalized Is Impractical

Rule 23(a)(1) has two components: the number of class members and the practicality of joining them individually in the case. See Fed. R. Civ. P. 23(a)(1).  There is no minimum number of plaintiffs required to show numerosity, though generally 40 or more potential class members will satisfy the requirement.  *See Clough v. Revenue Frontier, LLC*, 17-cv-411, 2019 WL 2527300, at *3 (D.N.H. June 19, 2019) (quoting *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009)). "The party seeking certification need not establish a precise number of putative class members, as the court may draw reasonable inferences from the facts presented to find the requisite numerosity." *Gomes v. Acting Sec'y of U.S. Dep't of Homeland Sec.*, 561 F.Supp.3d 93, 99 (D.N.H. 2021) (quoting *McCuin*, 817 F.2d 161, 167 (1st Cir. 1987)).  Further, as here, where only declaratory and injunctive relief is sought, "plaintiffs need not identify all members of the proposed class, warranting 'relaxation of the requirement of a rigorous demonstration of numerosity.'" *Id.*

The Plaintiff class plainly satisfies both elements of numerosity.  First, by even a conservative estimate of numerosity, in any given month between 2018 to 2021, between 650 and 900 CFI Waiver participants did not get 50% or more of the key hands-on services they have been found eligible for and approved to receive. Ex. G, Declaration of Michael Petron ("Petron Decl.") at Petron Exhibit C. For any given month from January 2021 to December 2021, an average of 835 participants did not

receive 50% or more authorized service units for the Codes of Interest. *Id.* at ¶ 15.  According to Dr. Schuchman, missing 50% or more services in any given month relegated it to a "coin toss" for the CFI Waiver participants about whether they will get essential help with their activities of daily living that month.  Ex. A, Schuchman Decl. ¶ 65.  For the purposes of establishing numerosity, the Plaintiffs have used this 50% or greater marker to identify who is indisputably in the class. However, Plaintiffs do not concede that members of class are not at risk when they are deprived of far fewer units of services.

According to Dr. Schuchman, the failure to provide these critical hands-on services creates the dangerous likelihood that the CFI Waiver participants' complex medical conditions will worsen and they will be forced to go into nursing facilities to get the care they need. Ex. A, Schuchman Decl. ¶ 62-65.  Preventing this violative outcome is the very purpose of the CFI Waiver and it could be accomplished if Defendants addressed, at last, their deficient administration of the waiver, which is precisely what this class action seeks to compel on behalf of the class of CFI Waiver participants who are currently vulnerable.

Second, joinder is impracticable here.  It would be extremely difficult, if not impossible, for most of the proposed class members to file and litigate to conclusion each of their individual suits against the Defendants, particularly given the nature of their disabilities, their limited financial resources (as evidenced by their eligibility for Medicaid), and their segregation in their own homes. "The size of the class, the asserted disabilities of proposed class members, and geographic diversity, make it 'highly unlikely that separate actions would follow if class treatment were denied.'"  *Kenneth R. v. Hassan*, 293 F.R.D. 254, 265 (D.N.H. 2013) (citations and internal quotations omitted); *see also J.N. v. Oregon Dep't of Educ.*, 338 F.R.D. 256, 264 (D. Or. 2021) (internal quotation marks and citations omitted, alterations normalized) ("[I]n addition to class

size, courts consider other factors to determine whether joinder is impracticable, including the ease

of identifying and contacting class members; the geographical spread of class members; and the

ability and willingness of individual members to bring claims, as affected by their financial

resources, and their fear of retaliation in light of an ongoing relationship with the defendant"); *Van*

*Meter v. Harvey*, 272 F.R.D. 274, 281-82 (D. Me. 2011) (noting that "disability, confinement and

financial difficulty, and the inability of class members to bring their own separate actions have

been found to be factors strongly weighing against the practicability of joinder") (citation omitted).

Under these circumstances, "the difficulty or inconvenience of joining all members makes class

litigation desirable." *Koster v. Perales*, 108 F.R.D. 46, 49 (E.D.N.Y. 1985). The impracticality of

joinder is particularly acute where, as here, the class comprises individuals who will be at serious risk

of institutionalization in the future. Where "[t]he alleged class also includes unnamed, unknown

future" class members who will allegedly be harmed by the defendants' conduct and policies, courts

have held that joinder is "certainly impracticable." *Jack v. Am. Linen Supply Co*., 498 F.2d 122, 124

(5th Cir. 1974).

