## EXHIBIT A

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| Stephanie Price, *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 3:21-cv-00025 |
| | ) | |
| Commissioner, currently Lori Shibinette | ) | |
| in her official capacity as Commissioner of | ) | |
| the New Hampshire Department of Health | ) | |
| and Human Services, *et al.*, | ) | |
| Defendants. | ) | |

## DECLARATION OF MATTAN SCHUCHMAN MD
## IN SUPPORT OF THE PLAINTIFFS' MOTION FOR CLASS CERTICATION

I, Mattan Schuchman MD, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I make this declaration in support of the Plaintiffs' Motion for Class Certification. The facts set forth herein are true and based on my own personal knowledge and professional experience, and if called upon to testify thereto, I could and would competently do so under oath.

2. I am Medical Director of the Johns Hopkins Home-based Medicine program. I am also an Assistant Professor of Geriatric Medicine and Gerontology at the Johns Hopkins School of Medicine.

3. Johns Hopkins Home-based Medicine program (JHOME) provides older adults in the Baltimore, Maryland area with primary care and other medical services via in-home visits with medical professionals. Patients in JHOME are unable to leave home or can only do so with significant assistance.

### A. My Background and Experience

4. I received my medical degree and residency training in internal medicine from the University of Maryland. I completed my fellowship training in Geriatric Medicine and Gerontology at the Johns Hopkins School of Medicine.

1

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

5. I provide medical care for individuals with significant functional impairments. My specialty is in geriatrics and my field of practice is in home-based medicine, meaning that I care for individuals based on their inability to leave home due to disability. My patients range in age from 37 to 105, with an average age of 80.

6. As a geriatrician, primary care provider, and house-calls doctor, I care for individuals who are at serious risk for institutionalization because of the level of support required to continue to live independently. Often, they experience hospitalizations and stays in nursing or rehabilitation facilities. I work together with an interdisciplinary team to create care plans to help maintain people in their home environment.

7. My experience is relevant to the Plaintiffs because they each experience limitations in independent mobility. They each have complex medical care needs as well as modifications or assistance in multiple activities of daily living (ADLs). I regularly coordinate and participate in multidisciplinary care for patients who participate in Maryland's Medicaid Community Options Waiver program, which operates in a manner similar to how the New Hampshire's Choices for Independence Medicaid Waiver program (CFI Waiver) is supposed to operate.

8. A description of my education, training, academic, administrative, and clinical appointments and licenses, expert and consultant work, grants and contracts, consulting and editorial positions, honors and awards, memberships and office/committees in professional societies, institutional teaching activities, publications, and presentations at national and international meetings are set forth more fully in my curriculum vitae. A true and correct copy of my curriculum vitae is attached hereto as Schuchman Ex. A.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**B. Methodology**

9.  I have worked with Plaintiffs' Counsel's Nurse Consultant Sue Bessette to review and analyze the medical records of the three Plaintiffs:  Emily Fitzmorris, Stephanie Price, and Kathy Bates.  Sue Bessette reviewed and categorized each person's records from multiple sources and laid out her analysis of each Plaintiffs' conditions and risk factors.  I reviewed the medical records to validate Ms. Bessette's findings or to make my own independent findings.  The documents related to Ms. Bessette's work and other documents I considered are identified on Ex. B to this Declaration.

10.  I spoke with Ms. Bessette and Plaintiffs' Counsel and reviewed the Plaintiffs' records myself to form my opinions as outlined in this Declaration.  I spoke with Plaintiffs' data analyst expert Michael Petron to discuss the Medicaid claims data that he was analyzing.  I selected the four sets of services that I believe are clinically the most critical for CFI Waiver participants to ensure that they are not placed at serious risk of being institutionalized.  Those specific CFI services are referred to as the key or critical services in my Declaration.

**C. Opinion – Overview**

11.  Based on my experience, education, training, and review of evidence provided to me, I have come to the following opinions:

12.  The gaps in services provided for individuals' personal care and wellbeing under the CFI Waiver as exemplified by the cases brought forward in this lawsuit put the CFI Waiver recipients at serious risk of being institutionalized. In this declaration I will provide an overview of the care gaps experienced by each Plaintiff, as well as the reasons why, in my judgement, these gaps present a serious risk for institutionalization for the named Plaintiffs and other CFI Waiver participants.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

13.   Based on my review and experience, there has been deficient provision of key CFI Waiver services that have led to preventable institutionalizations or serious and avoidable risk for institutionalization. These key CFI Waiver services that are lacking include but are not limited to: 1) personal care services such as provision of hands-on daily care to prevent worsening of condition, safe mobility and transfers, assistance with meals and medications, and hygiene; 2) home maker services to ensure the waiver recipients' homes are safe to avoid heightening fall risks; 3) intermittent skilled nursing services; and 4) other kinds of home care aide assistance.  These are the key services that I identified for Mr. Petron to analyze in the MMIS data.

