UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Emily Fitzmorris, et al.

    v.                                              Case No. 21-cv-25-PB
                                                    Opinion No. 2023 DNH 025

New Hampshire Department of
Health and Human Services
Commissioner Lori Weaver[1], et al.

MEMORANDUM AND ORDER

Plaintiffs in this putative class action are disabled individuals who are enrolled in New Hampshire's Choices for Independence ("CFI") waiver program, a Medicaid program administered by the New Hampshire Department of Health and Human Services ("DHHS"). The CFI Waiver program provides home and community-based care services to adults who otherwise would be Medicaid-eligible for nursing home care. Plaintiffs allege that DHHS and its Commissioner have failed to remedy defects in the administration of the program, leading to significant gaps in plaintiffs' services. Plaintiffs filed a complaint on behalf of themselves and a putative class of similarly situated individuals alleging, among other things, that DHHS violates the Medicaid Act and the Fourteenth Amendment's Due

---

[1] The initial complaint was filed against then-Commissioner Lori Shibinette, who has since been succeeded by Acting Commissioner Lori Weaver. The case caption has been updated accordingly.

Process Clause by failing to provide plaintiffs with notice and an opportunity for a hearing when they do not receive all the services they have been authorized to receive. Defendants now move for partial summary judgment, arguing that neither the Medicaid Act nor the Due Process Clause require such procedural protections. I agree, and therefore grant defendants' motion for partial summary judgment.

I. BACKGROUND

The CFI waiver program serves Medicaid-eligible adults who clinically qualify for nursing home services, but "prefer to be cared for at home or in other settings less acute than a nursing facility." N.H. Rev. Stat. Ann. §§ 151-E:1; 151-E:3. When DHHS determines that an individual is eligible for the program, the individual is paired with a case management agency. N.H. Code Admin. R. He-E 805.07. The case management agency works with the individual to obtain DHHS authorization for any home or community-based care services that the individual needs to safely reside in the community and avoid institutionalization. See id. He-E 801.05. Once services are authorized, they may be covered by the state. See id. He-E 801.12. The case management agency is tasked with coordinating an individual's waiver services, which are delivered by private service providers. See id. He-E 805.05. Nonetheless, the proper administration of the CFI program and the provision of waiver

2

services remains the ultimate responsibility of DHHS. See Price v. Shibinette, 2021 DNH 179, 2021 WL 5397864, at *12 (D.N.H. Nov. 18, 2021).

Plaintiffs are CFI waiver participants who have been authorized to receive an array of services, including personal care and skilled nursing services. See Doc. 80-4 at 3-4; Doc. 80-5 at 3-5. Plaintiffs complain that they "suffer protracted delays in the onset of all or part of their waiver services, frequent interruptions in their waiver services, and/or the expected cessation of their waiver services," allegedly due to the state's maladministration of the CFI waiver program. Doc. 1 at 8-9. They assert that these so-called "service gaps" are a direct result of DHHS's failure to (1) attract or recruit enough service providers for certain waiver services, (2) adequately monitor whether CFI participants are receiving their authorized waiver services, and (3) take appropriate action when notified of service gaps. See id. at 9-13. It is undisputed that DHHS does not provide either notice or an automatic right to a hearing when CFI waiver participants experience service gaps. See Doc. 112-2 at 8-10; Doc. 112-3 at 8.

Although plaintiffs have asserted multiple claims, defendants seek summary judgment only as to Counts VI and VII, which allege that defendants' failure to provide notice and an opportunity for a hearing where "service gaps and/or delays constitute an effective reduction, denial, or

3

termination of services" violates both the Medicaid Act and the Due Process Clause. See Doc. 112-1 at 6; see also Doc. 101-1 at 2.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016). In this context, a "material fact" is one that has the "potential to affect the outcome of the suit." Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). A "genuine dispute" exists if a factfinder could resolve the disputed fact in the nonmovant's favor. Ellis v. Fid. Mgmt. Tr. Co., 883 F.3d 1, 7 (1st Cir. 2018).

