UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| EMILY FITZMORRIS, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> NEW HAMPSHIRE DEPARTMENT OF HEALTH AND HUMAN SERVICES, COMMISSIONER, LORI WEAVER, et al., <br><br> Defendants. | Case No. 1:21-cv-00025-PB |

**PLAINTIFFS' MOTION TO STRIKE
DECLARATIONS OF WENDI AULTMAN AND CHRISTY ROY**

Plaintiffs Emily Fitzmorris and Kathleen Bates, on their own behalf and on behalf of the class, respectfully move this Court to strike the Declarations of Wendi Aultman [Doc. 223-4] and Christy Roy [Doc. 223-6] proffered by Defendants in support of their Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment ("Cross-Motion") [Doc. 223], and to disregard both when determining which facts are undisputed.[1] Neither declaration is

---

[1] Plaintiffs recognize and respect the Court's prior admonition that "motions to strike are disfavored and should ordinarily be addressed in the summary judgment pleadings." Margin Order of July 2, 2025. Previous case law from this Circuit suggests, however, that "[a] party must move to strike an affidavit that violates Rule 56[(c)(4)]" at risk of "waiv[ing] his objection" for failure to do so. *Lacey v. Lumber Mut. Fire Ins. Co. of Boston*, 554 F.2d 1204, 1205 (1st Cir. 1977) (citing 10 WRIGHT & MILLER, FED. PRAC. & PROC. § 2738, at 706 (1973)); *see also Murphy v. Emme*, No. CV-93-79-SD, 1994 WL 269276, *2 n.2 (D.N.H. June 14, 1994); *cf.* 10 WRIGHT & MILLER, FED. PRAC. & PROC. § 2738 (4th ed. updated May 21, 2025) (including substantially the same rule). In light of that suggestion, as well as the applicable page limits and the nature of the issues raised in this motion (which require more fulsome explanation than typical issues of admissibility), Plaintiffs have filed this motion to strike rather than attempting to address the issues herein in their contemporaneously filed legal memorandum.

proper for this Court to consider on summary judgment. Ms. Aultman's declaration is not submitted on her own personal knowledge and thus fails to meet the threshold criteria for consideration under Federal Rule of Civil Procedure 56(c)(4). The declaration, moreover, clearly contradicts Ms. Aultman's previous sworn testimony in several respects and is a transparent attempt to create a material issue of fact where none exists—a "sham affidavit," in the parlance of some federal courts. And both Ms. Aultman's and Ms. Roy's declarations seek to provide expert opinion testimony where neither qualifies as an expert or has been disclosed as such. In further support of this motion, Plaintiffs state as follows:

1. Plaintiffs filed a Partial Motion for Summary Judgment on May 15, 2025. On June 16, 2025, Defendants filed their Cross-Motion. In support of the Cross-Motion and Defendants' accompanying Response to Plaintiffs' Statement of Undisputed Facts and Counter-Statement of Undisputed Material Facts ("Response and Counter-Statement") [Doc. 223-2], Defendants submitted, *inter alia*, declarations from Wendi Aultman, Bureau Chief for the Bureau of Adult and Aging Services in the New Hampshire Department of Health and Human Services ("DHHS"), and Christy Roy, a Senior Finance Director at DHHS.

2. Ms. Aultman's declaration spans over 35 pages and nearly 100 separate paragraphs. It is the principal or only source for many of the "facts" set forth in Defendants' Response and Counter-Statement. Ms. Roy's declaration is far more modest in scope. Yet both declarations are objectionable and should be, in whole or in part, struck from the record before this Court on summary judgment.

DECLARATION OF WENDI AULTMAN

3. Pursuant to Federal Rule of Civil Procedure 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Ms. Aultman's declaration fails this minimal test and should be struck from the summary judgment record for at least three reasons.

