UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| EMILY FITZMORRIS, ET AL., | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Case No. 21-CV-25-PB |
| NEW HAMPSHIRE DEPARTMENT OF HEALTH AND HUMAN SERVICES AND COMMISSIONER LORI WEAVER, | ) ) ) ) ) | |
| *Defendants*. | ) ) ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AND INCORPORATED MEMORANDUM OF LAW[1]**

Defendants, Commissioner of the State of New Hampshire, Department of Health and Human Services, et al., by and through counsel, submit this Opposition to Plaintiffs' Motion to Strike, stating as follows:

1.      Plaintiffs' motion to strike and wholly "disregard" the declarations of Bureau Chief Wendi Aultman and Senior Finance Director Christy Roy directly contravenes the First Circuit's long-standing instruction that motions to strike should be handled with "scalpel, not a butcher knife." *Perez v. Volvo Car Corp.*, 247 F.3d 303, 315 (1st Cir. 2001). As explained below, each declaration is fully consistent with the requirements of Federal Rule of Civil Procedure 56 and the related rules of evidence, and therefore "must" be "consider[ed]" in deciding the cross-motions for summary judgment. *See Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 53 (1st

---

[1] No separate memorandum is necessary as all citations to supporting authorities are incorporated herein. LR 7.1(a)2.

Cir. 2000) (holding that the court "must consider" an affidavit that "complies with the requirements of the federal rules").

I. **Declaration of Wendi Aultman**

    A. **Ms. Aultman's Declaration is Based on Personal Knowledge.**

2.      Plaintiffs first argue that Ms. Aultman's June 2025 Declaration should be excluded in its entirety because it is not based on Ms. Aultman's personal knowledge. Ms. Aultman's Declaration is based on personal knowledge, consistent with F.R.C.P. 59(c)(4).

3.      The test for "personal knowledge" in the context of Fed. R. Evid. 602 is "whether a reasonable trier of fact could believe the witness had personal knowledge." *United States v. Doe*, 960 F.2d 221, 223 (1st Cir. 1992). Evidence to prove personal knowledge "may consist of the witness' own testimony, and that knowledge includes inferences and opinions, so long as they are grounded in personal observation and experience." *Id.* (cleaned up); see also *Osher v. Univ. of Maine Syst.*, 2010 WL 11545686 (D. Me. Mar. 29, 2010).

4.      Courts have consistently found that an affiant's personal knowledge may be derived from business records or from information supplied by subordinates. *See, e.g., Ecological Rights Found. v. EPA*, 541 F. Supp. 3d 34, 47 (D.D.C. 2021) (explaining that personal knowledge standard satisfied by review of records and information supplied by employees); *Hager v. Vertrue, Inc.*, o. 09-11245-GAO, 2011 U.S. Dist. LEXIS 110697, 2011 WL 4501046 at *12 (D. Mass. Sept. 28, 2011) (the court considers an affidavit by the president of the company, stating that the information "is submitted based on '[his] personal knowledge and on the business records of Magnet Media, which have been searched under [his] direction'" in granting summary judgment (brackets in original)). While the issue of personal knowledge often comes up in the context of a FOIA action, an affidavit supporting a search for records is

2

subject to Rule 56(c)(4) and courts have not applied a different or more lenient standard. *Ecological Rights Found.*, 541 F. Supp. 3d at 47.

5. Ms. Aultman is the Bureau Chief for the Bureau of Adult and Aging Services ("BAAS") within the New Hampshire Department of Health and Human Services ("DHHS"). ECF 223-4, ¶ 1. Ms. Aultman testified that the facts set forth in her June 2025 Declaration are based on "[her] personal knowledge and/or information reported to [her] by other DHHS employees whom [she] oversee[s]." ECF 223-4, ¶ 2. Ms. Aultman further declared "under penalty of perjury" that the material in the declaration "is true and correct." ECF 223-4, ¶ 37. Ms. Aultman's reliance on information reported to her falls within Rule 56 without looking past the four-corners of her declaration.

