UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| EMILY FITZMORRIS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NEW HAMPSHIRE DEPARTMENT OF HEALTH AND HUMAN SERVICES AND COMMISSIONER LORI WEAVER,<br><br>Defendants. | Case No. 21-cv-00025-PB |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF ON BEHALF OF JUSTICE IN AGING, THE CENTER FOR MEDICARE ADVOCACY, THE CENTER FOR PUBLIC REPRESENTATION, DISABILITY LAW UNITED, DISABILITY RIGHTS EDUCATION AND DEFENSE FUND, NATIONAL CONSUMER VOICE FOR QUALITY LONG-TERM CARE, AND THE NATIONAL HEALTH LAW PROGRAM IN SUPPORT OF PLAINTIFFS**

Justice in Aging, the Center for Medicare Advocacy, the Center for Public Representation, Disability Law United, Disability Rights Education and Defense Fund, National Consumer Voice for Quality Long-Term Care, and the National Health Law Program (collectively "*Amici*") respectfully submit this memorandum of law in support of their motion for leave to file a brief as *amici curiae* in support of Plaintiffs in the above-captioned matter. The proposed *amicus* brief provides additional argument, guidance, and context concerning two issues raised in Defendants' Memorandum in Support of Cross-Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment ("Defs.' Mem." or "Defendants' Memorandum") ECF No. 223-1 (June 16, 2025). A copy of the proposed *amicus* brief is attached as Exhibit A to *Amici's* Motion.

# ARGUMENT

The Federal Rules of Civil Procedure do not explicitly address the filing of *amicus* briefs in district court; rather, "courts have discretion to grant *amicus curiae* status in the exercise of the courts' inherent authority." *League of Women Voters of New Hampshire v. Kramer*, No. 24-cv-73-SM-TSM, 2024 WL 4604323, at *1 (D.N.H. Oct. 29, 2024). *Amicus* parties participate in a case "to assist the court on matters of law." *Id*. (internal citations omitted). Here, the Court should grant the proposed *Amici* leave to file their brief, as it will assist the court on matters of law raised in Defendants' Memorandum. Further, the proposed *Amici* have met the standards set out in the Federal Rules of Appellate Procedure as the balance of this brief states their interest and "the reason why an *amicus* brief is desirable and why the matters asserted are relevant to the disposition of the case." *See* Fed. R. App. P. 29(a)(3).

## I. INTERESTS OF *AMICI CURIAE*

*Amici* are all nonprofit organizations that advocate for the rights of disabled people, older people, and people who need or receive long term care, all precisely the population most at risk of institutionalization under Defendants' and similar policies. In addition, these organizations have decades of experience understanding, interpreting, and enforcing the statutes discussed in their brief: Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*. ("Title II"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"). *Amici* have a strong interest in ensuring that these statutes are interpreted to prevent unjustified institutionalization of disabled people.

The individual *Amici* are described below:

### A. Justice in Aging

Justice in Aging's principal mission is to protect the rights of low-income older adults. Through advocacy, litigation, and the education and counseling of legal aid attorneys and other local advocates, we seek to ensure the health and economic security of older adults with limited income and resources. Since 1972, Justice in Aging has worked to promote the independence and well-being of low-income older adults. Justice in Aging works to ensure access to public benefit programs that allow low-income older adults to live with dignity and independence in the most community-integrated setting possible. Much of our work involves advocacy for equal access to state administered governmental benefits, services and programs, including Medicaid. We are concerned for the preservation of low-income older adults continued ability to access justice where state actions violate their rights under federal law.

### B. The Center for Medicare Advocacy

The Center for Medicare Advocacy is a national, nonprofit law organization that works to advance access to comprehensive Medicare coverage, health equity, and quality health care for older adults and people with disabilities. The Center focuses on the needs of Medicare beneficiaries, people with chronic conditions, and those in need of long-term care. Founded in 1986, it advocates on behalf of beneficiaries in administrative and legislative forums and serves as legal counsel in litigation of importance to Medicare beneficiaries and others seeking healthcare coverage.

### C. The Center for Public Representation

The Center for Public Representation is a public interest law firm that has been assisting people with disabilities, both in the community and in institutional settings, for over 50 years. The Center serves as a statewide backup center and provides statewide technical assistance and

support to public and private attorneys who represent people with disabilities in the Commonwealth of Massachusetts. It provides support to legal services programs throughout the Commonwealth on mental disability issues, co-counsels system reform cases with legal services and other public interest organizations to enforce the rights of persons with disabilities. The Center is also a national support center, providing training, and technical assistance to protection and advocacy programs in each of the fifty states and territories under a contract with National Disability Rights Network. It serves as the national technical assistance and support center on all institutional and community issues involving persons confined in psychiatric hospitals, nursing facilities, jails, prisons, forensic institutions, juvenile justice facilities, and all types of community programs.

### D. Disability Law United

Disability Law United ("DLU") (formerly the Civil Rights Education and Enforcement Center) is a nonprofit legal organization that fights for liberation through the lens of intersectional disability justice with a combination of education, legal advocacy, direct services, and impact litigation. DLU has successfully enforced both state and federal anti-discrimination laws protecting the disabled in multiple jurisdictions, bringing both individual actions and class actions challenging access restrictions and segregation. DLU clients and members of partner organizations continue to face access challenges that limit their full participation in our society. As agencies and service providers implement varying methods for coordinating and providing services it is critical that the protections afforded under laws prohibiting discrimination are construed and enforced in a manner that ensures that disabled individuals have the full benefit of that access and are used to eliminate, not just provide a remedy for discrimination.