### 2. Questions of Law and Fact Common to the Class Abound

This case, like many Title II cases, is appropriate for class certification because it focuses

on standardized conduct of the Defendants that creates the serious risk of institutionalization and

it does not depend on individualized determinations of either liability or remedy. In this matter,

there are common questions "whose resolution will resolve an issue that is central to the validity

of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Rule 23(a)(2) requires that the claims of a proposed class share common questions of law or

fact. F. R. Civ. P. 23(a)(2). As many courts have noted, commonality is a "low bar." *Gomes*, 561 F.

Supp. at 99 (quoting *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st

Cir. 2008)). "[T]otal commonality of questions among the putative class members is not required."

*Id.*  Commonality is established by the "capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (internal citation omitted); *see also Parent/Prof'l Advocacy League v. City of Springfield*, 934 F.3d 13, 28 (1st Cir. 2019) ("Those common answers typically come in the form of a 'particular and sufficiently well-defined set of allegedly illegal policies or practices that work similar harm on the class plaintiffs.'") (alteration in original; internal citation omitted).

Importantly, for the purposes of Rule 23(a), "[e]ven a single [common] question will do." *Wal-Mart* 564 U.S. at 359 (alteration in original; internal quotation omitted); *see also Mulligan v. Choice Mortg. Corp. USA*, No. Civ. 96-596-B, 1998 WL 544431 at *3 (D.N.H. Aug. 11, 1998) ("Because the class need share only a single legal or factual issue at this stage of the analysis, the commonality prerequisite ordinarily is easily satisfied"); *Conner B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288, 293 (D. Mass. 2011) ("Commonality is easily satisfied in part because 'there need be only a *single issue common* to all members of the class.'") (internal quotation omitted).

Commonality may exist even where class members are not identically situated, or where their injury does not arise in exactly the same way.  As recently noted in *Gomes*, *Wal-Mart*'s "'same injury' test 'can be satisfied by one instance of injurious conduct, even when the resulting injurious effects—the damages—are diverse.'" *Gomes*, 561 F. Supp. 3d 100 n. 3 (internal quotation omitted) (D.N.H. May 4, 2020); *see also Doe v. Comm'r, N.H. Dept. of Health and Human Servs.*, Civ. No. 18-cv-1039-JD, 2020 WL 2129717, at *4-5 (D.N.H. May 4, 2020) (commonality demonstrated where "[a]s alleged, the named plaintiffs and the proposed class members have been and will be subjected to the same policy and practice by the Commissioner"); *Hawkins ex rel. Hawkins v. Comm'r, N.H. Dept. of Health and Human Servs.*, No. Civ. 99-143-JD, 2004 WL 166722,  *3 (D.N.H. 2004) (commonality demonstrated where claims arose from

11

common fact pattern of class members being "denied access to Medicaid services" due to NHDHHS's policies and practices).

In *Kenneth R.*, this Court found commonality where "the State's policies and practices have created a systemic deficiency in the availability of community-based mental health services, and [ ] that deficiency is the source of the harm alleged by all class members." *Kenneth R.*, 293 F.R.D. at 267. Specifically, there were common questions related to whether New Hampshire had a systemic deficiency that deprived the putative class of necessary community-based mental health services and whether that deficiency was the result of the State's policies and practices. *See id.* The Court concluded: "whether the systemic conditions, if shown to exist, expose all class members to a serious risk of unnecessary institutionalization . . . is a central and common contention whose resolution will defeat or advance the claims of all class members, whether institutionalized or not." *Id.*

Courts have easily identified commonality in class actions seeking injunctive and declaratory relief to correct systemic policies and procedures that allegedly violated federal law, including the ADA. *See*, *e.g.*, *Oster v. Lightbourne*, No. C09-4668, 2012 WL 685808 *5 (N.D. Cal. Mar. 2, 2012) (rejecting defendants' challenge under *Wal-Mart* that class members did not establish commonality because they suffer different injuries); *Lane v. Kitzhaber*, 283 F.R.D. 587, 598 (D. Or. 2012)("As in other cases certifying class actions under the ADA and [Section 504], commonality exists even where class members are not identically situated").