14.   Based on my review of the Plaintiffs' medical records, I also noted some services that placed the named Plaintiffs at risk of deteriorating medically like access to transportation, particularly to medical appointments and proper equipment for activities of daily life.  Finally, an overarching problem for the named Plaintiffs was the inability to coordinate and schedule backup caregivers when primary caregivers fail to show up. The unpredictability of the provision of CFI waiver services placed the named Plaintiffs at serious risk of dangerous crises and admission to institutional settings as a result.

15.   The nature of the gaps in care that put the individuals at serious risk are likely to be generalized to other Medicaid waiver participants because they are not a result of individual differences in the participants' conditions. Rather, they are the result of the unavailability of reliable personal care providers under the CFI Waiver.

**D.   Opinion – Emily Fitzmorris**

16.   Ms. Emily Fitzmorris is 38 and has two teenage sons, 13 and 16 years old. Her older son lives with her in a three-bedroom apartment. Her younger son lives in a residential placement facility due to developmental disability, and visits Ms. Fitzmorris on Thursdays. ▮▮▮▮▮

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████ During the time Ms. Fitzmorris has been on the CFI Waiver, her mother has had hip problems severe enough to warrant a total hip replacement. However, the surgery has been delayed because she has needed to assist Emily with caregiving when Ms. Fitzmorris' paid caregivers fail to arrive and on weekends when she has no paid caregivers.

17. ███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████

18. ███████████████████████████████████████████████

███████████████████████████████████████████████████████

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

19.

20.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████   For example, after her partner's death, she had a gap in her caregivers that lasted 11 days from March 26, 2019 to April 6, 2019.

21.   These gaps in caregiving exposed Ms. Fitzmorris to unnecessary risk of institutionalization for a number of reasons: 1) inattention to basic needs; 2) lack of hygiene; 3) catheter care issues; 4) skin integrity issues; 5) contractures; 6) poor medication management and pain control; and 7) psychological distress.

22.   *Inattention to basic needs.* Ms. Fitzmorris needs assistance with all activities of daily life, including basic needs such as eating and drinking safely. She cannot get food or water on her own and requires another person to assist her. An Adult Protective Services (APS) report indicates that meals were not being made because she was having a hard time securing adequate care. Besides the discomfort from hunger and thirst, in Ms. Fitzmorris's condition, weight loss could have a negative impact on her health and ability to remain in the community. Body fat provides natural cushioning, and loss of fat tissue increases the chances of skin breakdown because hard bony parts are putting pressure directly on the skin. Nutrition is also important to maintaining skin integrity as well as other basic bodily functions. Insufficient water intake, when severe, can be directly injurious to the kidneys. ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

23.

24.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

25.  ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████

26.  *Contractures.* When paralyzed, muscles and tendons will contract if not stretched on a routine basis. Contractures cause problems with the ability to perform hygiene because the legs are often locked together or even crossed, and knees and hips become flexed. Hands tend to ball up into fists which can cause painful burrowing of nails into the palms. If this occurs, surgery or months of

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

careful splinting is required to release contractures. Contractures are prevented with daily range of motion exercises that could be provided by caregivers who were often unavailable for Ms. Fitzmorris. Sleeping in bed, rather than in her chair, is also important to prevent leg and hip contractures. Sleeping overnight in a wheelchair, as she needed to do because of unavailability of caregivers, will cause leg and hip contractures over time. If contractures develop, Ms. Fitzmorris would require more daily care, and this may mean institutionalization would be more likely.

27. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

28. ████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████

29.  Additionally, the caregivers that were provided to Ms. Fitzmorris were admittedly not high quality. The records document her care manager saying that they only have "rough ones," meaning caregivers, in Ms. Fitzmorris' area. She had APS investigate an incident in which caregivers damaged Ms. Fitzmorris's car by breaking a window and slashing tires. People who need extra assistance are at elevated risk of abuse from caregivers. Psychological lack of safety is a risk to the ability of Ms. Fitzmorris to continue to dwell in community.

30.  Another Medicaid-funded service that was not consistently delivered but is important for her continued ability to live in the community, is transportation to medical appointments. Because of the poor transportation coordination, Ms. Fitzmorris missed multiple primary care and specialty care appointments. Lack of ongoing medical care could allow untreated issues to worsen and miss the opportunity to ward off incipient problems. Since an APS investigator reported that Ms. Fitzmorris is "barely making it," in her current condition, any new issues or deterioration of chronic issues may result in her requiring institutionalization.