The movant bears the initial burden of presenting evidence that "it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); accord Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018). Once the movant has properly presented such evidence, the burden shifts to the nonmovant to designate "specific facts showing that there is a genuine issue for trial," Celotex, 477 U.S. at 324, and to "demonstrate that a trier of fact could reasonably resolve that issue in [their] favor." Irobe, 890 F.3d at 377 (quoting Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010)). If the nonmovant fails to adduce

4

such evidence on which a reasonable factfinder could base a favorable verdict, the motion must be granted. Celotex, 477 U.S. at 324. In considering the evidence, the court must draw all reasonable inferences in the nonmoving party's favor. Theriault v. Genesis HealthCare LLC, 890 F.3d 342, 348 (1st Cir. 2018).

## III.   ANALYSIS

Plaintiffs base their notice and hearing claims on both the Medicaid Act (Count VII) and the Due Process Clause (Count VI). Defendants seek summary judgment on both counts. I begin with the Medicaid Act claim.

A.   Medicaid Act

As a state Medicaid plan authorized pursuant to 42 U.S.C. § 1396n, the CFI waiver program must comply with certain federally-imposed conditions. See Bryson v. Shumway, 308 F.3d 79, 83-84 (1st Cir. 2002). One such condition is that a state plan must "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3).

The regulations that implement this condition ("Fair Hearing Regulations") specify that a state agency must hold a hearing upon a request from an applicant or beneficiary who "believes the agency has taken an action erroneously, denied his or her claim for eligibility or for covered benefits or

5

services, or issued a determination of an individual's liability, or has not acted upon the claim with reasonable promptness[.]" 42 C.F.R. § 431.220(a)(1). The regulations also require a state agency to notify an individual of their right to a hearing "[a]t the time the agency denies an individual's claim for eligibility, benefits or service . . . or takes other action, as defined at § 431.201, or whenever a hearing is otherwise required in accordance with § 431.220(a)." 42 C.F.R. § 431.206(c)(2). An "action" includes "a termination, suspension of, or reduction in covered benefits or services[.]" 42 C.F.R. § 431.201. When a state agency is required to provide notice under § 431.206(c), the notice must inform an applicant (1) of their right to a hearing, (2) of the method by which the applicant may obtain a hearing, (3) that the applicant may be self-represented or represented by counsel, a relative, or another spokesperson, and (4) the time frames by which the agency must take final administrative action. 42 C.F.R. § 431.206(b). Among other things, the notice must also include "[a] statement of what action the agency . . . intends to take and the effective date of such action." 42 C.F.R. § 431.210(a).

Plaintiffs present two arguments to support their contention that the Fair Hearing Regulations give them a right to notice and a hearing on their service gap claims. First, they argue that their right to notice and a hearing has been triggered because they made "claims" for services that defendants

6

effectively "denied" when they failed to close their service gaps. In the alternative, plaintiffs argue that they are entitled to notice and a hearing because defendants effectively took an "action" to terminate, suspend, or reduce their covered services when they failed to close the service gaps. I examine each argument in turn.

1. Denial of a Claim for Services

Plaintiffs primarily rely on case law to support their position that a state agency "denies" a "claim" for services whenever it fails to deliver services that the agency has authorized an individual to receive. I cannot accept plaintiffs' argument, however, because it is based on a misreading of the Fair Hearing Regulations.