4. First, "[a]lthough Rule 56 has been liberally construed with respect to admissibility of affidavit's contents on summary judgment, its requirement of personal knowledge by affiant is unequivocal and cannot be circumvented." *United States v. Valore*, 152 F.R.D. 1, 2 (D. Me. 1993). But Ms. Aultman's declaration is not "made on personal knowledge"—at least not in whole. Rather, Ms. Aultman states that the "information contained in this declaration is based on my personal knowledge *and/or information reported to me by other DHHS employees whom I oversee*." [Doc. 223-4] ¶ 2 (emphasis added).

5. Ms. Aultman's affidavit does not explain which—if any—of the matters to which she is attesting is derived from her own personal knowledge, and which from the knowledge of other individuals who are not before the Court. As a result, the Court and Plaintiffs are left to guess which of those matters Ms. Aultman is knowledgeable about and competent to testify to, and which she is merely parroting back from others. Because Ms. Aultman's declaration "fails to show that it is based on [her] personal knowledge," it must be struck and not considered on summary judgment. *Id.*; *see also Livick v. The Gillette Co.*, 524 F.3d 24, 28 (1st Cir. 2008) (affirming district court order striking portions of summary judgment affidavit from defendant's human resources manager concerning human resources policies about which he had no personal knowledge).

3

6. <u>Second</u>, Ms. Aultman's declaration is not the first time she has submitted sworn testimony in this matter. She has been deposed multiple times: as a Rule 30(b)(6) designee for DHHS on September 27, 2021 and again on December 4, 2024, and as a fact witness on December 8, 2022.

7. During her prior depositions—including, most notably, during her December 2024 Rule 30(b)(6) deposition just months ago—Ms. Aultman gave testimony that she has now directly contradicted in her declaration.

8. By way of example, when asked at her December 2024 Rule 30(b)(6) deposition what happens when a case management agency cannot find a service provider to provide authorized services to a CFI participant, Ms. Aultman testified:

> Typically what will happen is they will consult with the department. We have monthly meetings … where concerns or issues may come up. We call them technical assistance meetings.
>
> They also can contact the - - the department and staff within our Choices For Independence Waiver administration unit and discuss any concerns or issues they have with finding an available provider who's enrolled in the … Choices For Independence Waiver program, and we will provide guidance and support based on what they're presenting to us as an issue.

[Doc. 202-8] at 29:7-30:6. Just six months later in her recent declaration, however, Ms. Aultman now tells an entirely different tale:

> …If a participant's case manager is unable to identify a provider for a CFI Waiver service that the participant needs, DHHS instructs the case manager to indicate that in the participant's service authorization request form by checking the "provider not available" indicator.
>
> In case a CFI Waiver participant or case management agency is unable to find a provider to deliver an authorized service, DHHS created and launched in October 2019 a "provider not available" indicator in the service authorization system, which case management agencies are instructed to use to allow DHHS to receive notification of and track potential service gaps. Additionally, the Department is currently implementing changes to its New Heights system to add a dashboard for case managers to quantify, describe,

4

>  and improve the ability to monitor any discrepancy between a participant's assessed service needs and the services actually received. These changes will also allow the Department to monitor what service gaps exist in a participant's care plan and the reason those gaps exist….

[Doc. 223-4] ¶¶ 45, 76. Although Ms. Aultman now claims that this "'provider not available' indicator" was launched in 2019, over five years before her December 2024 deposition testimony, she did not deign to mention it in that testimony.

9. This is but one of several examples throughout Ms. Aultman's declaration where she contradicts her prior sworn testimony or adds new facts to which she did not testify previously when asked about a subject. For ease of comparison, Plaintiffs have provided a chart identifying those instances in which Ms. Aultman has departed substantially from her prior testimony as **Exhibit A** to this Motion. Exhibit A sets forth Ms. Aultman's prior testimony on a topic alongside the contradictory or embellished statements from her declaration.