6. However, even if her own testimony within her declaration were somehow insufficient to establish her knowledge, the evidence on the record before the Court on summary judgment sets forth ample basis to support Ms. Aultman's competence to testify to the matters set forth in her declaration. "Rule 56 contains no requirement that the affiant specifically articulate that he or she has personal knowledge." *Garcia-Garcia v. Costco Wholesale Corp.*, 878 F.3d 411, 418 (1st Cir. 2017). It is sufficient if personal knowledge can be inferred. *Id.*

7. Plaintiffs throughout this case have credited Ms. Aultman as capable of testifying on behalf of, and about, DHHS' administration of the CFI Waiver Program. Plaintiffs repeatedly rely on, and cite to, Ms. Aultman's prior deposition testimony, declarations, interrogatory responses, and emails, to support their Statement of Undisputed Facts. *See* ECF 202, Ex. S-A [Excerpts from Defendants' Supplemental Response to Interrogatories] (signed by Wendi Aultman); Ex. S-C [Nov. 2022 Declaration of W. Aultman]; Ex. S-G [W. Aultman 30(b)(6) Deposition]; Ex. S-O [Nov. 18, 2022 W. Aultman Email]; Ex. S-S [Dec. 13, 2022 W. Aultman

Email]; Ex. S-W [May 2023 Aultman 2nd Declaration]. Plaintiffs cited Ms. Aultman's prior testimony or specifically referred to actions by Ms. Aultman no less than *twenty* times in their Memorandum in support of their Motion for Summary Judgment. ECF 199, at *13, 14, 20-25, 28-33.

8. Plaintiffs also rely on two prior declarations of Ms. Aultman (Exhibits S-C and S-W of Plaintiffs' Statement of Material Facts Not in Dispute) that contain similar language regarding the sources of Ms. Aultman's knowledge in their summary judgment motion. Ms. Aultman testified in both her November 2022 and May 2023 Declarations that, "[t]he information contained in my declaration is based on my personal knowledge, my review of the cited exhibits, and my communication with my staff." ECF 202-4; ECF 202-24. Plaintiffs have not challenged either of these declarations, even though they contain substantively the same language as the June 2025 Declaration at issue here. Plaintiffs' attempt to challenge Ms. Aultman's June 2025 Declaration at this stage is wholly inconsistent with their reliance on her knowledge in various other mediums regarding all aspects of the CFI Waiver program.

9. To ensure that the record is entirely clear, DHHS submits a Supporting Declaration by Ms. Aultman, attached hereto as Exhibit 1, to further explain how the facts included in her June 2025 Declaration are within her personal knowledge. Ms. Aultman testified in her Supporting Declaration, that, as the Bureau Chief of BAAS, she oversees and supervises DHHS staff who administer the CFI Waiver program. Ex. 1, ¶ 3. Ms. Aultman regularly accesses and works with "information and data, related to the operation and administration of the CFI Waiver program …including reports showing utilization of authorized CFI Waiver services, reports showing the number of enrolled providers, and data and information related to waiver requests and specialized rate requests." *Id.* In her role she also "[has] access to and work[s] with

data and information related to the cost of hiring DHHS staff … including when [she] prepare[s] or review[s] grant applications to estimate the cost of hiring a new employee." *Id.*

10. Ms. Aultman further clarified which aspects of her declaration are based solely on her personal knowledge, and which aspects relied on certain data or figures that were either reported to her or derived from DHHS reports (*i.e.*, business records) that she regularly reviews.

11. Ms. Aultman clarified that, except for certain facts within paragraphs 14, 16, 52, 61, 69, 70 and 89 of her June 2025 Declaration, the remaining portions are based exclusively on her personal knowledge. Ex. 1, ¶ 7. Ms. Aultman's Declaration relies on proper foundation – information that she has personal knowledge, or information that is reported to her that she relies on in the course of her role as Bureau Chief, overseeing the administration of the CFI Waiver Program. For all of the reasons stated above, Ms. Aultman has sufficient personal knowledge to testify to such facts under Rule 56(c)(4) and Rule 602.