### E. Disability Rights Education and Defense Fund

Disability Rights Education and Defense Fund ("DREDF"), based in Berkeley, California, is a national nonprofit law and policy center dedicated to advancing and protecting the civil and human rights of people with disabilities. Founded in 1979 by people with disabilities and parents of children with disabilities, DREDF remains board- and staff-led by members of the communities for whom we advocate. DREDF pursues its mission through education, advocacy, and law reform efforts, and is nationally recognized for its expertise in the interpretation of federal civil rights laws protecting persons with disabilities.

### F. National Consumer Voice for Quality Long-Term Care

The National Consumer Voice for Quality Long-Term Care ("Consumer Voice") is a national non-profit advocacy organization whose members include residents of long-term care facilities, recipients of home and community-based services, their families and advocates, statewide nursing home resident advocacy groups, state and local long-term care ombudsman programs, and other individuals and organizations dedicated to improving the quality of long-term care and protecting the rights of its consumers.

Consumer Voice's mission is to promote the interests of long-term care consumers, their families, and advocates. Since 1975, the organization has provided support to nursing home residents across the country and has represented their interests before federal and state legislative and administrative bodies, as well as in federal and state courts as *amicus curiae*. The organization's specific policy goals include improving the quality of life and protecting the rights of residents in long-term care facilities, as well as preventing unnecessary institutionalization by empowering individuals to receive the care they need in the community setting of their choice.

### G. National Health Law Program

For more than fifty-five years, the National Health Law Program (NHeLP) has engaged in litigation and policy advocacy to ensure access to essential health care for low-income children and adults with disabilities. NHeLP provides technical assistance and support to disability advocates around the country. NHeLP's systemic litigation includes actions to obtain community-based services for children with mental health conditions in ten states and those with complex medical conditions in several others.

## II. THE ISSUES DISCUSSED IN THE *AMICUS* BRIEF ARE USEFUL AND RELEVANT TO THE COURT'S REVIEW

### A. The proposed *amicus* brief will assist the court by providing additional history and context related to Plaintiffs' claim based on risk of institutionalization.

The proposed *amicus* brief explains, contrary to Defendants' Memorandum, that the right to be free of the risk of institutionalization is well-grounded in the text of Title II and Section 504, in Supreme Court and circuit precedent, and in long-standing regulations that were incorporated into the statutory text of Section 504 and thus have the force of law. It explains that it is well-established that a plaintiff seeking injunctive relief has standing to bring a claim when faced with a risk of harm, and "need not await a tragic event"[1] to bring suit. It further explains how the Defendants' Memorandum misreads the Supreme Court's recent *Loper Bright*[2] decision as sweeping away all regulatory interpretation and that, to the contrary, the Department of Justice's interpretation of Title II and Section 504 to prohibit policies that put disabled people at risk of institutionalization is a correct interpretation of these statutes and for this and other reasons is entitled to due respect.

---

[1] *Helling v. McKinney*, 509 U.S. 25, 33 (1993)
[2] *Loper Bright v. Raimondo*, 603 U.S. 369 (2024).

The attached *amicus* brief explains this history and context, with which *amici* organizations have long been familiar.

**B. The proposed *amicus* brief will assist the court in assessing redressability.**

The proposed *amici* have extensive experience in complex litigation involving multiple stakeholders. Their proposed *amicus* brief details how Plaintiffs' claims are redressable where they are brought to remedy discrimination in the administration of social service programs, including deficiencies in the oversight of third-party service providers. This review is helpful because it rebuts Defendants' contention that Plaintiffs lack standing to bring their ADA and Section 504 claims because their injuries are not redressable because "implementing the relief [requested by Plaintiffs] depends on the actions of third parties, such as the willingness of private individuals to choose to serve as workers delivering CFI Waiver services." Defs.' Mem. at 58. The brief explains how the requested remedies would have "predictable," rather than "speculative," effects. *See Diamond Alternative Energy, LLC v. Environmental Protection Agency*, 606 U.S. ----, 145 S. Ct. 2121, 2134 (2025) (citing *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 383 (2024)).

## CONCLUSION

For the foregoing reasons, *Amici* respectfully request that this Court grant their motion for leave to file the *amicus* brief attached as Exhibit A to their Motion.

Respectfully submitted,

FOX & ROBERTSON, PC

*/s/ Amy F. Robertson*
Amy F. Robertson, CO Bar No. 25890
1550 Wewatta St., Suite 200
Denver, CO 80202
303.951.4164
arob@foxrob.com
*Pro hac vice pending*

JUSTICE IN AGING

*/s/ Liam McGivern*
Liam McGivern, FL Bar No. 98684
9555 SW 175th Terrace, # 665
Palmetto Bay, FL 33157
202.792.3680
lmcgivern@justiceinaging.org
*Pro hac vice pending*

RED SNEAKER LAW, PLLC

*/s/ Kirk Simoneau*
Kirk Simoneau, NH Bar No. 19291
P.O. Box 1216
Amherst, NH 03031
603.336.2028
kirk@redsneakerlaw.com

Counsel for *Amici*

Dated: July 30, 2025

**Certificate of Service**

      I hereby certify that on July 30, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Kirk Simoneau
Kirk Simoneau