The Plaintiff class' *Olmstead* claims satisfy commonality in that the claims raise questions common to the class, including:

> 1) Whether Defendants administer the CFI Waiver in a manner that places the Plaintiff class at serious risk of unjustified institutionalization;

2)  Whether Defendants' failure to track and remediate unmet CFI Waiver service needs of the Plaintiff class places them at serious risk of institutionalization; and

3)  Whether Defendants satisfy their legal obligations under the ADA, Section 504, the Medicaid Act and Due Process clause to notify CFI participants when they are not going to receive their CFI Waiver services with reasonable promptness so that they may challenge the denial, termination, or change in the services to mitigate the risk of institutionalization they are experiencing.

The common questions are susceptible to common answers.  The proof necessary to answer these questions is the same for all class members because Plaintiffs allege injury from a systemic violation, and the class's injuries arise from Defendants' uniform policies and practices affecting all class members.  *See Kenneth R*., 293 F.R.D. at 267-68.  The common contentions here are "capable of class-wide resolution" since a "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart,* 564 U.S. at 350.  Furthermore, class actions seeking only injunctive and declaratory relief "'by their very nature' present common questions of law and fact."  *Moore v. Napolitano*, 269 F.R.D. 21, 28 (D.D.C. 2010).

The common thread or "glue" which unites their common factual and legal claims is the fact that members of the plaintiff class are at serious risk of unnecessary institutionalization and segregation as a result of Defendants' failure to provide CFI Waiver services necessary to avoid the institutionalization of people with disabilities.  The Plaintiffs seek a system-wide remedy to cure the Defendants' deficient system that will benefit each member of the class.

(i)  Plaintiffs Are People with Disabilities Who Depend on the CFI Waiver to Avoid Involuntary Institutionalization

The named Plaintiffs bring this case on behalf of themselves and all similarly situated adults with disabilities.  All the named Plaintiffs and members of the Plaintiff class have disabilities that substantially limit major life activities, including self-care, and that require ongoing services

13

and support.  *See* Ex. B, Price Decl. ¶¶ 4, 6-8, 10; Ex. C, Bates Decl. ¶¶ 5, 8, 9, 10; Ex. D, Fitzmorris

Decl. ¶¶ 5, 9-14.  Defendants have delegated to case management agencies the role of assessing

the needs of the CFI Waiver participants.  Defendants, through their agents, have determined

named Plaintiffs and others similarly situated to be eligible for community-based CFI Waiver

services, and the class members desire to receive those services in integrated settings. *See* Ex. B,

Price Decl. ¶¶ 5, 10, 12, 19-22; Ex. C, Bates Decl. ¶¶ 7, 10, 12-14, 20-23; Ex. D, Fitzmorris Decl.

¶¶8, 14, 16-17, 23-26. Importantly, the CFI Waiver was created to allow those New Hampshire

residents who are clinically eligible for nursing facility level of care the opportunity to receive

such care in their communities rather than in an institution.  *See* N.H. Rev. Stat. Ann. RSA 151-

E:1.  According to the most recent report from Centers for Medicare and Medicaid Services (CMS)

about the CFI Waiver, "the program was designed as an alternative to nursing facility placement…

."  Ex. H, HCBS Waiver Review Final Rpt. for New Hampshire Choices for Independence Waiver

Program, p. 1 (Jun. 23, 2021) (NHDHHS56428, at 56431).

The named Plaintiffs and putative class members are at serious risk of institutionalization

even though they have been determined to be eligible for CFI Waiver services as an alternative to

nursing facility care. Ex. A, Schuchman Decl. ¶¶ 62-68; Ex. B, Price Decl. ¶¶ 14-19; Ex. C, Bates

Decl. ¶¶ 14-19; Ex. D, Fitzmorris Decl. ¶¶ 17-22; Ex. I, Declaration of Ryan Price ("Ryan

Decl.")¶¶ 6-10; Ex. E, Carlson Decl. ¶¶ 7-13; Ex. J, Declaration of Martha Larabee ("Larabee

Decl.") ¶¶ 7-8, 10-13.   They suffer delays in the delivery of their CFI Waiver services and

experience unpredictable interruptions in their services Ex. B, Price Decl. ¶ 15; Ex. C, Bates Decl.