31.  Ms. Fitzmorris had at least one instance of hospitalization while she has been on the CFI waiver and may have had more emergency room visits. She has been encouraged by case management staff to go to respite care in a nursing facility, and she refused because of a justified fear that she would never be able to get back home again. Each emergency room and hospital visit may start a cascade of events leading to hospital admission or placement in a rehabilitation center or long-term care. Only Ms. Fitzmorris's grit and determination to overcome conditions that warranted multiple referrals to protective services kept her in her home.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

### E.  Opinion – Stephanie Price

32.  Plaintiff Stephanie Price is 36 years old. She lives on her own in a first-level, single floor studio apartment in Manchester, NH. She is very independent. She enjoys caring for her pet bird, her steadfast companion. She doesn't have a partner or children. She lives close to her parents but can only intermittently rely on them for day-to-day help. Because she has no steps in her home, she can access her living space and get in and out of her apartment on a motorized wheelchair. She needs some additional adaptive equipment to reach cabinets in her kitchen and safely maneuver in her bathroom. This is important for Ms. Price because of her medical conditions.

33.  █████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████████

34.  █████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████████████████████████

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

35. ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

36. Ms. Price participates in the CFI Waiver program to receive home services to prevent institutionalization. Critical gaps in her CFI Waiver services have been noted in her record that have placed her at risk of institutionalization in a hospital or nursing facility. The primary issues have been a direct result of the inability to provide reliable personal caregivers to sufficiently attend to her care needs. She was getting only eight to ten hours of help per week rather than the 50 to 70 hours that she believes she needs.

37. Her medical records support these significant gaps in services because of staffing problems. She is in a self-directed program where she is responsible for hiring caregivers, however despite best efforts was not able to do so. APS was called to investigate whether Ms. Price was a victim of "self-neglect" but determined that she was not neglecting herself because she was making

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

every effort to hire the help she needed. She was therefore being neglected by the care system because the help she needed was simply not available through the CFI Waiver. APS should have stepped in to alert the CFI Waiver of this failure, however there was no change as a result of the investigation.

38.   Ms. Price was exposed to unnecessary risk of institutionalization due to the lack of caregiving hours that she received for several reasons: 1) inattention to basic needs; 2) lack of social contact; 3) lack of port care; 4) unsafe transfers; and 5) malpositioning.

39.   *Inattention to basic needs.* Ms. Price has been eking by in terms of her basic needs. Her physical therapist wrote that she is not getting the food or personal care that she needs. She has a friend that visits and periodically leaves her food. A CFI Waiver participant should not be going without food or getting by on the grace of friends and neighbors. It is common sense that food and hydration are necessary, and that hunger is not acceptable for a person receiving waiver services. In

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████

40.   ███████████████████████████████████████████

███████████████████████████████████████████████████████

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

██████████████████████████████████████████████████████

████████████████████████████████

41.   ███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████

42.   ███████████████████████████████████████████████

████████████████████████████████████████████ Isolation increases

stress and anxiety while lowering resiliency and can exacerbate underlying mental health

conditions. ██████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████ The consistently and predictable presence of caregivers would go

a long way in providing a feeling of safety, reassurance, and calm for Ms. Price.

43.   ███████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

15

44.

45.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████

46.  Ms. Price was exposed to unnecessary risk because some of the caregiving she received was low quality. Some of the aides that she was able to hire, for example, refused to wear appropriate personal protective equipment. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

47.  Although lack of caregivers was the main issue that Ms. Price faced, there were also other significant CFI benefits that she should have been receiving, the lack of which put her at elevated risk for institutionalization. These include: 1) medical supplies; 2) medications; and 3) help scheduling and attending medical appointments.

48.  *Medical Supplies.* Having appropriate equipment would allow Ms. Price to more safely live in her chosen environment. Having the correct supplies not only makes day-to-day tasks easier and less painstaking, but also would prevent Ms. Price from needing to come up with work-around solutions that may put her at risk of injury. For example, an appropriate tub bench that was recommended by her therapist would allow her to bathe with less risk of fall. Falls, particularly in the bathroom, could cause significant injury and lead to hospitalization, nursing facility placement, and, in some instances, permanent disability.

49.  ████████████████████████████████████████████████

████████████████████████████████████████████████████████

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████

50.  *Help scheduling and attending medical appointments.* Coordination of transportation is a service under the CFI waiver. Ms. Price has missed appointments because she could not get out of the house. A caregiver would have been able to assist Ms. Price with accessing transportation and a care coordinator (care coordination is a separate waiver benefit) would have helped schedule and organize appointments and transportation. This is critical for her ongoing medical care. Appointments, particularly with specialists needed for Ms. Price's less-common syndromes, are difficult to make in a timely fashion, so missing them can result in lack of care for extended periods. It is common for specialists to lack availability sooner than 6 months out. This can result in delayed medical care and treatment of Ms. Price's chronic conditions, putting her at risk of worsening symptoms and additional care needs.