Because the regulations do not define the terms "claim" or "denies"/"denied," I construe them in accordance with their "plain and ordinary meaning." United States v. Lachman, 387 F.3d 42, 50-51 (1st Cir. 2004) (cleaned up). A "claim" is commonly understood to mean "a demand for something due or believed to be due." See Claim, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/claim (last visited March 27, 2023). This is how the term "claim" is used throughout both 42 U.S.C. § 1396a and the Medicaid Act, see, e.g., 42 U.S.C. § 1396r-8, and it is the way a "claim" is defined elsewhere in Chapter 7 of Title 42, see 42 U.S.C. § 1320a-7a(i)(2) (defining "claim" as "an application for payments for

7

items and services under a Federal health care program"). The terms "denies" and "denied" are forms of the verb "deny," which in this context is commonly understood to mean "to refuse to grant." See Deny, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/deny (last visited March 27, 2023). Plaintiffs do not provide me with any reason to deviate from these commonly understood meanings. Thus, I apply them in construing §§ 431.206(c)(2) and 431.220.

In the present case, the only "claims" plaintiffs made for CFI waiver services are their initial applications for services, which defendants approved. Plaintiffs do not argue that defendants ever revoked their approvals. Instead, they contend that defendants later effectively "denied" their claims when they failed to close plaintiffs' service gaps. Thus, plaintiffs' argument amounts to a contention that a state agency "denies" a claim for services whenever it fails to provide previously authorized services. Plaintiffs' argument cannot stand because it assigns a meaning to the terms "denies" and "denied" that is contrary to the way in which these terms are used in §§ 431.206(c) and 431.220.

Plaintiffs' interpretation is also inconsistent with the statutory context in which the term "denied" is used. Section 1396a provides that an opportunity for a hearing may be required where a "claim for medical assistance . . . is denied or is not acted upon with reasonable promptness."

8

42 U.S.C. § 1396a(a)(3) (emphasis added). If a failure to act can constitute a denial of a claim, as plaintiffs posit, there would be no reason for the statute to draw a distinction between the two concepts. That distinction, however, is meaningfully implemented in the Fair Hearing Regulations. When a state agency fails to act with reasonable promptness, the regulations provide that the right to notice and a hearing is triggered upon request from the applicant or beneficiary. See 42 C.F.R. § 431.220(a)(1); 42 C.F.R. § 431.206(c)(2). By contrast, the right to notice and a hearing stemming from a denial is triggered by some affirmative act on the part of the agency. See 42 C.F.R. § 431.206(c)(2). Common sense suggests the rationale for this difference: the state agency must be aware that its obligation to provide notice and a hearing has arisen. The agency gains that awareness either when it acts affirmatively or when the applicant alerts it to its failure to act. Thus, a contextual reading of the statute and its implementing regulations shows that a "denial" of a "claim" entails more than mere inaction, such as the state agency's failure to close service gaps.

    Rather than focusing on the text of the statute or the Fair Hearing Regulations, plaintiffs rely on Murphy ex rel. Murphy v. Harpstead, 421 F. Supp. 3d 695 (D. Minn. 2019), for the proposition that a state agency must provide notice whenever it fails to provide services that the claimant has been authorized to receive. In Murphy, plaintiffs had been authorized to

9

receive certain services under a waiver program, but the state agency failed to approve their informal requests for additional services. See id. at 707-08; see also Murphy ex rel. Murphy v. Minn. Dep't of Hum. Servs., 260 F. Supp. 3d 1084, 1108 (D. Minn. 2017). In holding that the state agency was required to provide plaintiffs with notice of their right to a hearing, the court determined both that an informal request for additional services can qualify as a "claim" and that an agency's failure to approve all the services requested can constitute a "denial" of the claim. See Murphy, 421 F. Supp. 3d at 708. The court did not, however, conclude that a state agency's mere failure to deliver authorized services can be treated as a denial. Because the present case involves a failure by defendants to deliver authorized services rather than a refusal by defendants to grant a request for services, Murphy is simply not a relevant precedent.