10. It is well established in the First Circuit that "[w]here a party has given clear answers to unambiguous questions in discovery, that party cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, unless there is a satisfactory explanation of why the testimony has changed." *Escribano-Reyes v. Professional Hepa Certificate Corp.*, 817 F.3d 380, 386 (1st Cir. 2016) (citation and internal quotations/alterations omitted); *see also Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994). This principle, known as the "'sham affidavit' principle" in some circuits, *see, e.g.*, *United States v. $30,670*, 403 F.3d 448, 466 (7th Cir. 2005), does not only prohibit a party from advancing facts that contradict prior testimony at summary judgment, but likewise prohibits a party from advancing completely new facts that they were "given the opportunity" to describe earlier in discovery, but did not. *Escribano-Reyes*,

5

817 F.3d at 387; *see Hernandez-Loring v. Universidad Metropolitana*, 233 F.3d 49, 55 (1st Cir. 2000) ("[T]he district court was entitled to disregard any completely new incident that Hernandez–Loring described for the first time in her affidavit, assuming that prior questions had clearly asked for such information."); *Fin Brand Positioning, LLC v. Take 2 Dough Prods., Inc.*, 2011 DNH 200, 2012 WL 27917, *5 (D.N.H. Jan. 5, 2012) (Laplante, J.) (refusing to consider oral agreements that were mentioned for the first time in an affidavit in opposition to summary judgment motion when neither agreement was mentioned in prior discovery responses).

11. Ms. Aultman's declaration does not even acknowledge her prior testimony, let alone attempt to provide a "satisfactory explanation" for the departures between her declaration and that testimony. There is no such explanation. Each of the pieces of information Ms. Aultman has now shared for the first time in her declaration is information that was readily available to her when she testified in December 2024 as DHHS's Rule 30(b)(6) designee, purportedly the DHHS representative most knowledgeable about each of the deposition topics. Accordingly, each of the paragraphs of Ms. Aultman's declaration identified in Exhibit A should be struck from the summary judgment record.

12. <u>Third</u> and finally, Ms. Aultman's declaration also sets forth copious undisclosed opinion testimony. To wit, Ms. Aultman opines that:

- "CFI participants' conditions . . . tend to worsen with age or time," [Doc. 223-4] ¶ 15;
- To develop and maintain a network of CFI providers sufficient to meet CFI participants' needs, DHHS "would be required to, at a minimum," take the following steps:

    substantially increase payment rates to CFI providers; require CFI providers to substantially increase compensation and benefits for workers and ensure that CFI providers comply with those requirements; recruit individuals currently working out-of-state to move to New Hampshire to serve CFI

6

> participants; recruit direct care workers serving individuals with disabilities in other programs to instead serve CFI participants; recruit individuals working in other industries in New Hampshire to become CFI Waiver service workers; hire multiple additional full-time equivalents ("FTEs") at BAAS to implement and oversee the foregoing work; and decrease demand for CFI Waiver services by capping certain CFI Waiver services and decreasing the number of slots available for individuals to enroll in the CFI Waiver program.

*Id.* ¶ 68;

- To provide enhanced benefits for direct care workers "would cost DHHS millions of dollars or tens of millions of dollars annually," or "many providers may cease to be profitable and go out of business," *id.* ¶ 69;

- To provide for back-up direct care workers to fill in when service gaps arise "would cost DHHS millions of dollars, depending on the number of workers"—"$16,000,000 to $29,000,000" total, *id.* ¶ 70; *see also id.* ¶ 89;

- To procure an electronic system to track delivery of CFI waiver services in real time "would take years [to] procure and cost millions or tens of millions of dollars," would "require DHHS to hire additional FTEs to oversee the implementation and operation," and "would impose significant additional burdens on providers and workers . . . ," *id.* ¶ 78; and

- To ensure the delivery of CFI waiver services with reasonable promptness and that service gaps are quickly identified and remedied, DHHS "would be required to, at a minimum," take the steps identified in ¶ 68 (as set forth in the second bullet *supra*) as well as:

  > directly provide case management services, instead of contract with private CMAs to delivery [*sic*] case management services; hire dozens of additional FTEs to perform case management functions (e.g., connect CFI participants to service providers, oversee service delivery); and require CFI participants to receive services regardless of whether they want to receive those services.