12. Finally, "[t]he extent of a witness' knowledge of matters about which he offers to testify goes to the weight rather than the admissibility of the testimony." *Hallquist v. ocal 27, Plumbers and Pipefitters Union, AFL-CIO*, 843 F.2d 18, 24 (1st Cir. 1988) (quoting *Nielson v. Armstrong Rubber Co.*, 570 F.2d 272, 277 (8th Cir.1978)). "Evidence is inadmissible under this rule only if in the proper exercise of the trial court's discretion it finds that the witness could not have actually perceived or observed that which he testified to." *Id.*

### B. Ms. Aultman's Declaration Bears No Resemblance to a "Sham Affidavit."

13. Plaintiffs characterize Ms. Aultman's declaration as "a transparent attempt to create a material issue of fact where none exists—a 'sham affidavit.'" This is untrue: Nothing in Ms. Aultman's declaration contradicts her previous testimony.

14. While "a party may not use a later affidavit to contradict facts previously provided to survive summary judgment," *Escribano-Reyes v. Prof'l Hepa Certificate Corp.*, 817 F.3d 380, 385 (1st Cir. 2016) (cleaned up), "[a] subsequent affidavit that merely explains, or amplifies upon, opaque testimony given in a previous deposition is entitled to consideration in opposition to a motion for summary judgment," *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 26 (1st Cir. 2002).

15. Ms. Aultman's June 2025 Declaration does not contradict her prior testimony. In the portions of her declaration that do not directly mirror her 2022 and 2023 declarations, her declaration either elaborates upon or updates the data or facts presented in her prior testimony. Further, Ms. Aultman's declaration has not been used to create issues of fact to preclude summary judgment, but to set forth facts which are *undisputed*.

16. The example of a "contradiction" set forth by Plaintiffs in their Motion to Strike is *at best* an incomplete overview of Ms. Aultman's prior testimony. Plaintiffs argue that Ms. Aultman gave testimony that "she has now directly contradicted in her declaration" by testifying about several steps that typically occur if a case management agency cannot find a care provider to provide authorized services to a CFI participant. ECF 227, ¶¶ 7-8. The "contradiction" identified by Plaintiffs is as follows: Ms. Aultman testified at one point in her deposition that, if a case management agency cannot find a service provider, "[t]ypically…[case management agencies] will consult with the department" at technical assistance meetings. ECF 227, ¶ 7 (citing ECF 202-8 at 29:7-30:6). Plaintiffs argue that Ms. Aultman's declaration "tells an entirely different tale," in which she testified that, "[i]f a participant's case manager is unable to identify a provider for a CFI Waiver service that the participant needs, DHHS instructs the case manager to indicate that in the participant's services authorization request form by checking the 'provider

6

not available' indicator." ECF 227, ¶ 8. Plaintiff claims this is contradictory because Ms. Aultman did not "deign to mention [the provider not available indicator] in her testimony." *Id.*

17. This allegation is flatly false, misstates her testimony, and misstates the record. Ms. Aultman testified to the *same* information regarding the "provider not available" indicator in her November 2022 and May 2023 declarations, *prior* to her December 2024 deposition testimony. Plaintiffs themselves relied on Ms. Aultman's prior (substantially similar) testimony and included the relevant testimony as an exhibit to their summary judgment motion. *See* ECF 202-24, ¶ 25 [Aultman's Declaration dated May 29, 2023, Exhibit S-W to Plaintiffs' Statement of Material Facts] ("If a CFI Waiver participant or case management agency is unable to find a provider to deliver an authorized service, DHHS has created a 'provider not available' indicator in the service authorization system, which case management agencies are instructed to use to allow DHHS to receive notification of and track potential service gaps."); ECF 202-4, ¶ 38 [Aultman's Declaration dated November 3, 2022, Exhibit S-C to Plaintiffs' Statement of Material Facts] (same).