¶ 16; Ex. D, Fitzmorris Decl. ¶ 19; Ex. A, Schuchman Decl. ¶ 21, 52, 55, 56.

> (ii)   Defendants' Systemic Deficiencies Impact All Members of the Putative
> Class in the Same Manner Making Common Resolution of the Issues
> Appropriate

Defendants have known for many years about the deficiencies in how they administer the CFI Waiver and have failed to address them. The relief sought by the Plaintiffs is systemic and will benefit each member of the class because it will result in a more reliable administration of the CFI Waiver.

Defendants admit that they do not track the unmet needs of the CFI participants despite acknowledging that this information would provide them with needed information about network adequacy. Ex. K, Guidehouse Assessment of New Hampshire Long-term Services and Supports: BEAS Validation of Interview Findings ("Guidehouse Interview Findings"), (PLTF-GH-0000661). Defendants admit that it lacks the staff necessary to track and report on critical incidents and waiver assurance performance measures. *Id.*

According to the review done by Defendants' contractor Guidehouse, from 2017-2020, "there [were] significant gaps between the number of authorized CFI services to the number of paid units (31% of the authorized units are not paid.)" Ex. L, New Hampshire Long Term Supports and Services (LTSS) for Seniors & Individuals with Physical Disabilities, Findings and Recommendations, (Guidehouse Report) at 29 (NHDHHS-32997). For some key services like "home health aide per visit," there was a 49% gap between the authorized services and the units actually provided and paid for. *Id.* That means that from 2017 to 2020, nearly 50% of the home health aide services that CFI participants were determined to need were not provided to them. Plaintiffs' expert analysis shows that these gaps were not concentrated in any one year and have persisted past 2020.

Plaintiffs' data expert Michael Petron studied the Defendants' Medicaid claims data produced by the Defendants and found similar gaps between authorized critical services and delivered CFI services. Mr. Petron focused particular attention on the four groups of CFI service

15

units that Dr. Schuchman identified were the most critical for CFI Waiver participants to ensure that they are not placed at serious risk of being institutionalized.  Ex. A, Schuchman Decl. ¶ 10; Ex. G, Petron Decl.  ¶ 12. Mr. Petron refers to the Medicaid claims for these services as the Codes of Interest.  Ex. G, Petron Decl.  ¶ 12. Mr. Petron's analysis of month by month data shows that in any given month from January 2018 to December 2021, between 650 to 900 CFI Waiver participants did not receive between 50% and 100% of the services for which they had been authorized and determined to need.  *Id*. at Petron Exhibit C.

Moreover, the analysis of the gaps between authorized services and the delivered services likely does not tell the whole story.  In fact, when CFI Case Management entities do not have a provider to deliver the services a participant requires, they historically have not input service needs into the Defendants' data collection system or otherwise reported a participant's service needs to Defendants.  Ex. L, Guidehouse Rept. at p. 29 (NHDHSS32997) (documenting that NHDHHS did not require case managers to track when no provider was available).  Because CFI Waiver case management providers often do not seek authorizations to deliver services for participants if they know that they do not have a service provider to deliver those services, the authorized services are an undercount of the services that participants need.  Ex. K, Guidehouse Interview Findings (PLTF-GH-0000661) ("prior authorizations must have an assigned service provider").

On October 28, 2019, NHDHHS created a process whereby case management agencies could report that there was "no provider available" for a participant's services in the BEAS computer system.  Ex. L Guidehouse Report, at 29 (NHDHHS 32997). But once this information has been reported, Defendants do nothing with this data. Even if Defendants regularly reviewed the information, simply tracking the lack of service providers is only a first step.  Defendants have failed to implement system changes that will allow for that service gap to be corrected.  As a result,

16

the CFI participant is in no better situation than before the case managers began tracking the fact that no provider is available. And even after being sued in this lawsuit, the Department did not take the obvious and simple step of running regular reports to more accurately understand the scope of CFI service gaps. *See* Ex. M, Tran. of King Dep. p. 120:5-10.