51.  ████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

52. Ms. Price is medically complex. However, the majority of her needs could be simply met by having the home care providers that she has been determined to need. The sum total of the gaps in care listed above put her at serious risk. It is fortunate for Ms. Price that she had a thin network of friends and family who were able to step in at times to prevent the worst outcomes when the failures of the CFI foisted caregiving duties upon them. Support networks that are thin and stretched to the limit have negative impacts on the care giver and recipients. Changing family relationships into caregiving relationships strains family ties and puts the disabled individual at elevated risk of abuse or neglect. It is likely these relationships, in addition to Ms. Price's will power to live independently, that prevented Ms. Price from being institutionalized in spite of the failure of service delivery by the CFI waiver. The CFI waiver program owes a debt of gratitude for the unpaid labor of her support network.

**F. Opinion – Kathleen Bates**

53. Plaintiff Kathleen Bates is a participant in the CFI program. She lives alone in a small single-floor home in a residential neighborhood. She is single and does not have children. She enjoys watching the birds at her birdfeeder and flowers in her garden. She is 61 years old. Her parents are living but are physically limited. Ms. Bates works for the University of New Hampshire Institute on Disability and is an activist for disability justice.

54. ██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

55. ██████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████

56. Gaps and deficiencies in CFI-provided caregiving have resulted in several risks to Ms. Bates' ability to remain at home, including: 1) mistreatment by caregivers; 2) skin problems; 3) unsafe transfers; and 4) harm to emotional well-being,

57. *Mistreatment by caregivers.* In addition to inability to fully staff personal care needs, some of the staff provided had unprofessional behaviors that created new problems, such as psychological distress. ███████████████

██████████████████████████████████████████

██████████████████████████████████████████

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

58.   █████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

59.   █████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

60. *Harm to emotional well-being.* Ms. Bates endured a high level of distress from the uncertainty and lack of safety caused by these caregiving deficiencies. ████████████████████

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

████████████

61.  ███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████

### G.  Opinion – Class-wide Issues

62.  The CFI Medicaid Waiver is meant to provide a means to keep individuals out of an institutional setting by providing for the care people need at home based on their individual needs, the setting in which they reside, and the amount of care their social network can reasonably provide. The level of need is re-assessed routinely to account for changes in health status and changes in social situation. Participants in the CFI Waiver program, by necessity, must rely on the consistent provision of care to meet care needs.

63.  Gaps in provision of care have the potential to pose serious harm, even if only missed for short periods. The gaps in personal care provider services, as well as other CFI benefits such as skilled nursing, home maker services, transportation, and supplies, experienced by the Plaintiffs may reasonably be assumed to also impact other waiver beneficiaries.  Some of these services are reportedly billed in 15-minute increments and some are billed by the visit.  In my opinion, it does

not matter how the services are billed or reimbursed by Medicaid.  It only matters whether the service is delivered to the waiver participant as they have been determined to need the services.

64.   The severity of the risk a CFI Waiver beneficiary experiences from the lack of provision of Waiver benefits depends on which benefits they are missing, the frequency or duration of the missed benefits, and the particular circumstances of the individual. The most serious and immediate risk for institutionalization and harm occurs due to missing hands-on caregiving such as that provided by personal care providers or nurses. For individuals similar to the plaintiffs in this case, missing hands-on services may result in them languishing in their own home confined to a bed or a chair and unable to provide for their own basic needs such as nutrition, toileting, and hydration. While even a one-day gap may lead to serious harm and risk, the risk of serious harm increases over time because they are repeatedly exposed to the risky situation. If they experience a gap in services from the Waiver, they may be saved by a friend of family member who can help out in a pinch but the more gaps they experience over time, the more likely they are to wind up with serious negative consequences such as hospitalization or institutionalization. In this way, each gap adds to the cumulative risk.

65.   To conservatively determine who is at serious risk of institutionalization in any given month, a cut-off of those who receive 50% or less of their hands-on services from the CFI Waiver would be a reasonable estimate. At a 50% level, from an individual's point of view, it is a coin toss as to whether they will be receiving essential help or not. This means that half the time, they will be scrambling to fill the gap and hoping that something else can come through to help them. Psychologically, this is a very difficult state to maintain. The emotional and psychological safety that comes with knowing that your needs will be attended to and that you will not be abandoned is critical for someone to be able to continue to live in the community.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

66.   Beyond the immediate health-and-safety-preserving needs that personal care providers fulfill by helping with nutrition, hydration, and toileting, they also prevent serious risk of harm by providing essential personal care, without which an individual is a risk of medical complication, injury, or deterioration of their conditions. These include assistance with safe transfers to reduce the risk of falls – the primary cause of injury in older adults, facilitating daily exercises and movements to reduce pain, prevent contractures, and prevent the development of pressure sores (bed sores) and bathing, at least weekly to maintain skin integrity and prevent painful rashes. Home maker services are also essential in preventing serious risk. A clean and hygienic environment reduces the risk of respiratory problems, infection, rashes, and sores. A healthy diet, facilitated by grocery shopping, and meal preparation provides nutrition important to maintain good health. A tidy and uncluttered home reduces the risk of falls. Services by nurses, rather than personal care providers such as routine catheter exchanges and medication oversight are also extremely important. Lack of proper care for medical devices such as catheters can lead to complications such as infection, which was experienced by plaintiffs in this case. Medication oversight is important for the treatment and maintenance of chronic and acute conditions. Without appropriate medication management, chronic conditions can deteriorate or flare resulting in hospitalization or institutionalization.