    2.    <u>Termination, Suspension, or Reduction of Services</u>

Plaintiffs' alternative argument that they are entitled to notice and a hearing because defendants' failure to close their service gaps is an "action" under §§ 431.206(c) and 431.220(a) also fails to persuade. Section 431.201 defines an "action" in pertinent part as a "termination, suspension of, or reduction in covered benefits or services[.]" 42 C.F.R. § 431.201. A "termination," in turn, is commonly understood as "the act of terminating," Termination, Merriam-Webster Dictionary Online, https://www.merriam-

10

webster.com/dictionary/termination (last visited March 27, 2023); a "suspension" is "the act of suspending," Suspension, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/suspension (last visited March 27, 2023); and a "reduction" is "the act or process of reducing," Reduction, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/reduction (last visited March 27, 2023). The common characteristic in all three definitions is that a state agency must undertake an action that terminates, suspends, or reduces a covered benefit or service. Cf. N.B. ex rel. Peacock v. District of Columbia, 794 F.3d 31, 40 (D.C. Cir. 2015) (relying on similar dictionary definitions and explaining that all three terms "involve a change in, not mere maintenance of, existing conditions"). Here, the requirement of an action is not satisfied by defendants' alleged failure to close plaintiffs' service gaps.

The notice procedures a state agency must follow when it takes an "action" further undercuts plaintiffs' argument that a failure to close service gaps can be an "action" that triggers a right to notice and a hearing. Except in a limited subset of circumstances that do not apply here, a state agency must send the notice required by § 431.206(c) "at least 10 days before the date of the action." 42 C.F.R. § 431.211. The regulations also provide that the hearing notice must include a statement of the action that the agency "intends to take and the effective date of such action." 42 C.F.R. § 431.210(a)

11

(emphasis added). It is difficult to conceive of a way in which a state agency could comply with these requirements if a failure to close a service gap could be deemed to be an "action" requiring a hearing notice.

Plaintiffs cite to two district court cases for the proposition that a state agency takes an "action" within the meaning of § 431.201 when it does something that has the practical effect of terminating or reducing a beneficiary's services. See Haymons v. Williams, 795 F. Supp. 1511, 1522 (M.D. Fla. 1992) (holding that notice was required where the state disqualified certain service providers from providing services because they served individuals that the state later determined to be ineligible); Ladd v. Thomas, 962 F. Supp. 284, 293 (D. Conn. 1997) (concluding that notice was required where the state approved a request for authorization in a modified form). Those cases, however, involved affirmative acts by the relevant state agencies. They do not go so far as to hold that a state agency takes an "action" whenever its <u>failure</u> to act has the practical effect of terminating or reducing a beneficiary's services. Indeed, the parties have not cited to, and I have not located, any cases that treat a failure to act as an action within the meaning of § 431.201.[2] Plaintiffs' position is therefore unsupported by both

---

[2]     Plaintiffs also cite to Bryson v. Shumway, 177 F. Supp. 2d 78 (D.N.H. 2001), vacated by 308 F.3d 79 (1st Cir. 2002), and Cassidy v. Zucker, 17-cv-03397, 2021 WL 4472592 (E.D.N.Y. Sept. 30, 2021). Those cases, however, do

the plain language of the Fair Hearing Regulations and the relevant case law.

B. Due Process Clause

Plaintiffs next argue that the Due Process Clause requires notice and an opportunity for a hearing, even if the Medicaid Act does not. Plaintiffs appear to base their claim on Goldberg v. Kelly, which held that the Due Process Clause requires notice and an evidentiary hearing before welfare benefits may be terminated. See 397 U.S. 254, 264 (1970); see also Doc. 1 at 39; Doc. 112-1 at 5. In plaintiffs' view, because defendants' failure to provide all the services they have been authorized to receive constitutes an effective termination of those services, notice and an opportunity for a hearing are constitutionally required.