  *Id.* ¶ 87;

- To ensure an increase in the receipt of CFI waiver services by CFI participants, DHHS "would be required to, at a minimum," take the steps identified in ¶¶ 68 and 87 (as set forth in the second and sixth bullets *supra*), *id.* ¶ 88;

- To implement all of Plaintiffs' requested relief:

  > would require millions of dollars in additional staffing costs, in addition to the tens of millions of dollars in costs described in the preceding paragraphs. Implementing this relief would likely require DHHS to hire at least 30

7

   additional full-time equivalents ("FTEs") to perform administrative functions, at least 200 FTEs to work as DHHS case managers, and another 400 FTEs to work as "back up" or "contingency" service providers. DHHS estimates that hiring these additional staff would cost an average of $75,000 annually for each administrative FTE and DHHS case manager and $55,000 annually for each "contingent" or ["]back up" worker.

 *Id.* ¶ 89;

- Implementing Plaintiffs' requested relief "would not meaningfully decrease service gaps because that relief would not increase the number of CFI providers or workers available, and because many service gaps are caused by CFI participants' own actions (e.g., choosing not to receive authorized services) or participant requiring services in a nursing facility or hospital,"[2] *id.* ¶ 90.

13. Each of the foregoing topics on which Ms. Aultman has provided testimony are not issues of fact. They plainly are speculative opinions—particularly insofar as Ms. Aultman purports to predict what would be "required," in terms of financial outlay, manpower, or other resources, to implement Plaintiffs' relief. These opinions are, moreover, each "based on scientific, technical, or other specialized knowledge," and thus not appropriately the subject of lay opinion testimony under Federal Rule of Evidence 701. Only an expert can provide such specialized opinion testimony. Yet Ms. Aultman has never been disclosed as an expert witness in this case, and nothing about her "knowledge, skill, experience, training, or education" suggests that she has the qualifications to provide expert testimony concerning the foregoing topics under Rule 702 in any event. And even if Ms. Aultman *did* have the requisite qualifications, there is simply nothing in her declaration that explains either (a) the specific facts or data that Ms. Aultman relied upon, or (b) the principles and

---

[2] Ms. Aultman purports to base this opinion at least in part upon her own anecdotal hearsay evidence about the preferences and choices of CFI participants. *See* [Doc. 223-4] ¶ 72.

methods she applied to those facts and data to reach her conclusions. Ms. Aultman simply presents her conclusory assertions as *ipse dixit* and asks the Court to credit them.[3]

14. In short, Ms. Aultman's opinions fail to meet every conceivable test of competency and reliability under Federal Rules of Evidence 701-705. Those opinions must be struck from the summary judgment record and not considered by the Court. *Cf. Campbell v. CGM, LLC*, 2016 DNH 212, 2016 WL 6989769 (D.N.H. Nov. 29, 2016) (DiClerico, J.) (striking undisclosed expert affidavit and not considering it on summary judgment).

## DECLARATION OF CHRISTY ROY

15. The declaration of Christy Roy suffers from one of the same infirmities as Ms. Aultman's declaration. Like Ms. Aultman, Ms. Roy purports to offer expert opinion testimony that could only be "based upon scientific, technical, or other specialized knowledge," in the form of critiques of the report of Plaintiffs' expert Dr. David Blanchflower. *See* [Doc. 223-6] ¶¶ 6-7. Also, like Ms. Aultman, Ms. Roy neither is qualified to offer these opinions nor was previously disclosed as an expert, and her opinions fail to meet the requirements of Federal Rule of Evidence 702.