18. Plaintiffs' allegation regarding Ms. Aultman "not deign[ing] to mention" the provider not available indicator in her deposition is also incorrect. The "provider not available" indicator was mentioned *thirty times* in Ms. Aultman's December 2024 deposition testimony, both in questions posed Plaintiffs' counsel and in answers by Ms. Aultman. For example:

> Q: You testified that your agency monitors the provider-not-available code. What did you mean by "monitor"?
>
> A: We'll – we'll look to see if – if, on it's being used and utilized by each of the case management agencies. And we'll look at – at the individual level who has those service provider not available identified as part of their care plan, and we will follow up and ask questions during technical assistance meetings about any challenges or actions taken as a result of the case management agencies entering those.

Ex. 2, Aultman 30(b)(6) Dep. 195:21-196:11.

19. The "provider not available" indicator does not even appear to be a disputed issue. Plaintiffs' own, undisputed facts include the following: "DHHS instructs case managers to use the 'provider not available' indicator" in the service authorization system "to allow DHHS to receive notification of and track potential service gaps." ECF 228-1, ¶ 89 [Plaintiff's Material Facts Not Disputed By Defendants] (citing Ex. S-C, Nov. 3, 2022 Decl. of Wendi Aultman ¶ 38, Doc. 140-1).

20. The remaining testimony identified in Plaintiffs' Exhibit A is facially consistent with Ms. Aultman's prior testimony, and raises no new issues that Defendants rely-on to defeat summary judgment. For the purposes of judicial economy, and because Plaintiffs themselves deign not to elaborate on any of the other "contradictions" in their Motion, Defendants will not belabor each point.

### C. Ms. Aultman's Testimony Is Not Expert Testimony:

21. Plaintiffs are incorrect in identifying certain portions of Ms. Aultman's testimony as improper expert opinion. As stated *supra*, Ms. Aultman testified in her declaration based on her personal knowledge, which is well-established in the summary judgment record. To the extent that her testimony is deemed to include some limited opinions, such opinions are well within the confines of lay opinion testimony. Plaintiffs specifically identify certain testimony in paragraphs 15, 68-70, 78, and 87-90 as being improper expert testimony. Ms. Aultman testified in these paragraphs as to the steps that DHHS would have to take to implement the broad-based changes sought by Plaintiffs in this litigation.

22. Plaintiffs are seeking, among other relief, a court order requiring DHHS to "develop and maintain a network of CFI providers sufficient to deliver the CFI services that

DHHS authorizes in a timely manner." ECF 229, at *25. Plaintiffs have not specified as to the changes DHHS would have to make to comply with such an order and instead have deferred to DHHS to determine what changes may be necessary, *see, e.g.*, ECF 224, Ex. 17, Dep. of Randy Webster at 163:12-18, and the costs associated with implementing Plaintiffs' requested relief, *id.* at 159:19-160:12 ("I didn't do an analysis of what the costs associated to those – this injunctive relief was. That's really up to DHHS to assess, and I'm certain they're very capable people who could identify lots of ways to efficiently and effectively address the issue, and I trust that's true.").

23. Ms. Aultman, as the Bureau Chief overseeing the CFI Waiver Program, has personal knowledge of the types of structural changes that would be needed to comply with the relief sought by Plaintiffs and is the person who would oversee implementation of such changes. Ex. 1, at ¶¶ 3-5. Ms. Aultman is also personally aware of the types of changes that DHHS would have to make to the CFI Waiver Program to develop and maintain a network of CFI providers sufficient to meet CFI participants' needs. *See* Ex. 1; *see also* ECF 223-4, ¶¶ 68, 87. Ms. Aultman has provided reasonable bases for her estimated costs of such changes. *See* ECF 223-4, ¶¶ 69-70; 89. She estimates costs based on data she regularly relies on, including utilization data reflecting unpaid claims, current provider data, and public job postings. *See id.*; *see also* Ex. 1.