NHDHHS is the single state agency overseeing the administration of the CFI Waiver. It has chosen to use case management entities to administer the CFI Waiver program. This choice does not eliminate its responsibility under the ADA to operate its programs and services in a manner that avoids discrimination against people with disabilities.

NHDHHS has argued that it has no direct responsibility to ensure that CFI participants receive the services they have been determined to need. Specifically, Defendants argued that:

> In this case, the allegations and the regulatory regime governing the CFI Waiver program reveal the relationship between the NH DHHS and the private case management agencies and private service providers to be minimal. The NH DHHS regulates them, through licensing and Medicaid enrollment, and reimburses them for the Medicaid services they provide. . . The NH DHHS requires the case management agencies to create quarterly reports that it may inspect upon request. The NH DHHS performs an annual audit of the case management agencies. The case management agencies otherwise operate as private entities that employ case managers to develop person-centered care plans for CFI Waiver participants and that are responsible for ensuring that the services provided to program participants by service providers "are adequate and appropriate for the participant's needs, and are being provided, as described in the comprehensive care plan." N.H. Admin. R. He-E 805.05(d)(2). The private service providers and the case managers interface with to provide these services also operate as private licensed and Medicaid enrolled entities in the provision of services.

Motion to Dismiss, at 46 (ECF No. 23). The Defendants' decision to delegate administrative responsibilities to private entities without monitoring the outcomes for the CFI Waiver participants is a structural decision that NHDHHS made in the design of this program. It is a decision it can and must change if such an accommodation is necessary to protect the integration needs of the class. As this Court found: "[t]o the extent defendants suggest that they can insulate themselves

17

by contracting out to private entities their obligation to provide services in compliance with the ADA, they are wrong." Order on Motion to Dismiss (ECF No. 41) at 27. Defendants cannot abandon their ADA responsibilities by claiming to have delegated them to the private case management entities which Defendants fail to hold accountable.  It is the governmental entity that bears the ultimate responsibility of ensuring the integration needs of the CFI Waiver participants. See Ex. N, N.H. Interview Themes from BEAS Interviews (PLTF-GH-0000642-43), at 1-2.

   In the 2021 Guidehouse report, Guidehouse states that NHDHHS should "consider contract[ing] with CM [case management] entities directly rather than having them licensed as home care providers through the standard Medicaid enrollment process.  Contracting with the CM entities directly puts the state in a better position to hold the CM entities accountable to quality standards."  *Id.* at p. 12 (NHDHHS 32980).  New Hampshire has failed to equitably dole out its financial resources, so that far more taxpayer dollars are funding nursing facility placements than supporting home and community-based placements. Ex. O, New Hampshire Fiscal Policy Institute, "Long Term Care Servs. and Supports in New Hampshire (PLTF-0023081-23135)," (state could reduce Medicaid costs by helping people access CFI Waiver services and decreasing more costly use of nursing facilities).  In fact, New Hampshire ranked 47th out of 50 states in its Medicaid spending for home and community-based spending according to the AARP Long Term Care Score Card.  Ex. P, AARP Across the States 2018: New Hampshire State Profile, p. 3 (PLTF-0027202-205).  According to AARP, in 2016, New Hampshire spent $258 for each person in a nursing facility while it spent $42 per person for people getting home and community-based services. *Id.* This sad ranking demonstrates why the Plaintiff class needs injunctive relief to address the deficient administration of the CFI Waiver.

     **3.**     **The Named Plaintiffs' Claims are Typical of Those of the Class Members**

Typicality exists when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The claims are typical if they "arise [ ] from the same event or practice or course of conduct that gives rise to the claims of other class members, and … are based on the same legal theory." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009) (quoting *In re Am. Med. Sys. Inc.*, 75 F.3d 1067, 1082 (6th Cir. 1996).; *see In re Dial Complete Mktg. and Sales Practices Litig.*, 312 F.R.D. 36, 54 (D.N.H. 2015) ("[T]he typicality requirement is satisfied if the class representative's claims are not likely to be subject to unique defenses that would divert attention from the common claims of the class" … "and where the court need not make highly fact-specific or individualized determinations in order to establish a defendant's liability to each class member.") (internal quotation marks and citations omitted); *see also Gomes*, 561 F. Supp. 3d at 102-103; *Rapuano v. Trs. of Dartmouth Coll.*, 334 F.R.D. 637, 648 (D.N.H. 2020).