67.   Other services provided by the CFI Waiver which I also consider quite important for reducing serious risk over time include transportation in order to facilitate medical appointments in order to appropriately manage chronic medical conditions. Transportation into the community also reduces social isolation and loneliness which, over time, have been shown to worsen health outcomes. The provision of necessary supplies and durable medical equipment or home modifications such as splints, mobility devices, ramps, and grab bars are needed to decrease the risk of injurious falls and to maximize an individual's self-reliance. When home care providers and case

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

managers are not in regular contact with waiver participants, they cannot assess whether equipment is adequate or even available. Individuals with increased care needs are vulnerable to exploitation. It is not enough to simply provide personal care services, there must also be close oversight and care management to ensure that the care received is high-quality, safe, and adequately meeting identified needs.

68.   Many people, such as the Plaintiffs in this case, are willing to go to great lengths in order to avoid being institutionalized in a nursing facility. CFI waiver participants should not need to endure such serious risks to their health, psychological hardship, and physical discomfort to maintain their independence in a program that is meant to allow them to live in the community.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: <u>August 25, 2022</u>                              <u>*/s/ Mattan Schuchman*</u>
                                                                          MATTAN SCHUCHMAN MD

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# **SCHUCHMAN EXHIBIT A**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

CURRICULUM VITAE
The Johns Hopkins University School of Medicine

*[signature]* MD

Mattan Schuchman                                        August, 2022

## DEMOGRAPHIC AND PERSONAL INFORMATION

### Current Appointments
University
| | |
|---|---|
| 2016-2019 | Clinical Associate, Division of Geriatrics and Gerontology, Johns Hopkins University School of Medicine |
| 2019-present | Assistant Professor – Part Time, Division of Geriatrics and Gerontology, Johns Hopkins University School of Medicine |

Community Physicians
| | |
|---|---|
| 2019-present | Medical Director, Johns Hopkins Home-based Medicine, Johns Hopkins Community Physicians |

### Personal Data
Division of Geriatrics and Gerontology
Mason F. Lord Building Center Tower Suite 2200
5200 Eastern Avenue
Baltimore, MD 21224
410-550-6316 (Tel)
410-550-2513 (Fax)
mattan@jhmi.edu

### Education and Training
| | |
|---|---|
| 2003-2007 | B.S., Biochemistry, University of Maryland, College Park, MD, *summa cum laude* |
| 2008-2012 | M.D., University of Maryland, Baltimore, MD |
| 2012-2015 | Resident, Internal Medicine, University of Maryland Medical Center, Baltimore, MD |
| 2015-2016 | Fellow, Geriatric Medicine, Johns Hopkins Hospital, Baltimore, MD |
| 2017-2018 | Emerging Leaders In Aging Tideswell Scholar, University of California, San Francisco CA |

### Professional Experience
| | |
|---|---|
| 2013-2015 | Assistant Instructor, University of Maryland School of Medicine, Baltimore, MD |
| 2016-2019 | Clinical Associate, Johns Hopkins University School of Medicine, Division of Geriatrics and Gerontology, Medical Director of Johns Hopkins Home-based Medicine, Baltimore, MD |
| 2019-present | Medical Director of Johns Hopkins Home-based Medicine, Johns Hopkins Community Physicians, Assistant Professor, part-time, Johns Hopkins University School of Medicine, Division of Geriatrics and Gerontology, Baltimore, MD |

## PUBLICATIONS:
Original Research [OR]
1. Son SJ, Reichel J, He B, **Schuchman M**, & Lee SB. Magnetic nanotubes for magnetic-field-assisted bioseparation, biointeraction, and drug delivery. J Am Chem Soc 2005; 127(20):7316-7317.
2. LaFave S, Drazich B, Sheehan O, Leff B, Szanton SL & **Schuchman M** (2020). The value of home-based primary care: Qualitative exploration of homebound participant perspectives. J Appl Gerontol. 2020; Oct 22:733464820967587.
3. Leff B, Sheehan OC, Harrison KL, Eaton England A, Mickler A, Basyal PS, Garrigues SK, **Schuchman M**, Perissinotto C, Garrett SB, Ritchie CS. A Home-Based Care Research Agenda by and for Homebound Older Adults and Caregivers. J Appl Gerontol. 2021 Apr 1:7334648211004731.
4. Robertson ML, **Schuchman M**, Cudjoe TKM, & Colburn J (2021). Innovative educational approaches to house calls in the time of COVID-19. J Am Geriatr Soc. 2021; 69(8) E20-E22.

1

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Mattan Schuchman, M.D.