Goldberg, however, dealt with an official termination of benefits through agency adjudication, not the effective termination of benefits through inaction. See id. at 257-58. Nor does its reasoning extend to cases where a

---

not consider the meaning of an "action" as defined in § 431.201. See Bryson, 177 F. Supp. 2d at 98 (interpreting the meaning of "denied" in 42 U.S.C. § 1396a(a)(3)); Cassidy, 2021 WL 4472592, at *6 (interpreting the term "adverse benefit determination" as defined in 42 C.F.R. § 438.400). In any event, those cases required notice only in response to an affirmative act by the state, rather than a mere failure to act. See Bryson, 177 F. Supp. 2d at 98 (placing applicants for waiver services on a waiting list); Cassidy, 2021 WL 4472592, at *6 (transferring beneficiaries to a new managed long term care provider).

13

claimant is unable to obtain an authorized benefit because of defendants' inaction. Key to the Supreme Court's reasoning in Goldberg was the weighty interest in the "uninterrupted provision [of welfare] to those eligible to receive it," which could only be achieved through a pre-termination hearing. See id. at 265. Yet that interest is inapplicable where, as here, the claimed notice and hearing rights only materialize after a beneficiary has been unable to obtain services that defendants have authorized them to receive. Moreover, the singular purpose of the pre-termination hearings in Goldberg was to examine "the validity of the welfare department's grounds for discontinuance of payments in order to protect a recipient against an erroneous termination of his benefits." Id. at 267. That cannot occur where, as here, there has been no decision by the state agency for a hearing officer to review. Accordingly, neither the holding nor the reasoning of Goldberg mandates the procedural protections that plaintiffs seek.

Of course, Goldberg is not the only source of procedural due process rights. Rather, procedural due process requirements vary with circumstance and must be determined by carefully balancing the interests at play. See Mathews v. Eldridge, 424 U.S. 319, 334 (1976). Accordingly, whether additional procedural protections are constitutionally required turns on (1) "the private interest that will be affected by the official action," (2) "the risk of erroneous deprivation of such interest through the procedures used, and

the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335. Although not specifically briefed by the parties, I conclude that notice and an opportunity for a hearing are not required by the balancing test set out in Mathews.

Here, there is little question that plaintiffs' interest in receiving the full amount of services they have been determined to need is of paramount importance. But notice and an opportunity for a hearing would do little to ensure that plaintiffs are not erroneously deprived of those services. Because plaintiffs know when they are missing services, notifying them of as much would be of little value. To the extent a hearing could be useful in preventing future service gaps, it is uncontested that beneficiaries may request and obtain a hearing if they believe that they have been "adversely affected" by a "department decision or action," including an effective denial of services – an option of which beneficiaries are notified. See, e.g., N.H. Admin. R. He-C 201.02(b) (defining "appeal"); Doc. 101-3 (sample right to hearing notice).[3]

---

[3]     Defendants state that CFI participants receive such notices annually. Plaintiffs do not concede the point and instead insist that they require discovery on how uniformly and consistently such notices are provided.

Finally, the burden on the government would be significant. Evidence offered by both plaintiffs and defendants indicates that hundreds of CFI participants experience service gaps each month. See Doc. 80-8 at 6; Doc. 96-1 at 8. Providing hearing notices whenever a participant experiences a service gap would impose a substantial burden on defendants to determine when service gaps develop so that they can notify participants of their right to a hearing, while adding little value to plaintiffs. This burden is only exacerbated by the difficulty in determining when service gaps constitute an "effective reduction or termination of services" such that the right to notice and a hearing would be triggered.[4] See Doc. 112-1 at 6-7. Accordingly, considering the minimal value of plaintiffs' requested procedures and the significant government burden in providing such procedures, I conclude that the Due Process Clause does not require notice or an opportunity for a hearing when plaintiffs experience service gaps.

---

[4] Plaintiffs emphasize that they are not requesting notice and hearing rights whenever some minimal amount of services are not received, but rather when the service gaps are so significant that they "constitut[e] an effective reduction or termination of services." Doc. 112-1 at 6-7. Plaintiffs do not explain, however, the point at which this occurs.

## IV.   CONCLUSION

For the foregoing reasons, defendants' motion for partial summary judgment (Doc. 101) is granted.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

March 28, 2023

cc:   Counsel of record