16. As noted, Ms. Roy is an employee of DHHS—a Senior Finance Director at the department. She has no formal education in labor economics, at least none that is apparent on the face of her declaration. To the extent she participated in the 2024 Rate Study described in her declaration, her role is undefined, but appears to be clerical in nature, as she lists the tasks

---

[3] There is some overlap between the undisclosed expert opinions set forth in Ms. Aultman's declaration and Defendants' Exhibit 9 [Doc. 223-12], an interrogatory response they provided in discovery in this case. The opinions provided in Exhibit 9 do not meet the standard for admissibility under the Federal Rules of Evidence, either, and Plaintiffs have separately contested Exhibit 9 in responding to Defendants' Response and Counter-Statement.

she worked on as "assembling meetings, organizing the workflow, and initiating the review of the data." *Id.* ¶ 3. While she relates in general terms the work done during the Rate Study and identifies various economic indicators, she fails to explain *how* the Rate Setting Unit "analyzed" and "considered" the various data points. She does not explain how they were obtained, calculated, or weighted.

17. As with Ms. Aultman, Ms. Roy—even if she had been properly disclosed as an expert—lacks the qualifications to render the opinions she seeks to offer the Court. Even if she had the requisite qualifications, she has not demonstrated that her opinions are the product of "reliable principles and methods," reliably applied to the facts of this case, and thus fall short of Rule 702's exacting standards. Her opinions should likewise be struck from the summary judgment record.

\*   \*   \*

18. Pursuant to Local Rule 7.1(a)(2), no memorandum in support is provided because all points and arguments supporting Plaintiffs' motion are contained herein, and the relief requested is in the Court's sound discretion.

19. Pursuant to Local Rule 7.1(c), Defendants do not assent to the relief sought in this motion.

WHEREFORE, Plaintiffs respectfully request that this Court:

    A.    Grant this Motion to Strike and strike the Declarations of Wendi Aultman and Christy Roy as outlined herein;

    B.    Disregard both declarations when determining which facts are undisputed for purposes of the Court's rulings; and

    C.    Grant such other and further relief as justice requires.

Dated: July 16, 2025

Plaintiffs EMILY FITZMORRIS and
and KATHLEEN BATES, on behalf of themselves
and all others similarly situated,

By their attorneys,

By: */s/ Mark Tyler Knights*

Cheryl S. Steinberg (#10063)
NEW HAMPSHIRE LEGAL ASSISTANCE
117 N. State Street
Concord, NH 03301
T: (603) 206-2210
csteinberg@nhla.org
Kay E. Drought (#12851)
Jessica Morrissey-Jeffery (#271978)
NEW HAMPSHIRE LEGAL ASSISTANCE
154 High Street
Portsmouth, NH 03801
T: (603) 206-2253
kdrought@nhla.org
jmorrissey@nhla.org

Jennifer A. Eber (#8775)
Hannah Roberts (#272288)
jennifere@drcnh.org
hannahr@drcnha.org
DISABILITY RIGHTS CENTER-
NEW HAMPSHIRE
64 North Main Street, Suite 2
Concord, NH 03301
T:  (603) 228-0432
F:  (603) 225-2077

Mark Tyler Knights (D.N.H. Bar #670991)
mknights@nixonpeabody.com
Tel: 603-628-4027
W. Daniel Deane (N.H. Bar #18700)
Kierstan E. Schultz (N.H. Bar #20682)
ddeane@nixonpeabody.com
kschultz@nixonpeabody.com
NIXON PEABODY LLP
900 Elm Street, 14th Floor
Manchester, NH 03101
T: (603) 628-4000
F: (603) 628-4040

Kelly Bagby (*pro hac vice*)
Maame Gayamfi (*pro hac vice*)
Stefan Shaibani (*pro hac vice*)
Samantha Wehrle (*pro hac vice*)
kbagby@aarp.org
mgyamfi@aarp.org
sshaibani@aarp.org
swehrle@aarp.org
AARP FOUNDATION
601 E Street NW
Washington, DC 20049
T: (202) 434-2060
F: (202) 434-6622

## **CERTIFICATE OF SERVICE**

    I, Mark Tyler Knights, hereby certify that the foregoing pleading was filed through the ECF system and served electronically on the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: July 16, 2025　　　　　　　　　*/s/ Mark Tyler Knights*
　　　　　　　　　　　　　　　　　　Mark Tyler Knights, Esq.