24. To the extent that this Court treats some of Ms. Aultman's cost or staffing estimates as opinion testimony, Ms. Aultman's testimony falls entirely within the scope of lay testimony set forth in Fed. R. Evid. 701. Rule 701 allows lay opinion testimony that is (a) rationally based on the witness's perception; (b) helpful to clearly understand the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

25. "Rule 701 does not categorically prohibit opinion testimony based on work experience." *United States v. Pontz*, 132 F.4th 10, 19-20 (1st Cir. 2025). "To the contrary, the rule is meant to admit testimony based on the lay expertise a witness personally acquires through experience, often on the job." *Id.* (citing *United States v. Maher*, 454 F.3d 13, 24 (1st Cir. 2006)). Lay opinion must be "well founded on personal knowledge" and "even if informed by job experience, must be the product of reasoning processes familiar to the average person in everyday life." *Pontz*, 132 F.4th 10, 19-20 (internal quotation and citation omitted).

26. Here, Ms. Aultman's testimony is rationally based on her perceptions as the head administrator of the Bureau overseeing the CFI Waiver Program. Her testimony assists the trier of fact to establish that the relief Plaintiffs are seeking is likely to cost millions of dollars to implement, particularly where Plaintiffs do not provide any evidence of the projected costs of their requested relief. *See generally* ECF 199-1; ECF 229.

27. Her testimony, even if informed by her role as Bureau Chief, is not based on scientific, technical, or other specialized knowledge, because her opinions are, if anything, reasonable inferences derived from her personal knowledge. Ms. Aultman's has personal knowledge of costs, budgets, and staffing. The staffing and budget estimates used to estimate the costs of implementing Plaintiffs' injunctive relief were simple calculations. Ms. Aultman performed simple math to her own knowledge to extrapolate, for example, the estimated cost of providing $2,500 in additional benefits to service providers (ECF 223-4, ¶ 69) or the estimated cost of directly hiring thirty direct care workers at a cost of $55,000 per worker (ECF 223-4, ¶ 70). As none of Ms. Aultman's estimates require specialized knowledge, expertise, or experience, and her remaining testimony falls entirely within her personal knowledge, her declaration does not contain expert testimony and should be considered by this Court.

## II. Declaration of Christy Roy

28. Christy Roy's declaration contains solely information regarding the actions by her and her team in conducting the CFI Rate Study. The CFI Rate Study was conducted by DHHS in 2024, to review then-current rates for the CFI Waiver Program and to propose updated rates to the Legislature. ECF 223-6, ¶ 3. Ms. Roy, as a Senior Financial Analyst, testified in her declaration that she "participated in conducting the CFI Rate Study, including by assembling meetings, organizing the workflow, and initiating the review of the data." *Id.* She then described the work of her unit in conducting the CFI Rate Study, including what data and information her team relied on. *Id.* at ¶ 4-5.

29. Plaintiffs contend that Christy Roy's declaration improperly critiques the report of Dr. David Blanchflower, and that her testimony regarding the report of Dr. Blanchflower "could only be based upon scientific, technical, or other specialized knowledge." ECF 227, ¶ 15. Plaintiffs further contend that Ms. Roy is unqualified to opine because she lacks qualifications to form her opinions and she fails to show the Rate Setting Unit "analyzed" and "considered" the various data points. *Id.*

30. Ms. Roy's testimony regarding the actions by her and her team in performing the 2024 CFI Rate Study is not opinion testimony subject to disclosure pursuant to Rule 26(a)(2). Testimony by witnesses based on "what they saw or what they did" is fact, not opinion testimony. *Aumand v. Dartmouth Hitchcock Med. Ctr.*, 611 F. Supp. 2d 78, 89 (D.N.H. 2009) (Treating physicians can testify, in the absence of a Rule 26(a)(2) disclosure, "what they saw or what they did."); *see also Posteraro v. Citizens Fin. Grp., No. 13-cv-416-JL*, 2016 U.S. Dist. LEXIS 606, at *3 (D.N.H. Jan. 5, 2016). A witness may also testify regarding work performed, the reason for the work performed, instructions given, and observations made during the course

of that work. *ZJBV Props., LLC v. Mammoth Tech., Inc.*, 682 F. Supp. 3d 189, 193-94 (D.N.H. 2023) (HVAC technicians may "provide fact testimony on subjects including the work performed, the timing, frequency, and reasons for service calls, instructions given and responses, and observations made during service calls," but cannot opine on "recommended repairs, upgrades, or part replacements").