The named Plaintiffs' claims and those of the class members "need not be identical; they need only 'share the same essential characteristics.'" *Gomes*, 561 F. Supp. 3d at 101. (quoting *Ouadani v. Dynamex Operations E., LLC*, 405 F. Supp. 3d 149, 162 (D. Mass. 2019)). Indeed, typicality "refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff." *Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 209 (D.D.C. 2018) (quoting *Hoyte v. Dist. of Columbia*, 325 F.R.D. 485, 490 (D.D.C. 2017)). Typicality only requires "sufficient factual and legal similarity" so that "the representative's interests are in fact aligned with those of the absent class members." *Garnett*, 301 F. Supp. 3d at 209 (internal citations omitted). The key when assessing typicality is not whether there are differences among the class, but only whether there are any differences that are material to the claims alleged. *Steward v. Janek*, 315 F.R.D. 472, 490 (W.D. Tex. 2016) (explaining that "the relevant level of generality depends upon whether,

19

considering the claims that Plaintiffs assert and the relief they seek, meaningful legal distinctions exist between the Plaintiffs and the proposed class members.").

Typicality exists here for many of the same reasons that support commonality.  The named Plaintiffs and the class members are harmed by the same deficient policies and practices the Defendants employ in the administration of the CFI Waiver program. *See* Section B at III.B.2. According to Dr. Schuchman, the kinds of gaps in services experienced by the named Plaintiffs that place them at risk are the same sorts of gaps in services that would place any CFI Waiver participant at serious risk of deterioration that would lead to hospitalization or nursing facility placement.  *See* Ex. A, Schuchman Decl. ¶ 15, 62-68. The risks of falls, malnourishment, dehydration, infections are real risks for people who need and do not receive their CFI Waiver services and supports.  *Id.*

As Michael Petron describes, the putative class have experienced significant gaps in the authorized service units of the Codes of Interests in any given month between January 1, 2018 through December 31, 2021. For example, in any given month during this four-year period, between 650 and 900 CFI Waiver participants did not receive between 50% and 100% of their authorized critical services.  Ex. G, Petron Decl. at Petron Exhibit C.  In 2021 alone, between 700 and 900 CFI Waiver participants did not receive between 50% and 100% of their authorized critical services.  Ex. G, Petron Decl. at ¶ 14.

According to Dr. Schuchman,

> While even a one-day gap may lead to serious harm and risk, the risk of serious harm increases over time because they are repeatedly exposed to the risking situation.  If they experience a gap in services from the Waiver, they may be saved by a friend of family member who can help out in a pinch but the more gaps they experience over time, the more likely they are to wind up with serious negative consequences such as hospitalization or institutionalization. In this way, each gap adds to the cumulative risk.

Ex. A; Schuchman Decl. at ¶ 64.

The Named Plaintiffs similarly had significant gaps in their authorized critical service units.  For example, in 2021, Ms. Fitzmorris had six months in which she did not receive 50% or more of her services (January, February, April, May, June and July).  Ex. G, Petron Decl. at ¶ 16.  In 2021, Ms. Price had seven months in which she did not receive 50% or more of her services (January, February, August, September, October, November, and December).  *Id.*  Ms. Bates had twelve months in which she did not receive 50% or more of her services (January to December).  *Id.*

There also are no differences in facts or defenses among individual class members that undermine typicality.  Although class members differ in their disabilities, they all seek to compel Defendants to at last address the deficiencies putting them at serious risk of institutionalization.  *See*, *e.g.*, *O.B. v. Norwood*, No. 15 C 10463, 2016 WL 2866132, at *4 (N.D. Ill. May 17, 2016) (finding typicality despite differences in individual disabilities and required services among the class members); *Steward*, 315 F.R.D. at 490 (finding typicality where plaintiffs seek that the court order particular changes to the system of community-based Medicaid services); *Kenneth R.*, 293 F.R.D. at 270 (typicality existed, notwithstanding individual factual differences among class members, because each class member had "an abiding interest in securing the availability of community-based services options sufficient to preclude unnecessary institutionalization").