5. Mickler AK, Leff B, Eaton England A, Garrigues SK, **Schuchman M**, Perissinotto C, Ritchie CS, Harrison KL, Sheehan OC (2021). Understanding the daily experiences and perceptions of homebound older adults and their caregivers: A qualitative study. J Appl Gerontol. 2021 Dec;40(12):1722-1732.

## Review Articles [RA]

1. Yasar S, **Schuchman M**, Peters J, Anstey KJ, Carlson MC, Peters R. Relationship Between Antihypertensive Medications and Cognitive Impairment: Part I. Review of Human Studies and Clinical Trails. Curr Hypertens Rep. 2016; 18(8):67.
2. Peters R, **Schuchman M**, Peters J, Carlson MC, Yasar S. Relationship Between Antihypertensive Medications and Cognitive Impairment: Part II. Review of Physiology and Animal Studies. Curr Hypertens Rep. 2016; 18(8):66.
3. **Schuchman M,** Fain M, Cornwell T. The Resurgence of Home-Based Primary Care Models in the United States. Geriatrics. 2018; 3(3):41.
4. Ward H, Finucane T, **Schuchman M**. Challenges Related to Safety and Independence. Medical Clinics of North America. 2020: 104(5):909-917.

## Book Chapters, Monographs [BC]

1. **Schuchman M**, Graziano J "Management of Frequent Falls" in Colburn J, Leff B, Hayashi J, **Schuchman M** eds. *Geriatric Home-Based Medicine: House Call Case Studies*. New York: Springer 2020.
2. **Schuchman M**, Shiroky J, Leff B "Home Based Care" in Walter L, Chang A ed. *Current Diagnosis & Treatment: Geriatrics 3rd ed.* New York: McGraw Hill Education.
3. **Schuchman M,** Colburn, J. "Home based Care" in Harper GM, Lyons WL, Potter JF, et al, eds. Geriatrics Review Syllabus: A Core Curriculum in Geriatric Medicine, 11th ed. New York, NY: American Geriatrics Society; 2022. [chapters online 2021].

## Books, Textbooks [BK]

1. Colburn J, Leff B, Hayashi J, **Schuchman M** eds. *Geriatric Home-Based Medicine: House Call Case Studies*. New York: Springer 2020.

## Other Media [OM] (Videos, Websites, Blogs, Social Media, etc.)

| | |
|---|---|
| 6/21/18 | **Schuchman M**. How Home Ventilator Care Helped My Patients. June 2018. http://closler.org/lifelong-learning-in-clinical-excellence/how-home-ventilator-care-helped-my-patients |
| Fall 2019 | **Schuchman M**. Home-Based Medicine Literature Roundup. *Frontiers*. Vol. 33, No. 4, ISSN 1049-0027 American Academy of Home Care Medicine quarterly newsletter. |
| 12/12/19 | **Schuchman M**. When to Consider Making a House Call. December 2019. http://closler.org/connecting-with-patients/when-to-consider-making-a-house-call |

## Research Extramural Funding

| | |
|---|---|
| 1/1/2018-12/31/19 | Engaging the Invisible Homebound and their Caregivers in the Development of Home-Based Medical Care Research<br>PCORI<br>PI: Bruce Leff |

## Clinical Extramural Funding

| | |
|---|---|
| 7/1/2016-2019 | HSCRC Transformation Implementation Program, The Community Health Partnership of Baltimore $606,820 (year 1 of 3)<br>Role: Physician and Medical director of Home-based Medicine |

## INTRAMURAL Funding

### Research Intramural Funding

| | |
|---|---|
| 4/17/18-4/30/19 | Center for Innovative Care in Aging, Johns Hopkins School of Nursing Grant: Home-Based Medical Care (HBMC) Patient and Caregiver Perspectives on Optimal HBMC Design<br>$8,250<br>Role: PI |

## Clinical Intramural Funding

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

7/1/2019-7/1/2021     Strategic Planning Executive Counsel (SPEC) Grant to expand home-based medicine from the School of Medicine to the Johns Hopkins Health System
$744,020
Role: Physician and Medical director of Home-based Medicine

## CLINICAL ACTIVITIES
### Clinical Focus
Director of the Johns Hopkins Home-based Medicine program, focusing on providing medical care to older adults with multiple chronic conditions and functional impairment who do not thrive in a typical medical environment.

### Medical, other state/government licensure
2015-present     Maryland Board of Physicians, D79435

### Boards, other specialty certification
2015-present     American Board of Internal Medicine Certification
2016-present     American Board of Internal Medicine, Geriatric Medicine Certification

### Clinical (Service) Responsibilities
2017- Present     Attending, Johns Hopkins Home-based Medicine, 90% FTE
2016-2017     Attending, Johns Hopkins Home-based Medicine, 55% FTE

### Clinical Program Building / Leadership
2016-present     Director, Johns Hopkins Home-based Medicine, 10% FTE

## EDUCATIONAL ACTIVITIES
### Educational Focus
Teaching house call medicine to geriatric fellows and internal medicine residents. The Johns Hopkins Home-based medicine program trains each geriatric medicine fellow for one to two months as well as a cadre of 6 primary care track internal medicine residents over a two year longitudinal experience. Additionally, many residents join for single day trainings.