31. Ms. Roy's critique of the report of Dr. Blanchflower was limited to correcting Dr. Blanchflower's description of the methodology of DHHS' CFI Rate Study, not his ultimate opinions or conclusions. Nor did she submit any opinion as to the sufficiency of the CFI Waiver Program's reimbursement rates or as to the correct CFI reimbursement rates. Dr. Blanchflower, in his report, stated that the CFI Rate Study did not consider certain data or information, including inflation or commercial rates. Ms. Roy's testimony simply corrected Dr. Blanchflower's misunderstanding of the work performed by her team, not his ultimate opinions or conclusions.

32. Plaintiffs, perhaps recognizing deficiencies in Dr. Blanchflower's report, submit a declaration from Amy Moore in support of their Reply to their Motion for Summary Judgment. ECF 229-6. Ms. Moore is not an expert disclosed by Plaintiffs, nor is she a DHHS employee. *See id.* Rather, she is in a management role at Ascentria IHC. *Id.* at ¶ 2. She testifies in her declaration that "[i]n my opinion, the CFI Program remains in crisis." She continues to set forth her unsubstantiated opinions as to the sufficiency of CFI reimbursement rates, the lack of CFI service providers, and deficiencies in the CFI Rate Study. ECF 229-6, at ¶¶ 6, 9. In fact, she purports to opine on provider availability "throughout the State of NH" (not just providers with Ascentria IHC) and even claims that other CFI provider agencies agree with her. *Id.* at ¶¶ 6, 15. Ms. Moore sets forth her opinions solely for the purpose of supporting Plaintiffs' Reply.

Plaintiffs cannot possibly request the exclusion of Ms. Roy's testimony, who testifies as to her work in performing CFI Rate Study, without excluding the testimony of Ms. Moore, who opines on the CFI Rate Study while lacking personal knowledge of the same.

33. As Ms. Roy's testimony is limited to the work that the Rate Setting Unit has already performed, outside of this litigation, related to the CFI Rate Study, and she performed no new analysis and came to no new conclusions, her testimony is not expert testimony subject to disclosure.

### III. Any Order Should Apply Only to Objectionable Portions of Ms. Aultman or Ms. Roy's Declaration.

34. If this Court were to find, *arguendo*, that certain testimony by Ms. Aultman or Ms. Roy should be disregarded, such a ruling should only apply to those limited portions of their declarations identified by Plaintiffs. Because this Circuit has held that Rule 56(e) "requires a scalpel, not a butcher knife," the trial court "ordinarily must apply [the scalpel] to each segment of an affidavit, not to the affidavit as a whole." *Perez v. Volvo Car Corp.*, 247 F.3d 303, 315 (1st Cir. 2001); *see also Rodriguez-Rivera v. Allscripts Healthcare Solutions, Inc.*, 43 F.4th 150, 170 (1st Cir. 2022) (holding district court abused discretion in striking entire declaration for lack of personal knowledge when at least one statement in declaration was based on personal knowledge). Any adverse ruling should be limited to the portions of the declarations identified by Plaintiffs.

### Conclusion

For the foregoing reasons, Plaintiffs' motion to strike should be denied.

<table>
<tr><td>Dated: July 30, 2025</td><td>Respectfully submitted,

*/s/* Catherine Denny
Catherine Denny, Bar No. 275344
Assistant Attorney General
New Hampshire Department of Justice
(Civil Bureau)
1 Granite Place
Concord, NH 03301
603-271-3650
catherine.a.denny@doj.nh.gov

/*s*/ Philip J. Peisch
Philip J. Peisch, *pro hac vice*
Kendra Doty, *pro hac vice*
Rebecca Wolfe, *pro hac vice*
Brown & Peisch PLLC
1225 19th Street NW, Suite 700
Washington, DC 20036
202-499-4258
ppeisch@brownandpeisch.com
kdoty@brownandpeisch.com
rwolfe@brownandpeisch.com</td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent by ECF to all counsel of record.

Dated: July 30, 2025

*/s/* Catherine A. Denny
Catherine A. Denny