### 4.    Named Plaintiffs and Class Counsel Will Adequately Represent the Class

Rule 23(a) finally requires that the named plaintiffs "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement serves as a "guidepost [ ] for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claim are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d

324, 339 (D. Mass. 2015) (quoting *Falcon*, 457 U.S. at 157 n.13.   In order to satisfy this requirement, plaintiffs must establish that: (1) the interests of the representative parties will not conflict with the interests of any of the class members; and (2) that counsel chosen by the class representatives is qualified, experienced, and able to vigorously conduct the proposed litigation. *See*, *e.g.*, *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985); *Kenneth R.*, 293 F.R.D. at 270; *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1534 (D. Mass. 1991). Regarding the adequacy of the representative parties, the Court need only find one adequate class representative. *See Borum v. Brentwood Vill., LLC*, 324 F.R.D. 1, 17 (D.D.C. 2018).   Both elements are met here.

>  (i)     The named Plaintiffs' interests coincide with those of the class, making them adequate to represent the class.

The named Plaintiffs' interests coincide with the interests of the rest of the class members. *See generally Falcon*, 457 U.S. 147.   None of the named Plaintiffs seek personal monetary damages or other individualized relief to the exclusion of other class members.   To the contrary, the focus of this litigation is the grant of broad injunctive relief that will benefit the entire class. No conflicts exist that could hinder the named Plaintiffs' ability to vigorously pursue the litigation on behalf of the class.   And the named Plaintiffs are prepared to fairly and adequately protect the interests of the class.   They all share an interest in obtaining relief that will allow them to avoid unnecessary institutionalization and to receive CFI Waiver services in the community with reasonable promptness. *See Cohen v. Brown Univ.*, 16 F.4th 935, 948-950 (1st Cir. 2021) (holding that class representatives adequately represented the interests of the class even though they did not participate in negotiation of the amended settlement agreement, and stating: "[a]dequacy of representation is not hollowed out where, as here, the interests are generally shared by members of the class, albeit 'differently weighted.'") (citations omitted); *Kenneth R.*, 293 F.R.D. at 470

(recognizing that "all class members, as defined and without regard to current preferences, have an abiding interest in securing the availability of community-based services options sufficient to preclude unnecessary institutionalization"). *See* Ex. B, Price Decl. ¶¶ 23-28; Ex. C Bates Decl. ¶¶ 24-29; and Ex. D, Fitzmorris Decl. ¶¶ 27-32.

(ii)    <u>Counsel are qualified, experienced and able to vigorously represent the<br>class members</u>.

No conflicts exist between counsel, named Plaintiffs, and the proposed class members that would compromise their ability to represent the class. Plaintiffs' attorneys are counsel with deep experience in many public interest cases and in the litigation of complex federal actions, including class actions involving disability and health programs. *See* Declarations of Kelly Bagby, Daniel Deane, Kay Drought, and Pamela Phelan, attached at Exs. Q, R, S, and T, respectively. They are highly qualified, and the resources of their firms are more than adequate to represent the class completely. *See*, *e.g.*, *Andrews*, 780 F.2d at 130 (counsel should be qualified, experienced and able to vigorously conduct the proposed litigation) (citations omitted); *Wright v. Southern N.H. Univ.*, 565 F. Supp. 3d 193, 203 (D.N.H. 2021); *see also Faherty v. CVS Pharm., Inc.*, No. 09-CV-12102, 2011 WL 810187, at *4 (D. Mass. 2011). Plaintiffs' counsel AARP Foundation, Nixon Peabody, Disability Rights Center – New Hampshire, and New Hampshire Legal Assistance have attached declarations to this filing detailing their extensive experience in conducting class actions and complex litigation, subject matter expertise with respect to disability civil rights actions, the significant resources invested by each firm in investigating and developing claims, conducting discovery and depositions, analyzing documents, drafting briefs, meeting with the named Plaintiffs, and the firms' commitment to this litigation. *Id.*

    **5.**    **Defendants' Acts and Omissions Apply Generally to the Class Making Class Certification Under Rule 23(b)(2) and Injunctive Relief Appropriate.**

A class may be certified under Rule 23(b)(2) when the prerequisites of Rule 23(a) are met and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).   This requirement generally is met "where plaintiffs show that the 'State engages in a pattern or practice of agency action or inaction—including a failure to correct a structural deficiency within the agency . . .with respect to the class.'"  *Kenneth R.*, 293 F.R.D. at 271 (quoting *M.D. v. Perry*, 675 F.3d 832, 841 (5th Cir. 2012)); *see Wal-Mart*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class").