### Teaching
#### Classroom instruction
2015     Geriatrics Lecture Series, University of Maryland Internal Medicine Residency, "Falls in the Elderly," "Considering Prognosis in Primary Care"
7/2017-7/2019     Quality Improvement Monthly Lecture Series, Johns Hopkins School of Medicine Geriatric Medicine fellowship program.
4/2020     Invited Speaker in Population Health Management MAS online master's degree program, "JHOME: Johns Hopkins Home-Based Medicine", 4th quarter course: Managing Health Across the Continuum, Johns Hopkins Bloomberg School of Public Health, Baltimore MD

#### Clinical instruction
2016-present     Instructor, Internal Medicine Resident, house calls, clinical experience; 2 year longitudinal for primary care track residents in Johns Hopkins Bayview internal medicine residency program
2016-present     Instructor, Geriatric Medicine Fellowship, house calls, clinical experience; 1-2 month intensive for all first-year fellows in the Johns Hopkins geriatric medicine fellowship program

#### CME instruction
5/7/19     Edmund G. Beacham 46th Annual Current Topics in Geriatrics. Capacity vs. Competency. Invited panelist
10/18/19     American Academy of Home Care Medicine annual meeting session: Bite-Sized Topics in Clinical Medicine
10/23/20     American Academy of Home Care Medicine annual meeting session: Managing Change in Home-Based Primary Care Practices
1/27/21     American Academy of Home Care Medicine webinar: Managing Change in Home-Based Primary Care Practices

Mattan Schuchman, M.D.

| | |
|---|---|
| 3/24/21 | Edmund G. Beacham 48th Annual Current Topics in Geriatrics. Home Care Medicine During the Pandemic. Invited Panelist |
| 3/3/22 | Edmund G. Beacham 49th Annual Current Topics in Geriatrics. Continuum of Care: Helping Patients and Families Navigate the System. Invited Panelist |

Workshops/Seminars

| | |
|---|---|
| 8/7/17 | Daniel's Interprofessional Education Scholar program Faculty Mentor, medical, pharmacy, and nursing students, panelist and group leader |
| 9/1/2018 | Faculty Mentor for "Collaboration!" 8-week course in Design Leadership, MICA/Carey Business School |
| 2017, 2018 | Called To Care: Caring for Your Loved One at Home. Patient and Caregiver Support Group invited speaker. |
| 2018, 2019 | Daniel's Interprofessional Education Scholar program invited speaker |
| 4/2020 | HCCIntelligence™ Webinar: COVID-19 Updates: Advance Care Planning, Self-Care/Team-Care and Centers for Medicare & Medicaid Services Telehealth Changes - April 2020 |

Educational Program Building / Leadership

| | |
|---|---|
| 2016-present | Geriatric Fellowship Program Evaluation Committee |
| 2018-present | American Academy of Home Care Medicine Education Committee member |

**SYSTEM INNOVATION AND QUALITY IMPROVEMENT ACTIVITIES**

System Innovation Focus

Improving quality of medical care and access to care for homebound older adults and providing medical care in the home.

System Innovation and Quality Improvement efforts within JHMI:

| | |
|---|---|
| 6/2017 | Intramural Pyramid Grant award, Dept of Medicine, $300 for personal sound amplification devices for clinical use to improve patient safety and satisfaction |

System Innovation and Quality Improvement efforts outside of JHMI:

| | |
|---|---|
| 2013 | Nudging Cafeteria Choices for Healthy Eating, University of Maryland Medical Center, Encourage healthy food options at the hospital cafeteria through price and display manipulation |
| 2017-present | Founding organizer of the Baltimore Area House Call Network, convening regional house call providers for education, sharing best practices, and advocacy |
| 2020-present | National Home-Based Primary Care Learning Network member |

**ORGANIZATIONAL ACTIVITIES**

Institutional Administrative Appointments

| | |
|---|---|
| 2016-present | Geriatrics Clinical Leadership Work Group |
| 2018 | Home Based Medicine / Post Acute Care Health Care Delivery Clinical Roadmap Work Group |
| 2018-present | Johns Hopkins Medicare Advantage Care Delivery Work Group |
| 2019-present | Bayview Adult Primary Care Practice Leadership Work Group |
| 2016-present | Professional Advisory Committee, Johns Hopkins Home Care Group |
| 2017-2019 | HSCRC Regional Partnership Operations Committee |
| 2017-2019 | HSCRC Regional Partnership Analytics Committee |