Indeed, courts have long recognized that certification under Rule 23(b)(2) is particularly important and an appropriate vehicle for civil rights actions seeking to address systemic deficiencies.  *See, e.g., Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) ("[t]he conduct complained of is the benchmark for determining whether a subdivision (b)(2) class exists, making it uniquely suited to civil rights actions"); *Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980) ("[A] class action may be maintained under Fed. R. Civ. P. 23(b)(2), which is an especially appropriate vehicle for civil rights actions"); *Hawkins,* 2004 WL 166722 at *4 ("Classes certified under Rule 23(b)(2) 'frequently serve as the vehicle for civil rights actions and other institutional reform cases,' including cases alleging deficiencies in government administered programs such as Medicaid.") (quoting *Baby Neal v. Casey*, 43 F.3d 48, 58-59 (3d Cir. 1994)).

As already established in the above section on commonality, described in Section III.B.2, certification of a class under Rule 23(b)(2) is appropriate because Plaintiffs allege systemic civil rights violations and seek a single injunction that would provide relief to each member of the class.

## IV.  CONCLUSION AND REQUEST FOR RELIEF

The Defendants' failure to establish and administer the CFI Waiver program in a manner to avoid the risk of unnecessary institutionalization is precisely the kind of conduct Rule 23(b)(2) class actions were designed to address.  Certification is both appropriate and necessary in order to remedy the system-wide legal violations.  Plaintiffs thus request the Court certify a Plaintiff class, appoint Plaintiffs' counsel as counsel for the class, and appoint named Plaintiffs as class representatives.

Dated:  August 29, 2022

Respectfully submitted,

STEPHANIE PRICE, EMILY
FITZMORRIS, and KATHLEEN BATES,
on behalf of themselves and all others
similarly situated,

By Their Attorneys,

*/s/ Mark T. Knights*
Mark T. Knights, Esq.

Cheryl S. Steinberg (#10063)
csteinberg@nhla.org
NEW HAMPSHIRE LEGAL ASSISTANCE
117 N. State Street
Concord, NH 03301
T: (603) 206-2210

Kay E. Drought (#12851)
kdrought@nhla.org
NEW HAMPSHIRE LEGAL ASSISTANCE
154 High Street
Portsmouth, NH 03801
T: (603) 206-2253

Pamela E. Phelan (#10089)
Pamelap@drcnh.org
DISABILITY RIGHTS CENTER–
NEW HAMPSHIRE
64 North Main Street, Suite 2
Concord, NH 03301
T: (603) 228-0432

Mark Tyler Knights (#670991)
mknights@nixonpeabody.com
Kierstan E. Schultz (#20682)
kschultz@nixonpeabody.com
W. Daniel Deane (#18700)
ddeane@nixonpeabody.com
NIXON PEABODY LLP
900 Elm Street, 14th Floor
Manchester, NH 03101
T: (603) 628-4000

Kelly Bagby (*pro hac vice*)
kbagby@aarp.org
Stefan Shaibani (*pro hac vice*)
sshaibani@aarp.org
Maame Gyamfi (*pro hac vice*)
mgyamfi@aarp.org
AARP FOUNDATION
601 E Street NW
Washington, DC 20049
T: (202) 434-2060

25

## <u>CERTIFICATE OF SERVICE</u>

I, Mark T. Knights, Esq., hereby certify that the foregoing *Memorandum of Law in Support of Plaintiffs' Motion for Class Certification* was filed through the ECF system and served electronically on the registered participants as identified on the Notice of Electronic Filing (NEF).


Dated:  August 29, 2022                    */s/ Mark T. Knights*                                    
                                           Mark T. Knights, Esq.

26