Journal peer review activities

| | |
|---|---|
| 2017-present | *Annals of Internal Medicine* reviewer |

Professional Societies

| | |
|---|---|
| 2015-present | Member, American Geriatrics Society |
| 2016-present | Member, American Academy of Home Care Medicine, Education Committee 2018-2021 |
| 2016-present | Fellow, American College of Physicians. Elected to Fellowship in March 2021 |

**RECOGNITION**

Awards, Honors

| | |
|---|---|
| 2013 | Gold Humanism Honor Society, elected by medical students for exemplary humanism in the practice of medicine |

| | |
|---|---|
| 2021 | Innovations in Clinical Care Award, system-wide Johns Hopkins Medicine clinical award for physicians and care teams in recognition of innovative leadership and clinical service for the Johns Hopkins Home-based Medicine program (JHOME). |

## Invited Talks

| | |
|---|---|
| 6/22/17 | Updates In Home Based Medicine, Johns Hopkins division of Geriatrics and Gerontology Grand Rounds |
| 5/21/18 | The JHOME program, Johns Hopkins division of Geriatrics and Gerontology Grand Rounds |
| 5/16/19 | Homebound Patient and Caregiver Expectations for and Experiences with Home-Based Primary Care: A Qualitative Study, Johns Hopkins division of Geriatrics and Gerontology Grand Rounds |
| 4/09/2020 | Bridges of Troubled Water, Johns Hopkins division of Geriatrics and Gerontology Grand Rounds |

# OTHER PROFESSIONAL ACCOMPLISHMENTS

## Posters

1. Corwin D, **Schuchman M**. *Aeromonas jandaei* in a Patient with Cirrhosis and Intestinal Lymphoma. Maryland American College of Physicians, May 2012.
2. **Schuchman M**, Finucane T. A Case report of Hyperthyroidism Developing Suddenly after Chronic Hypothyroidism. American Geriatric Society, Dec 2015.
3. **Schuchman M**, Goodhew G, DeSantis R, Millard M, Leff B, Doyle D, Kravet S, Dunbar L, Myers M. Sustaining Home-Based Primary Care across a Health System. Association for Community Health Improvement, April 2019.
4. **Schuchman M.** The Baltimore Area House Call Network: Creating a Regional House Call Community. American Academy of Home Care Medicine, Oct 2019.

## Other

| | |
|---|---|
| 2013-2015 | Primary Care Progress chapter founder, established to promote primary care education and career development for internal medicine residents, attend Institute for Healthcare Improvement national forum |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## <u>SCHUCHMAN EXHIBIT B</u>

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**List of Documents Considered by Dr. Mattan Schuchman**

### Kathleen Bates

- PLTF-0000001-0008; PLTF-000016-84; PLTF-0000192-206; PLTF-0000749-67; PLTF-0004907-44; PLTF-0004969-86; PLTF-0004991-97; PLTF-0025030-25100; PLTF-0026302-63; PLTF-0026583-806; PLTF-0027147-51; PLTF-0027160-74.

### Stephanie Price

- PLTF-0005118-5309; PLTF-0005506-664; PLTF-0005666-69; PLTF-0005675-703; PLTF-0005701-53; PLTF-0005795-805; PLTF-0005809-12; PLTF-0005815-55; PLTF-0005858-64; PLTF-0005874-76; PLTF-0005879-6631; PLTF-0006670-815; PLTF-0006817-7132; PLTF-0006877; PLTF-0006914-15; PLTF-0008013-93; PLTF-0008105-18; PLTF-0008427-39; PLTF-0008447-638; PLTF-0009348-66; PLTF-0025101-81; PLTF-0026971-27146; PLTF-0027156-59; PLTF-0027175-85; PLTF-0027186-201.

### Emily Fitzmorris

- PLFT-0001277-81; PLTF-0001285-1301; PLTF-0001303-93; PLTF-0001397-2138; PLTF-0002150-2208; PLTF0002211-2503; PTLF-0002886-4906; PLTF-0024952-25029; PLTF-0026364-402; PLTF-0026807-970; PLTF-0027152-55.

### General Documents

- New Hampshire Administrative Code, Chapter He-E 800 Medical Assistance (Adopted Rule 1/26/22) PLTF-0026403-42

- New Hampshire Administrative Code, Part He-W 552, Personal Care Attendant Services PLTF-0026443-52

### DOJ Produced Documents

- NHDHHS0008027-8100
- NHDHHS0008101-8130
- NHDHHS0008131-8160
- NHDHHS0008161-8206
- NHDHHS0008207-8250
- NHDHHS0008251-8254
- NHDHHS0008255-8312
- NHDHHS0008313-8370
- NHDHHS0008371-8434
- NHDHHS0008435-8452
- NHDHHS0008455-8614
- NHDHHS0008615-8658

- Declaration of Stephanie Price in Support of Plaintiffs' Motion for Class Certification

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

- Declaration of Kathleen Bates in Support of Plaintiffs' Motion for Class Certification
- Declaration of Emily Fitzmorris in Support of Plaintiffs' Motion for Class Certification