**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

EMILY FITZMORRIS, ET AL.,

      Plaintiffs,

      vs.

NEW HAMPSHIRE DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
COMMISSIONER, LORI WEAVER, ET AL.,

      Defendants.

Case No. 21-cv-25-PB

**PLAINTIFFS' STATEMENT OF AGREED TO UNDISPUTED FACTS
AND CLARIFIED FACTS**

**Introduction**

Plaintiffs have updated, corrected, streamlined, and combined their previous filings ECF

228-1 and 228-2 to show:

1) Facts that the parties agree are undisputed; and

2) Facts where Plaintiffs accepted the Defendants' clarification(s). The accepted clarifications are
   shown in blue font.

Plaintiffs provide footnotes showing the relevant citations to the summary judgment record.

Plaintiffs no longer rely on undisputed facts 98, 99, 100, 101 or 103.

**Facts**

1. Medicaid is a program in which the state pays for covered services delivered to enrolled

individuals by qualified providers, subject to state and federal requirements about the payment

rates, program eligibility, and the scope of benefits, among other things. Ex. S-A, Defs.' Suppl.

Resp. to Interrog. No. 1.4 ("Def Suppl. Resp. Interrog.") at 5, Apr. 14, 2025.[1]

2.    The New Hampshire Medicaid program contracts with and/or enrolls and pays third-party providers to deliver services covered by the Medicaid program. Defendants do not employ individuals to directly deliver Medicaid services. Defendants pay third party providers to deliver Medicaid services. *Id.*[2]

3.    The New Hampshire Medicaid program does not directly provide case management services or otherwise deliver services to connect Medicaid beneficiaries to Medicaid providers with the capacity to deliver services. *Id.*[3]

4.    Defendants are public entities under the ADA and Section 504. Ex. S-B, Defs.' Resp. to Pls.' Second Set of Req. for Admis., Admis. 2 and 3 at 4, Aug. 9, 2024.[4]

5.    Lori Weaver, in her official capacity as Commissioner of the New Hampshire Department of Health and Human Services ("DHHS"), is an employee of a "public agency," as that term is defined in N.H. Stat. § 91-A:l-a(V). *Id.* Admis. 2 at 4.[5]

6.    Wendi Aultman, in her role as Bureau Chief of the Bureau of Adult and Aging Services ("BAAS")(which was formerly known as the Bureau of Elderly and Adult Services or "BEAS"), is an employee of a "public agency," as that term is defined in N.H. Stat. § 91-A:1-a(V). *Id.* Admis. 3 at 4.[6]

7.    The CFI Waiver program is governed by a Section 1915(c) waiver application approved by the Centers for Medicare & Medicaid Services ("CMS"), as well as by New Hampshire state law and regulations, including New Hampshire Administrative Rule He-E Sections 801 and 805. Ex. S-C, Decl. of Wendi Aultman ¶ 4-8, Nov. 3, 2022, Doc. 140-1. Accepted

---

[1] The parties agree that this fact is undisputed. Doc. 223-2 at 1; Doc. 228-1 at 2.
[2] The parties agree that this fact is undisputed. Doc. 223-2 at 1; Doc. 228-1 at 2.
[3] The parties agree that this fact is undisputed. Doc. 223-2 at 2; Doc. 228-1 at 2.
[4] The parties agree that this fact is undisputed. Doc. 223-2 at 2; Doc. 228-1 at 2.
[5] The parties agree that this fact is undisputed. Doc. 223-2 at 2; Doc. 228-1 at 2.
[6] The parties agree that this fact is undisputed.  Doc. 223-2 at 2; Doc. 228-1 at 2.

clarification: that the CFI Waiver program is also governed by federal law and regulations and the New Hampshire Administrative Rule He-F, Section 310.[7]

8.      The CFI Waiver program is operated pursuant to the rules and requirements in the CMS approved CFI Waiver application, DHHS regulations, Title XIX of the Social Security Act, and CMS's implementing regulations. Ex. S-A, Def Suppl. Resp. Interrog. at 6. Accepted clarification: that the CFI program is also operated pursuant to applicable federal law and regulations in addition to Title XIX of the Social Security Act and CMS's implementing regulations as well as policy and guidance issued by DHHS.[8]

9.      The purpose of the Choices for Independence ("CFI") Waiver, administered by DHHS, is "to support older people and adults with disabilities to live independently in the community." Ex. S-D, PLTF-0022845, Application for 1915(c) HCBS Waiver: NH.0060.R08.00-Jul 01, 2022 ("Waiver Appl.") at 5. Accepted clarifications: that this is not the only purpose, and the operative Waiver document governing the CFI Waiver program was amended in 2023 and is attached as Exhibit 41.[9]

10.     DHHS voluntarily chooses to operate the CFI Waiver program to provide home- and [ ] community- based services ("HCBS") to individuals with disabilities. Ex. S-A, Def Suppl. Resp. Interrog at 8-9.[10]

11.     The current CFI Waiver expires in 2027. *Id.* at 9.[11]

12.     The CFI Waiver provides coverage of and payment for home- and community-based services for eligible individuals with physical disabilities who otherwise require a level of

---

[7] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font.  Doc. 223-2 at 2; Doc. 228-2 at 2. (Please note that, throughout this document, when Plaintiffs accept the Defendants' clarification they will include only the clarification and will not include the Defendants' citation(s)).
[8] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font.  Doc. 223-2 at 2-3; Doc. 228-2 at 2.
[9] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font.  Doc. 223-2 at 3; Doc. 228-2 at 2.
[10] The parties agree that this fact is undisputed. Doc. 223-2 at 3; Doc. 228-1 at 2.
[11] The parties agree that this fact is undisputed. Doc. 223-2 at 3; Doc. 228-1 at 2.

care provided in a nursing facility. Ex. S-C, Decl. of Wendi Aultman ¶ 3, Nov. 3, 2022, Doc. 140-1.[12]

13.    The CFI Waiver provides supports and services to individuals who are Medicaid eligible and meet nursing facility level of care through a network of community-based provider agencies who are directly enrolled as NH Medicaid Providers. Ex. S-D, Waiver Appl. at 5.[13]

14.    In the 2023 reporting period, there were 4,401 unduplicated participants in the CFI Waiver program. Ex. S-E, CMS 372 Report, NHDHHS2343796 at 1, Nov. 30, 2024. Accepted clarification: that the "reporting period" refers to the 2023 reporting period for the CMS 372 report, which covered July 1, 2022, through June 30, 2023.[14]

15.    The current approved CFI Waiver application is effective from July 1, 2022 through June 30, 2027. Ex. S-C, Decl. of Wendi Aultman ¶ 7, Nov. 3, 2022, Doc. 140-1.[15]

16.    DHHS can and has changed the rules and requirements of the CFI Waiver Program over time subject to CMS' approval, i.e., BAAS representative Kristina Ickes testified that DHHS is in the process of amending He-E 805. Ex. S-F, Kristina Ickes Dep. ("Ickes Dep.") at 113:9-17, Jan. 27, 2025. Accepted clarification: that some changes require CMS approval and some changes do not require CMS approval.[16]

17.    There is no waiting list to enroll in the CFI Waiver program. During Director Aultman's tenure with DHHS, the agency has worked to secure sufficient appropriations from the legislature to prevent the need for a waiting list. Ex. S-C, Decl. of Wendi Aultman ¶ 16, Nov. 3, 2022, Doc. 140-1.[17]

---

[12] The parties agree that this fact is undisputed. Doc. 223-2 at 3; Doc. 228-1 at 3.
[13] The parties agree that this fact is undisputed. Doc. 223-2 at 3; Doc. 228-1 at 3.
[14] The Defendants' clarification, to which the Plaintiffs agree, is shown in blue font. Doc. 223-2 at 3.
[15] The parties agree that this fact is undisputed. Doc. 223-2 at 3; Doc. 228-1 at 3.
[16] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font. Doc. 223-2 at 4; Doc. 228-2 at 2.
[17] The parties agree that this fact is undisputed. Doc. 223-2 at 4; Doc. 228-1 at 3.

18.    The state has defined, within the CFI Waiver, a range of community-based services which support waiver participants. Ex. S-D, Waiver Appl. at 5.[18]

19.    Individuals and/or their legal representative work with case managers and the State to identify, through a person-centered planning process, those specific services and supports offered under this waiver that are needed to avoid placement and allow choice of setting. *Id.*[19]

20.    According to the waiver, DHHS will make available to CFI participants a "range of assistance to enable waiver participants to accomplish tasks that they would normally do for themselves if they did not have a disability." *Id.* at 63. Accepted clarification: that DHHS provides such assistance if the participant is authorized to receive CFI Waiver personal care services.[20]

21.    The CFI Waiver program does not include any aggregate or service-specific caps on the amount of services that DHHS may authorize a participant to receive. Ex. S-C, Decl. of Wendi Aultman, ¶ 24, Nov. 3, 2022, Doc. 140-1.[21]

22.    DHHS pays private service providers to deliver all CFI Waiver services. Ex. S-A, Def Suppl. Resp. Interrog. at 6.[22]

23.    The covered services available under the waiver include: Adult Day Services, Home Health Aide Services, Homemaker, Personal Care, Respite, Supported Employment, Financial Management Services, Participant Directed and Managed Services, Adult Family Care, Community Transition Services, Environmental and Vehicle Modification Services, Home Delivered Meals, In-Home Services, Non-Medical Transportation, Personal Emergency Response Services, Residential Care Facility Services, Skilled Nursing, Specialized Equipment Services, and

---

[18] The parties agree that this fact is undisputed. Doc. 223-2 at 4.
[19] The parties agree that this fact is undisputed. Doc. 223-2 at 4.
[20] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font. Doc. 223-2 at 4; Doc. 228-1 at 2.
[21] The parties agree that this fact is undisputed. Doc. 223-2 at 4; Doc. 228-1 at 3.
[22] The parties agree that this fact is undisputed. Doc. 223-2 at 4; Doc. 228-1 at 3.

Supported Housing. Ex. S-D, Waiver Appl. at 5.[23]

24.    The services available under the CFI Waiver include hands-on assistance (actually performing a task for the person) or cueing to prompt the participant to perform a task. *Id.* at 63.[24]

25.    Also available under the CFI Waiver are adaptations "which enable the individual to function with greater independence in the home and community, and without which, the individual would require institutionalization. Such adaptations may include the installation of ramps and grab-bars, widening of doorways, modification of bathroom facilities, or installation of specialized electric and plumbing systems, which are necessary to accommodate the medical equipment and supplies, and services necessary for the participant's health and safety, such as pest eradication, and related cleaning." *Id.* at 84.[25]

26.    The CFI Waiver also can provide "[n]on-medical care, supervision and socialization provided to isolated individuals to prevent institutionalization." According to the waiver application, these services include: "Meal preparation, light housekeeping, laundry and shopping which are essential to the health and welfare of the participant." *Id.* at 89.[26]

27.    The waiver includes provision for "[s]mart technology including electronic devices that enable participants at risk of institutionalization to summon help in an emergency. … This service assists CFI participants who live alone, live only with someone in poor or failing health, or who are alone at home for 8 hours or more per day and who are: ambulatory and at risk of falls as assessed by a physician, registered nurse or occupational or physical therapist; or identified as at risk of having a medical emergency as identified in the comprehensive care plan; and would require ongoing supervision if the device were not provided. *Id.* at 96.[27]

---

[23] The parties agree that this fact is undisputed. Doc. 223-2 at 4.
[24] The parties agree that this fact is undisputed. Doc. 223-2 at 5.
[25] The parties agree that this fact is undisputed. Doc. 223-2 at 5.
[26] The parties agree that this fact is undisputed. Doc. 223-2 at 5.
[27] The parties agree that this fact is undisputed. Doc. 223-2 at 4.

28.    A participant, guardian, case manager, or service provider can file a "waiver request" form with DHHS to request a modification or exception to CFI Waiver policies and procedures. Ex. S-C, Decl. of Wendi Aultman ¶ 42, Nov. 3, 2022, Doc. 140-1. Accepted clarification: that only certain policies and procedures can be waived.[28]

29.    Wendi Aultman, as Bureau Chief, (or her designee) must determine whether to approve a waiver request within 30 days of the date the request is received. Ex. S-C, Decl. of Wendi Aultman ¶ 43, Nov. 3, 2022, Doc. 140-1. Accepted clarification: that DHHS policy provides that Ms. Aultman or her designee should approve a waiver request within 30 days.[29]

30.    Participants can choose between three service delivery models that offer different levels of control over their services and service providers: "agency-directed" services, "consumer-directed" services, and "participant directed and managed" services. *Id.* ¶ 28-33. Accepted clarification: that some service delivery models are only available for certain CFI Waiver services.[30]

31.    Under the "agency-directed services" model, a provider agency staffs the participant's service hours with available staff and the agency is responsible for training, supervising, and paying the service providers. *Id.* at 29.[31]

32.    If a participant chooses the "consumer-directed" services model for personal care services, the participant identifies and employs their personal care service provider and oversees the services that are provided to that participant. *Id.* ¶ 30.[32]

33.    If a participant chooses the "consumer-directed" services model, DHHS sets a

---

[28] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font. Doc. 223-2 at 6; Doc. 228-2 at 2.

[29] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font. Doc. 223-2 at 6; Doc. 228-2 at 2.

[30] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font. Doc. 223-2 at 6; Doc. 228-2 at 2.

[31] The parties agree that this fact is undisputed. Doc. 223-2 at 6; Doc. 228-1 at 3-4.

[32] The parties agree that this fact is undisputed. Doc. 223-2 at 6; Doc. 228-1 at 4.

specific rate for the services. *Id.*[33]

34.     In a "participant directed and managed" services model, the participant identifies needed services, selects and oversees providers, and decides how to manage and spend funds that the CFI Waiver program provides. *Id.* ¶ 31.[34]

35.     An individual is eligible for enrollment in the CFI Waiver program when the individual is clinically eligible to receive services in a nursing facility, meaning the individual requires 24-hour care for at least one of the following reasons: a) medical monitoring and nursing care requiring the skills of a licensed medical professional to provide safe and effective services; b) restorative nursing or rehabilitative care with patient-specific goals; c) medication administration by oral, topical, intravenous, intramuscular, or subcutaneous injection, or intravenous feeding for treatment of recent or unstable conditions requiring medical or nursing intervention; or d) assistance with two or more activities of daily living involving eating, toileting, transferring, bathing, dressing, and continence. *Id.* ¶ 10. Accepted clarification: that an individual must also meet the financial eligibility requirements to be eligible for enrollment in the CFI Waiver program.[35]

36.     The individual must also be 18 or older, satisfy certain financial eligibility requirements, require the provision of at least one CFI-covered service monthly, and choose to receive CFI Waiver services rather than receive care in an institutional setting. *Id.* ¶ 11.[36]

37.     Adults participating in the CFI Program must be 18 or older and meet certain financial and clinical eligibility requirements. Ex. S-D, Waiver Appl. at 5.[37]

38.     To be determined clinically eligible to participate in the CFI program, applicants

---

[33] The parties agree that this fact is undisputed. Doc. 223-2 at 6; Doc. 228-1 at 4.
[34] The parties agree that this fact is undisputed. Doc. 223-2 at 6; Doc. 228-1 at 4.
[35] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font. Doc. 223-2 at 6-7; Doc. 228-2 at 2.
[36] The parties agree that this fact is undisputed. Doc. 223-2 at 7; Doc. 228-1 at 4.
[37] The parties agree that this fact is undisputed. Doc. 223-2 at 7.

will need to undergo a medical assessment. BAAS will determine if applicants meet the clinical requirements for nursing facility level of care. *Id.*[38]

39.    The clinical assessment used to establish eligibility for the CFI Waiver focuses on the applicant's ability to perform activities of daily living such as eating, bathing, dressing and the criteria found in RSA 151 E:3 related to medical monitoring; restorative nursing need or medication administration. *Id.*[39]

40.    Individuals apply for the CFI Waiver program through New Hampshire's "No Wrong Door System of Access for Long Term Supports and Services," also known as "NHCarePath." Ex. S-C., Decl. of Wendi Aultman ¶ 9, Nov. 3, 2022, Doc. 140-1.[40]

41.    DHHS determines whether an individual who applies for the CFI Waiver is eligible for enrollment by hiring a skilled medical professional to conduct a "medical eligibility assessment." *Id.* ¶ 12. Accepted clarification: that DHHS contracts with, rather than hires, skilled medical professionals to conduct a medical eligibility assessment.[41]

43.    If an applicant satisfies the eligibility criteria, DHHS sends an approval notice identifying the name and contact information of the case management agency to which the applicant is assigned. *Id.* ¶ 13.[42]

44.    "The portal called New Hampshire EASY is a web-based portal that allows for individuals, participants, and their representatives to manage their eligibility and information within the eligibility system." Ex. S-G, Wendi Aultman 30(b)(6) Dep., at 86:4-8, Dec. 4, 2024.[43]

46.    The goal of the CFI Waiver is to give participants the choice to remain in the

---

[38] The parties agree that this fact is undisputed. Doc. 223-2 at 7.
[39] The parties agree that this fact is undisputed. Doc. 223-2 at 7.
[40] The parties agree that this fact is undisputed. Doc. 223-2 at 7; Doc. 228-1 at 4.
[41] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font.  Doc. 223-2 at 8; Doc. 228-2 at 3.
[42] The parties agree that this fact is undisputed. Doc. 223-2 at 8; Doc. 228-1 at 4.
[43] The parties agree that this fact is undisputed. Doc. 223-2 at 8; Doc. 228-1 at 4.

community, rather than being forced to seek their needed care in a nursing facility. Ex. S-H, Dr. David Polakoff Dep. ("Polakoff Dep.") at 185:19-186:10, Mar. 24, 2025.

Accepted clarification: that this is not the only goal of the CFI Waiver Program.[44]

57.    Plaintiffs will accept the Defendant's response beginning with the words "DHHS is responsible": DHHS is responsible for the "day-to-day" operation of the CFI Waiver." Undisputed that DHHS has delegated to and reimburses case management agencies for, *inter alia*, working with CFI Waiver participants to arrange for the delivery of authorized CFI Waiver participants to arrange for the delivery of authorized CFI Waiver services based on the participants' goals, preferences, and needs.[45]

58.    Once an applicant is found eligible for CFI services and has chosen to participate in the program, participants will be assigned a CFI Case Manager, either based on preference or the availability of a CFI Case Management Agency in the participant's geographic area. Ex. S-D, *Id.* at 5. Accepted clarification: that DHHS uses a standard process to assign a participant to a case management agency in the event that the participant does not express a preference for a particular case management agency.[46]

59.    According to the waiver application, DHHS has agreed that "[a] representative sample of participant records are reviewed by CFI Case Management Agencies quarterly to evaluate the delivery of services identified in the comprehensive care plan to ensure that participants' needs are being met in the community, including the type, scope, amount, duration, and frequency of services." *Id.* at 21.[47]

---

[44] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font.  Doc. 223-2 at 9; Doc. 228-2 at 3.
[45] Plaintiffs accept Defendants' response beginning with the words "DHHS is responsible…" as Fact 57. Doc. 223-2 at 11.
[46] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font.  Doc. 223-2 at 11; Doc. 228-2 at 3.
[47] The parties agree that this fact is undisputed. Doc. 223-2 at 11-12.

60.    DHHS assigns enrolled participants to one of eight private case management agencies statewide. Ex. S-C, Decl. of Wendi Aultman ¶ 19, Nov. 3, 2022, Doc. 140-1 ¶ 19.[48]

61.    Once a CFI Case Manager has been assigned, participants will receive a letter from DHHS and a representative of the CFI Case Management Agency will reach out to the participant to begin the development of person-centered plan. The CFI Case Manager will also assist with arranging supports and services with enrolled CFI providers, based on the participant's goals, preferences and support needs. Ex. S-D, Waiver Appl. at 5.[49]

62.    Once the individual has selected or has been assigned a CFI Case Management Agency, the Agency assigns a CFI Case Manager. *Id.* at 134.[50]

63.    The case management agencies assign participants to case managers, who work with the participant to develop a person-centered plan. Ex. S-C, Decl. of Wendi Aultman ¶ 20, November 3, 2022, Doc. 140-1.[51]

64.    According to the waiver application, the CFI Case Manager conducts a comprehensive assessment for each CFI participant pursuant He-E 805. Ex. S-D, Waiver Appl., at 134.[52]

65.    The comprehensive assessment informs the Comprehensive Care Plan and includes objectives and goals with timelines, services funded by the CFI Waiver, Medicaid State Plan, or other funding sources, non-paid services, unfilled needs and gaps, existing risks and mitigation plan for those risks, and contingency planning. *Id.* at p. 134.[53]

66.    The care plan must meet requirements set out in Rule He-E 805.05(c), including that it be person-centered, contain measurable goals with timelines, identify specific paid and non-

---

[48] The parties agree that this fact is undisputed. Doc. 223-2 at 12; Doc. 228-1 at 5.
[49] The parties agree that this fact is undisputed. Doc. 223-2 at 12.
[50] The parties agree that this fact is undisputed. Doc. 223-2 at 12.
[51] The parties agree that this fact is undisputed. Doc. 223-2 at 12; Doc. 228-1 at 5.
[52] The parties agree that this fact is undisputed. Doc. 223-2 at 12.
[53] The parties agree that this fact is undisputed. Doc. 223-2 at 12.

paid services the individual needs with specific providers, and include an individualized contingency plan. Ex. S-C, Decl. of Wendi Aultman ¶ 21, November 3, 2022, Doc. 140-1.[54]

67.    Each case management agency develops and uses its own care plan template. *Id.* Accepted clarification: that each care plan must include specific components as identified in the Department's rules.[55]

68.    The case management agency must update a participant's care plan as needed and at least annually. *[Id.]* ¶ 22.[56]

69.    The case manager develops and submits a service authorization request to DHHS based on the participant's care plan. *Id.* ¶ 23.[57]

70.    The service authorization request "identifies the type and amount of all CFI Waiver program services the individual needs." *Id.* ¶ 23.[58]

71.    DHHS reviews service authorization requests and must authorize services that meet the participant's needs as identified in the medical eligibility assessment and other reviews conducted by DHHS-employed program specialists who are registered nurses. *[Id.]* at ¶ 24. Accepted clarification: that DHHS policy (not federal law) provides that DHHS will authorize services that meet the participant's needs as identified in the medical eligibility assessment.[59]

72.    Services are authorized according to participants' individual diagnostic and functional needs. *Id.* ¶ 18.[60]

73.    DHHS has the final authority for approval of the CFI Waiver services within the

---

[54] The parties agree that this fact is undisputed. Doc. 223-2 at 12; Doc. 228-1 at 5.
[55] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font. Doc. 223-2 at 13; Doc. 228-2 at 3.
[56] The parties agree that this fact is undisputed. Doc. 223-2 at 13; Doc. 228-1 at 5.
[57] The parties agree that this fact is undisputed. Doc. 223-2 at 13; Doc. 228-1 at 5.
[58] The parties agree that this fact is undisputed. Doc. 223-2 at 13; Doc. 228-1 at 5.
[59] Although Plaintiffs had previously identified this fact as Disputed – see doc.  Doc. 223-2 at 3 – they will accept the Defendants' clarification for the purpose of summary judgment. That clarification appears at Doc. 223-2 at 13.
[60] The parties agree that this fact is undisputed. Doc. 223-2 at 13; Doc. 228-1 at 5.

comprehensive care plan. Ex. S-D, Waiver Appl. at 136.[61]

74.    The CFI Waiver program does not have any cap on the amount of personal care services, homemaker services, home health aide, or skilled nursing services that DHHS may authorize for a participant. Ex. S-C, Decl. of Wendi Aultman, ¶ 24, Doc. 140-1.[62]

75.    Once the services are authorized, DHHS submits the approved service authorizations to the providers identified in the participant's care plan, which allows the providers to bill DHHS for the services provided. *Id.* ¶¶ 25-26.[63]

76.    Not all service authorizations are used or paid for, and not all claims that are submitted for reimbursement for the provision of authorized services are paid. *Id.* ¶ 26.[64]

77.    In addition, in accordance with He-E 805, as part of the planning process, case managers are required to develop, with the participant and others identified by the participant an individualized contingency plan. Ex. S-D, Waiver Appl. at 135.[65]

78.    This contingency plan is person centered, and addresses unexpected situations that could jeopardize the participant's health or welfare. *Id.* at 135.[66]

79.    The contingency plan goes beyond the identification of other settings as an alternative to community-based care, the contingency plan identifies alternate staffing resources in the event that normally scheduled care providers are unavailable ... Important information about the participant's desires, preferences, choice and direction are also recorded within this plan, to assist alternate staff in providing services for the participant. *Id.* at 135.[67]

80.    Under the waiver, CFI Case Managers are required to operate and maintain a 24-

---

[61] The parties agree that this fact is undisputed. Doc. 223-2 at 13.
[62] The parties agree that this fact is undisputed. Doc. 223-2 at 13; Doc. 228-1 at 5.
[63] The parties agree that this fact is undisputed. Doc. 223-2 at 13; Doc. 228-1 at 5.
[64] The parties agree that this fact is undisputed. Doc. 223-2 at 14; Doc. 228-1 at 6.
[65] The parties agree that this fact is undisputed. Doc. 223-2 at 14.
[66] The parties agree that this fact is undisputed. Doc. 223-2 at 14.
[67] The parties agree that this fact is undisputed. Doc. 223-2 at 14.

hour on call back up system. *Id.* at 135.[68]

81.    DHHS has provided guidance to case management agencies that calling 911 can be part of a participant's contingency plan. Ex. S-G, Aultman 30(b)(6) Dep. at 214:7-217:19.[69]

82.    Contingency planning is reviewed as part of the annual quality review of all of the case management agencies. *Id.* at 220:1-10.[70]

83.    According to DHHS, the "case management agency is responsible for working with the participant to ensure that the participant is authorized to receive the services they need, identifying and connecting the participant to service providers, and monitoring the delivery of services." Ex. S-C, Decl. of Wendi Aultman, ¶ 27, Nov. 3, 2022, Doc. 140-1 ¶ 27.[71]

84.    According to DHHS, if and when the "participant's needs change the case management agency must update the participant's person-centered plan and request the necessary service authorizations" from DHHS. *Id.* ¶ 27.[72]

89.    DHHS instructs case managers to use the "provider not available" indicator" in the service authorization system "to allow DHHS to receive notification of and track potential service gaps." *Id.* ¶ 38.[73]

90.    There can be a lapse in time between when a participant does not receive an authorized service and when it shows up in a report. Ex. S-G, Aultman 30(b)(6) Dep. at 61:12-62:21.[74]

91.    The CFI providers have up to a year to claim on a service. Ex. S-I, Uma Bhusari Dep. ("Bhusari Dep.") at 166:5-166:8, Jan. 22, 2025.[75]

---

[68] The parties agree that this fact is undisputed. Doc. 223-2 at 14.
[69] The parties agree that this fact is undisputed. Doc. 223-2 at 14; Doc. 228-1 at 6.
[70] The parties agree that this fact is undisputed. Doc. 223-2 at 14; Doc. 228-1 at 6.
[71] The parties agree that this fact is undisputed. Doc. 223-2 at 14; Doc. 228-1 at 6.
[72] The parties agree that this fact is undisputed. Doc. 223-2 at 15; Doc. 228-1 at 6.
[73] The parties agree that this fact is undisputed. Doc. 223-2 at 15; Doc. 228-1 at 6.
[74] The parties agree that this fact is undisputed. Doc. 223-2 at 16; Doc. 228-1 at 6.
[75] The parties agree that this fact is undisputed. Doc. 223-2 at 16; Doc. 228-1 at 6.

93.     When a participant or case management agency alerts DHHS to a "potential service gap or other issues," DHHS can provide what it calls "technical assistance." Ex. S-C, Decl. of Wendi Aultman ¶ 39, Nov. 3, 2022, Doc. 140-1.[76]

94.     This technical assistance may include "DHHS staff outreach to provider agencies to find a worker to service the participant either in the short-term or the long-term." *Id.*[77]

95.     If an issue cannot be resolved through technical assistance, DHHS has a "Case Review and Consultation Committee." *Id.* ¶ 40.[78]

96.     The Case Review and Consultation Committee has the authority to contact provider agencies to identify available providers and to negotiate "special reimbursement rates to incentivize providers to provide services to the CFI Waiver program participant." *Id.* ¶ 40.[79]

97.     When issues implicate other state agencies, DHHS's "Interagency Integration Team," consisting of representatives from multiple state agencies, may consult with CFI case management agencies and participants to identify multi-agency solutions. *Id.* ¶ 41.[80]

105.    Individuals are more likely to develop disabilities that may qualify them for the CFI Waiver program as they age. Ex. S-A, Defs.' Suppl. Resp. Interrog. at 12.[81]

106.    On information and belief, the number and percentage of New Hampshire residents age 65 or older will substantially increase by 2030, and continue to increase through 2045. *Id.*[82]

107.    On information and belief, the number and percentage of New Hampshire residents age 75 or older will substantially increase by 2030 and continue to increase through 2045. *Id.*[83]

---

[76] The parties agree that this fact is undisputed. Doc. 223-2 at 16; Doc. 228-1 at 7.
[77] The parties agree that this fact is undisputed. Doc. 223-2 at 16; Doc. 228-1 at 7.
[78] The parties agree that this fact is undisputed. Doc. 223-2 at 16; Doc. 228-1 at 7.
[79] The parties agree that this fact is undisputed. Doc. 223-2 at 16; Doc. 228-1 at 7.
[80] The parties agree that this fact is undisputed. Doc. 223-2 at 16; Doc. 228-1 at 7.
[81] The parties agree that this fact is undisputed. Doc. 223-2 at 18; Doc. 228-1 at 7.
[82] The parties agree that this fact is undisputed. Doc. 223-2 at 18; Doc. 228-1 at 7.
[83] The parties agree that this fact is undisputed. Doc. 223-2 at 18; Doc. 228-1 at 7.

108.    On information and belief, the number and percentage of New Hampshire residents eligible for the CFI Waiver program will increase substantially by 2030, if the eligibility requirements remain the same as they are today. *Id.*[84]

110.    DHHS received a $5 million federal grant from the United States Department of Health and Human Services to expand access to home- and community-based services through Medicaid's "Money Follows the Person" program. Ex. S-C, Decl. of Wendi Aultman ¶ 48, Nov, 3, 2022, Doc. 140-1.[85]

111.    In their 2024-2025 Biennium Budget Request, DHHS acknowledged that New Hampshire is demographically older than most states and that more than 200,000 adults were estimated to be between the age of 55 and 64 years in 2019. DHHS wrote that, this population is aging into the use of Nursing Facility and Choices for Independence services "necessitating an increase in the budgeted amount to accommodate. If not included in the budget, the Department will lack sufficient appropriations to provide projected service use." Ex. S-L, State of New Hampshire 2024-2025 Biennium - Form D - Activity Level - Prioritized Special and Problematic Needs, PLTF-0042281 ("2024-2025" Biennium) at 1.[86]

112.    With respect to requesting legislative funding for the CFI program, DHHS's "preparation for the requests -- requests that we've made for the budget includes the review of the trending of services delivered and the projected -- the projections on those claiming trends." Ex. S-G, Aultman 30(b)(6) Dep. at 251:2-21. Accepted clarification: that projected service delivery trends are not the only factor that DHHS considers in developing budget requests.[87]

113.    Gaps in authorized services versus delivered services are "not factored into the

---

[84] The parties agree that this fact is undisputed. Doc. 223-2 at 18; Doc. 228-1 at 7.
[85] The parties agree that this fact is undisputed. Doc. 223-2 at 19; Doc. 228-1 at 8.
[86] The parties agree that this fact is undisputed. Doc. 223-2 at 19; Doc. 228-1 at 8.
[87] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font. Doc. 223-2 at 19; Doc. 228-2 at 3.

development of how we [DHHS] request the funding." *Id.* at 252:4-11.[88]

114.    According to DHHS BAAS Bureau Chief Wendi Aultman, " ...  [I]n order to ensure 100 percent of [CFI] services are provided 100 percent of the time, it would take significant program changes in order to ensure that, including staff at the department and mechanisms in place to ensure backup coverage whenever service provision was not provided." *Id.* at 270:21-271:6.[89]

115.    In July 2022, a report of the New Hampshire Fiscal Policy Institute determined that "[i]n State Fiscal Year 2021, State Budget funding appropriated for each actual Choices for Independence enrollee totaled $18,997, while for nursing facilities, funding from all sources per actual enrollee was $98,111." Ex. S-M, Fiscal Policy Institute - Long Term Services and Supports in New Hampshire at 2 (July 2022), PLTF-0023081,  Doc. 134-22.[90]

116.    According to DHHS Medicaid Director Henry Lipman "I would suggest -  sort of suggest CFI is close to three times less than institutional care ...  "  Ex. S-J, Lipman Dep. at 100:18-20.[91]

117.    Defendants do not dispute that "the nationwide direct care workforce shortage creates significant challenges for CFI Waiver service providers in New Hampshire, which has an aging population and a particularly tight labor market." Defs.' Mem. of Law in Opp'n to Pls.' Mot. for Class Certification, May 30, 2023, Doc. 140 at 17.[92]

118.    There is a statewide shortage of personal care providers and home health aides to deliver CFI Waiver services. Ex. S-N, Wendi Aultman Dep. ("Aultman Dep. I") at 39:20 - 40:9, Dec. 8, 2022, Doc. 134-10. Accepted clarification: that the shortage is nationwide.[93]

---

[88] The parties agree that this fact is undisputed. Doc. 223-2 at 19; Doc. 228-1 at 8.
[89] The parties agree that this fact is undisputed. Doc. 223-2 at 20; Doc. 228-1 at 8.
[90] The parties agree that this fact is undisputed. Doc. 223-2 at 20; Doc. 228-1 at 8.
[91] The parties agree that this fact is undisputed. Doc. 223-2 at 20; Doc. 228-1 at 9.
[92] The parties agree that this fact is undisputed. Doc. 223-2 at 20; Doc. 228-1 at 9.
[93] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font.  Doc. 223-2 at 20; Doc. 228-2 at 3.

119.    CCRC reports have "refer[ed] to overall staff shortages of CFI providers." *Id.* at 5.[94]

122.    In July 2022, the New Hampshire Fiscal Policy Institute found that home and community-based services "can currently be difficult to access, primarily because providers cannot find enough workers to provide all the services needed." Ex. S-M at 3.[95]

123.    DHHS's Bureau of Elderly and Adult Services (now BAAS) wrote in a "Money Follows the Person Demonstration Expansion Proposal" dated May 25, 2022 that "[t]oday, demand for workers across all industries is at a record high, while labor force participation is decreasing. The number of posted job openings nearly doubled from 10,000 a month in January 2019 to 19,000 in April 2022. During this period, job postings in home health care, skilled nursing facilities, and continuing care and retirement facilities have increased from 170 in January 2019 to 440 in April 2022. Industries serving older adults have slightly more workers at or near retirement age than other industries. Workers ages 55-64 comprise 20% of all workers yet account for 22% of workers in continuing care, home health, and skilled NFs [nursing facilities]. Ex. S-K, NHDHHS1023329 at 9.[96] Accepted clarification: that the quoted language omits a footnote.

124.    For the reporting year of 2023, DHHS submitted a CMS 372 report to the Centers for Medicare and Medicaid Services that noted "the low unemployment rate in New NH contributing to limited workforce availability. Ex. S-E, CMS 372 Report at 2, Nov. 30, 2024. Accepted clarification: that DHHS reported that "provider hesitation during the same time meant that some providers experienced staffing challenges due to fear of exposure" and "childcare demands" also contributed "to limited workforce availability." [97]

---

[94] The parties agree that this fact is undisputed. Doc. 223-2 at 20; Doc. 228-1 at 9.
[95] The parties agree that this fact is undisputed. Doc. 223-2 at 21; Doc. 228-1 at 9.
[96] The parties agree that this fact is undisputed except for the clarification shown in blue font. Doc. 223-2 at 21; Doc. 228-1 at 9.
[97] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font. Doc. 223-2 at 21-22; Doc. 228-2 at 3.

126.    According to the DHHS Medicaid Director, the workforce is stressed and there is a shortage in the CFI Waiver program. Ex. S-J, Lipman Dep. 124:20-125:9.[98]

129.    DHHS has acknowledged workforce shortages in budget requests in 2020-2021, citing "[d]ue to workforce challenges as well as client change, not all of those authorized [CFI Waiver services] were accessed." Ex. S-P, State of New Hampshire 2020-2021 Biennium Budget Request ("2020-2021 Biennium") at 4, Doc. 134-25 at 4.[99]

134.    CFI provider agencies are not required to report worker shortages to DHHS. Ex. S-G, Aultman 30(b)(6) Dep. at 246:8-9.[100]

137.    DHHS does not have the authority to make a provider agency admit an individual. *Id.* at 132:1-7.[101]

142.    DHHS Associate Commissioner Christine Santaniello is not sure whether or not DHHS has any capacity to do any monitoring of the availability of direct service workers for CFI participants. *Id*. [Ex. S-R] at 96:7-17.[102]

143.    DHHS Medicaid Director Lipman was called to intervene in January 2025 when a CFI participant did not have a ride to medical appointment the following day. Ex. S-J, Lipman Dep. at 65:13-66:12.[103]

144.    According to DHHS Associate Commissioner Christine Santaniello, the Department's Medicaid reimbursement rates are one factor having an affect on the availability of direct service providers to serve CFI participants in the community. Ex. S-R., Santaniello Dep., at 59:5-22.[104]

---

[98] The parties agree that this fact is undisputed. Doc. 223-2 at 22; Doc. 228-1 at 10.
[99] The parties agree that this fact is undisputed. Doc. 223-2 at 22; Doc. 228-1 at 10.
[100] The parties agree that this fact is undisputed. Doc. 223-2 at 23; Doc. 228-1 at 10.
[101] The parties agree that this fact is undisputed. Doc. 223-2 at 24; Doc. 228-1 at 10.
[102] The parties agree that this fact is undisputed. Doc. 223-2 at 24; Doc. 228-1 at 10.
[103] The parties agree that this fact is undisputed. Doc. 223-2 at 24; Doc. 228-1 at 10.
[104] The parties agree that this fact is undisputed. Doc. 223-2 at 25; Doc. 228-1 at 10.

145. DHHS's Bureau of Elderly and Adult Services (now BAAS) wrote in a "Money Follows the Person Demonstration Expansion Proposal" dated May 25, 2022 that the "direct care workforce providing HCBS [home and community-based] and NF [nursing facility] care to older adults and people with disabilities was already experiencing challenges nationwide pre-pandemic. In 2019, the starting wage for direct support professionals was $12/hour, yet entry-level food service and retail jobs were $15/hour. Ex. S-K, NHDHHS1023329, Money Follows the Person Demonstration Expansion Proposal ("MFP Proposal"), at 8 (NHDHHS1023336).[105]

153. DHHS obtained reimbursement rate increases for providers of CFI Waiver program services in state fiscal years 2020 and 2021. Ex. S-C, Decl. of Wendi Aultman, November 3, 2022, Doc. 140-1, ¶ 46.[106]

154. On December 13, 2022, Wendi Aultman provided DHHS Associate Commissioner Christine Santaniello a summary of the "High Level Issues and challenges related to CFI" including "CFI providers communicating that the CFI rates are too low to continue providing services. OAA [Old Age Assistance] services are reimbursed at a higher level. Capping the number of CFI clients a provider is willing to take on due to rates." Ex. S-S, NHDHHS739551, Email from Wendi Aultman, Bureau Chief, DHHS to Christine Santaniello, Assoc. Comm'r, DHHS, and Melissa Hardy, Director of the DHHS Division of Long Term Supports and Services (Dec. 13, 2022); Ex. S-R, Santaniello Dep. at 135:20-139:8.[107]

158. DHHS Associate Commissioner Christine Santaniello does not know whether or not the 2023 or 2024 CFI reimbursement rate increases eliminated workforce shortages in the CFI program "across the board" but "would have to look at the numbers to see utilization." *Id.* at 84:13-

---

[105] The parties agree that this fact is undisputed. Doc. 223-2 at 25; Doc. 228-1 at 11.
[106] The parties agree that this fact is undisputed. Doc. 223-2 at 26.
[107] The parties agree that this fact is undisputed. Doc. 223-2 at 27.

20.[108]

159.    For the reporting year of 2023, DHHS submitted a CMS 372 Report to the Centers for Medicare and Medicaid Services noting that "[r]ates of reimbursement were also cited as challenges, but NH responded with ARPA [American Rescue Plan Act] funding and enabled specialized rates within the waiver during this reporting period, to help ameliorate the staffing issues." Ex. S-E, NHDHHS2343796 at p.2, Nov. 30, 2024.[109]

160.    Prior to November 2023, DHHS did not have any formal guidance on specialized rates. Ex. S-G, Aultman 30(b)(6) Dep. at 136:16-138:22.[110]

161.    DHHS may authorize the payment of a specialized rate for individual CFI Waiver providers in specific circumstances pursuant to BAAS's "CFI Specialized Rate Request" policy in the Provider Notice Manual. Ex. S-B, Defs' Responses to Pls' Second Set of Requests for Admission, August 9, 2024, Admission 25 at 10.[111]

164.    Currently, DHHS would approve a specialized rate request when a provider will only provide services at a higher rate, but the case management agency must first provide documentation that they have exhausted efforts to find a provider at the current rates. Ex. S-G, Aultman 30(b)(6) Dep. at 141:9-142:1.[112]

165.    DHHS has no cap or limit on special rates that it can approve. *Id* at 149:2-5.[113]

166.    A CFI provider, a CFI case management agency or a CFI participant can request a special rate. *Id.* at 149:9-14.[114]

168.    According to DHHS BAAS Administrator IV Kristina Ickes, a CFI case

---

[108] The parties agree that this fact is undisputed. Doc. 223-2 at 29; Doc. 228-1 at 11.
[109] The parties agree that this fact is undisputed. Doc. 223-2 at 29; Doc. 228-1 at 11.
[110] The parties agree that this fact is undisputed. Doc. 223-2 at 29; Doc. 228-1 at 11.
[111] The parties agree that this fact is undisputed. Doc. 223-2 at 29; Doc. 228-1 at 11.
[112] The parties agree that this fact is undisputed. Doc. 223-2 at 30; Doc. 228-1 at 12.
[113] The parties agree that this fact is undisputed. Doc. 223-2 at 30; Doc. 228-1 at 12.
[114] The parties agree that this fact is undisputed. Doc. 223-2 at 30; Doc. 228-1 at 12.

management agency requesting a specialized rate for a CFI provider "will indicate to us that they have exhausted the network, and they may provide us proof of all of the agencies that they spoke to and what the responses are." Ex. S-F, Ickes Dep. at 102:6 -104:20.[115]

171.    DHHS does not typically indefinitely approve specialized rates. Instead, DHHS enters a time limit when it approves a specialized rate. Ex. S-G, Aultman 30(b)(6) Dep. at 156:14-19.[116]

172.    BAAS's Information Technology Manager has never seen data concerning CFI waiver service rates for CFI service providers outside of rate studies. Ex. S-I, Bhusari Dep. at 193:2-10.[117]

173.    In June 2024, NHDHHS completed a rate study ("2024 Rate Study") of the CFI Waiver program. Ex. S-V, NHDHHS1959854.[118]

174.    According to the DHHS Medicaid Director, in other DHHS rate study work he has examined Medicare rates and Medicaid rates in other New England states as well as Bureau of Labor Statistics reporting data which would include Medicaid and private pay. Ex. S-J, Lipman Dep. at 131:5 -132:4.[119]

176.    As part of the June 2024 Rate Study, the DHHS Rate Setting Unit "sent a voluntary survey requesting the data utilized in the baseline methodology such as Direct Support wages, benefit expense, supervisor wage, hours and benefit expense, mileage, and costs for services such as food costs for Home Delivered meals." Ex. S-V, NHDHHS1959854 at 3 (NHDHHS 1959858).[120]

177.    "The responses to the voluntary survey from the providers were low for many of the services. Some of the data the Department's Rate Study Unit received back was incomplete.

---

[115] The parties agree that this fact is undisputed. Doc. 223-2 at 30; Doc. 228-1 at 12.
[116] The parties agree that this fact is undisputed. Doc. 223-2 at 31; Doc. 228-1 at 12.
[117] The parties agree that this fact is undisputed. Doc. 223-2 at 31; Doc. 228-1 at 12.
[118] The parties agree that this fact is undisputed. Doc. 223-2 at 31; Doc. 228-1 at 12.
[119] The parties agree that this fact is undisputed. Doc. 223-2 at 31; Doc. 228-1 at 12.
[120] The parties agree that this fact is undisputed. Doc. 223-2 at 32; Doc. 228-1 at 13.

The survey was sent out to 214 providers with 26 responses received." *Id.*[121]

179.    In the State of New Hampshire 2026-2027 Biennium Budget Request, the Defendants sought CFI rate increases based on the legislatively mandated rate study conducted in CFY 2024.  See Form D, Activity level - Prioritized Special and Problematic Needs, State of New Hampshire 2026-2027 Biennium.  In this Budget request, the Defendants stated that "[i]ncreases are needed to promote equity across all home and community-based services, efficiency, economy, quality of care and access to services." Ex. S-Z, PLTF-0042281[122]

180.    For certain  CFI  waiver  program  services,  DHHS  "manually  prices"  the reimbursement rate, which means DHHS will consider information or quotes demonstrating the market rate for the service and will set the reimbursement rate at a competitive rate based on that market information. Ex. S-W, Aultman Second Declaration ¶ 16, May 29, 2023.[123]

182.    According to the DHHS Medicaid Director, if there is a Medicare rate for a service, then DHHS would be hard pressed to justify to CMS why DHHS paid more than Medicare. But if there is no Medicare rate, then DHHS can look at a number of "different measures" including the "commercial  market." *Id.*  Lipman Dep. at 137:16-138:6.[124]

185.    Before the new He-E 310 rule, DHHS "did not have a dedicated phone line for filing or issuing a grievance. We did not have a dedicated email ...  for filing a grievance." *Id.*  [ Ex. S-G, Aultman 30(b)(6) Dep.] at 89:21-90:4; 91:6-8.[125]

186.    Instead, DHHS would receive phone calls from individuals receiving services, case management  agencies,  provider  agencies,  family  members,  the  governor's  office,  other  state representatives, and the commissioner's office. *Id.*  at 90:7-13.[126]

---

[121] The parties agree that this fact is undisputed. Doc. 223-2 at 32; Doc. 228-1 at 13.
[122] The parties agree that this fact is undisputed. Doc. 223-2 at 32; Doc. 228-1 at 13.
[123] The parties agree that this fact is undisputed. Doc. 223-2 at 32; Doc. 228-1 at 13.
[124] The parties agree that this fact is undisputed. Doc. 223-2 at 32; Doc. 228-1 at 13.
[125] The parties agree that this fact is undisputed. Doc. 223-2 at 33; Doc. 228-1 at 14.
[126] The parties agree that this fact is undisputed. Doc. 223-2 at 33; Doc. 228-1 at 14.

187.    Currently, staff within the BAAS share responsibility for logging grievances in their internal shared drive. *Id.* at 101:1-9.[127]

188.    The person that logs the grievance is responsible for determining whether they need to follow up with the case management agency. *Id.* at 104:17-105:4. Accepted clarification: that the person who logs the grievance is initially responsible. The BAAS Bureau Chief and the CFI Administrator monitor the log and may request that staff follow up with the case management agency.[128]

189.    When the person investigating a grievance finds that a service provider failed to come in when expected, DHHS would make a referral to licensing or a referral to health facilities. *Id.* at 107:1-18.[129]

190.    Licensing would investigate whether or not the provider agency fulfilled the requirements under the administrative rules. *Id.* at 107:19 - 108:4-7.[130]

191.    "[I]f a provider agency is unable to fulfill the needs of an enrolled individual, then they would need to formally discharge that person and go through the formal discharge process." *Id.* at 111:8-12.[131]

193.    DHHS's 30(b)(6) witness BAAS Bureau Chief Wendi Aultman testified that "I don't believe we have anything in our administrative rules or statute or in policy that identifies a time frame" for how long a CFI participant can wait to receive authorized services. *Id.* at 188:10- 12. Accepted clarification: that there are formal timelines related to eligibility and enrollment determinations, care plan creation, and service authorizations.[132]

---

[127] The parties agree that this fact is undisputed. Doc. 223-2 at 33; Doc. 228-1 at 14.
[128] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font. Doc. 223-2 at 33-34; Doc. 228-2 at 3.
[129] The parties agree that this fact is undisputed. Doc. 223-2 at 34; Doc. 228-1 at 14.
[130] The parties agree that this fact is undisputed. Doc. 223-2 at 34; Doc. 228-1 at 14.
[131] The parties agree that this fact is undisputed. Doc. 223-2 at 34; Doc. 228-1 at 14.
[132] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font. Doc. 223-2 at 34; Doc. 228-2 at 3.

194.    DHHS has implemented a "provider not available" marker in the service authorization system to "electronically identify CFI Waiver participants who may face service gaps." Ex. S-A, Def Suppl. Interr. at 8, April 14, 2025.[133]

195.    DHHS depends on case management agencies to enter the "provider-not-available" marker in the service authorization system. Ex. S-G, Aultman 30(b)(6) Dep. at 190:19-191:3, 66:9-67:1, Dec. 4, 2024.[134]

196.    There is no time limit or cap on the amount of time that a service authorization can be associated with a provider-not-available code. *Id.* at 191:16-21.[135]

197.    "[T]he [DHHS] staff try to have service-provider-not-available indicators resolved through the case management agency. It's not typically something that we would jump to taking action on the part of the unit because that takes away resources from processing and -- and other elements. We want to try to ensure that the case management agencies are doing what they can and doing what they're obligated to do per role." *Id.* at 205:6-15.[136]

199.    DHHS recognizes it does have the responsibility "to monitor the waiver participants and the performance of case management agencies to ensure that the services that are authorized are [] meeting the needs of individuals." Ex. S-G, Aultman 30(b)(6) Dep. at 50:7-22, Dec. 4, 2024.

Accepted clarification: that DHHS recognizes this responsibility as a policy matter, but disputed to the extent the statement suggests that such a "responsibility" is legally required by the ADA, the Rehabilitation Act, the Medicaid Act, or any other statute.[137]

200.    The DHHS Medicaid Management Information System or "MMIS" is used for Medicaid claims payment. Ex. S-X, Kerri King Deposition ("King Dep.")(December 9, 2022), at

---

[133] The parties agree that this fact is undisputed. Doc. 223-2 at 34; Doc. 228-1 at 14.
[134] The parties agree that this fact is undisputed. Doc. 223-2 at 34; Doc. 228-1 at 14.
[135] The parties agree that this fact is undisputed. Doc. 223-2 at 35; Doc. 228-1 at 15.
[136] The parties agree that this fact is undisputed. Doc. 223-2 at 35; Doc. 228-1 at 15.
[137] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font. Doc. 223-2 at 35; Doc. 228-2 at 3.

25:3- 26:20.[138]

201.    DHHS can run reports in the MMIS to compare paid claims against the services that DHHS authorized. *Id.* at 26:2-23. Accepted clarification:  that such reports do not reflect "real time" data and may be weeks or months old.[139]

202.    According to Wendi Aultman, "it could be impossible to know [for] every -- every single participant at every moment in time whether or not they receive their service and how or why the individual did not receive their service." Ex. S-G, Aultman 30(b)(6) Dep. at 117:5-13.[140]

203.    Wendi Aultman does acknowledge that it would "potentially" be possible for DHHS to identify CFI participants who missed a week of their services, but "there would need to be a reason" why DHHS "would be looking for that information." *Id.* at 120:21 - 122:14.[141]

204.    DHHS does not run reports on CFI participants who have missed a week of their services. *Id.* at 123:20-124:3.[142]

205.    DHHS is able to pull reports related to services it authorized to compare to the Medicaid claims requested against those authorizations." *Id.* at 55:22-56:3. Accepted clarification: that such reports do not reflect "real time" data and may be weeks or months old.[143]

212.    BAAS Director Aultman has looked at data on use of the provider-not-available code five or less times in the past year. Ex. S-G, Aultman 30(b)(6) Dep. at 194:6-12.[144]

214.    DHHS does not have any policy setting a time frame for how long a service authorization can be associated with a "Provider Not Available" code. Ex. S-N, Aultman Dep. I")

---

[138] The parties agree that this fact is undisputed. Doc. 223-2 at 35; Doc. 228-1 at 15.
[139] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font. Doc. 223-2 at 35; Doc. 228-2 at 4.
[140] The parties agree that this fact is undisputed. Doc. 223-2 at 36; Doc. 228-1 at 15.
[141] The parties agree that this fact is undisputed. Doc. 223-2 at 36; Doc. 228-1 at 15.
[142] The parties agree that this fact is undisputed. Doc. 223-2 at 36; Doc. 228-1 at 15.
[143] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font. Doc. 223-2 at 36; Doc. 228-2 at 4.
[144] The parties agree that this fact is undisputed. Doc. 223-2 at 37; Doc. 228-1 at 15.

at 107:1-5.[145]

216.    The report pulling data for CFI participants who had hospital stays is not a report DHHS regularly produces. Ex. S-G, Wendi Aultman 30(b)(6) Dep. at 211:20 –212:19, Dec. 4, 2014. One such report is Bates No. NHDHHS1946632. See *Id.* at 209:3-212:19.[146]

217.    BAAS's Information Technology Manager has only reported MMIS data related to the number of CFI participants admitted to nursing facilities for litigation purposes. Ex. S-I, Bhusari Dep. at 106:2-6.[147]

218.    BAAS's Information Technology Manager has only interacted with data concerning CFI participant hospital stays in the context of this litigation. *Id.* at 159:18-160:1.[148]

219.    BAAS's Information Technology Manager does not interact with any data concerning CFI Participants who leave the Waiver for a nursing facility placement. *Id.* at 149:3-7.[149]

220.    BAAS's Information Technology Manager does not compile data concerning a service provider's discharge of CFI participants from any source. *Id.* at 144:16-19, 164:9-11.[150]

221.    As of the date of her deposition, BAAS's Information Technology Manager does not compile any data concerning CFI service provider capacity or availability from any source. *Id.* at 144:20-146: 17.[151]

222.    On a quarterly or "every other month" basis, BAAS's Information Technology Manager compiles a list of CFI providers with their address and email information so that the DHHS has current email information for sending out notices. *Id.* at 147:6-148: 18.[152]

---

[145] The parties agree that this fact is undisputed. Doc. 223-2 at 37; Doc. 228-1 at 16.
[146] Doc. 223-2 at 35; Doc. 228-1 at 16.
[147] The parties agree that this fact is undisputed. Doc. 223-2 at 38; Doc. 228-1 at 16.
[148] The parties agree that this fact is undisputed. Doc. 223-2 at 38; Doc. 228-1 at 16.
[149] The parties agree that this fact is undisputed. Doc. 223-2 at 38; Doc. 228-1 at 16.
[150] The parties agree that this fact is undisputed. Doc. 223-2 at 38; Doc. 228-1 at 16.
[151] The parties agree that this fact is undisputed. Doc. 223-2 at 38; Doc. 228-1 at 16.
[152] The parties agree that this fact is undisputed. Doc. 223-2 at 38; Doc. 228-1 at 16.

223.    BAAS's Information Technology Manager does not interact with any data concerning CFI service provider unavailability. *Id.* at 156:2-10.[153]

224.    BAAS's Information Technology Manager has never seen data concerning a CFI participant's refusal of CFI services. *Id.* at 167:19-22.[154]

225.    BAAS's Information Technology Manager has never looked at data concerning job benefits for CFI service providers. *Id.* at 194:11-21.[155]

226.    APS asks for data on CFI participants approximately three to five times per year. *Id.* at 210:6 - 18.[156]

228.    "[E]lectronic visit verification is a mechanism and tool that allows for provider agencies to enter information about services or visits in the home that are provided. It's only for certain services that are provided within the home. It's not for the full menu of CFI services or state plan services. And it is used to verify that a visit has been made, and that data and information is provided to the department through its vendored EVV system." Ex. S-G, Aultman 30(b)(6) Dep. at 70:10-20.[157]

229.    According to the CFI Waiver, DHHS has initiated an electronic visit verification program, the stated goals of which include: "[e]nsuring individuals receive the services that they are authorized to receive in order to stay healthy and safe in the community." Ex. S-E, Waiver Application at 201-202.[158]

230.    When DHHS requested approval for its EVV contract from Governor Sununu and the Executive Council on September 2, 2022, DHHS stated as an objective for the EVV that it "[e]nsure individuals receive the services they are authorized to receive." Ex. S-Y, Requested

---

[153] The parties agree that this fact is undisputed. Doc. 223-2 at 38; Doc. 228-1 at 16.
[154] The parties agree that this fact is undisputed. Doc. 223-2 at 39; Doc. 228-1 at 17.
[155] The parties agree that this fact is undisputed. Doc. 223-2 at 39; Doc. 228-1 at 17.
[156] The parties agree that this fact is undisputed. Doc. 223-2 at 39; Doc. 228-1 at 17.
[157] The parties agree that this fact is undisputed. Doc. 223-2 at 39; Doc. 228-1 at 17.
[158] The parties agree that this fact is undisputed. Doc. 223-2 at 39; Doc. 228-1 at 17.

Action, at 2.[159]

235.    When asked "Are you using the EVV system to monitor in real time whether participants in the CFI program are getting their authorized services?" DHHS's 30(b)(6) witness Wendi Aultman answered "I don't know." Ex. S-G, Aultman 30(b)(6) Dep. at 77:2-16.[160]

239.    Case management agencies are expected to find CFI service providers for the participants that they're assigned to serve. Ex. S-G, Aultman 30(b)(6) Dep. at 29:2-6.[161]

240.    When a case management agency cannot find a service provider, "typically what will happen is they will consult with the department. We have monthly meetings where concerns or issues may come up. We call them technical assistance meetings." *Id.* at 29:7-17.[162]

241.    The DDHS case consultation review form is the specific DHHS policy that tells the case management agency what to do if they cannot find a service provider. *Id.* at 31:4-15. Accepted clarifications:  that "DDHS" should be "DHHS" and that the case review and consultation form is accompanied by instructions and policy that further detail the actions DHHS expects a provider to take if they cannot find a service provider.[163]

242.    The DHHS Case Review and Consultation Committee ("CRCC") meets every two weeks to review referrals and schedule meetings. *Id.* at 231:20- 2:3-5.[164]

243.    CFI participants are not guaranteed that their case will be heard at the monthly convening of the CRCC due to scheduling constraints .. . .DHHS could hold more CRCC meetings if demand increases. Ex. S-F, Ickes Dep. at 228:5-230:10.[165]

244.    When a case management agency tells DHHS they cannot find a provider, DHHS

---

[159] The parties agree that this fact is undisputed. Doc. 223-2 at 39; Doc. 228-1 at 17.
[160] The parties agree that this fact is undisputed. Doc. 223-2 at 41; Doc. 228-1 at 17.
[161] The parties agree that this fact is undisputed. Doc. 223-2 at 41; Doc. 228-1 at 18.
[162] The parties agree that this fact is undisputed. Doc. 223-2 at 41; Doc. 228-1 at 18.
[163] The Defendants' clarifications, which Plaintiffs accepted, is shown in blue font. Doc. 223-2 at 42; Doc. 228-2 at 4.
[164] The parties agree that this fact is undisputed. Doc. 223-2 at 42; Doc. 228-1 at 18.
[165] The parties agree that this fact is undisputed. Doc. 223-2 at 42; Doc. 228-1 at 18.

asks "probing questions" and for additional documentation on contingency planning and comprehensive care plan documents. Then DHHS will talk with the agency about other options and provide guidance. Ex. S-G, Aultman 30(b)(6) Dep. at 31:21 - 32:9.[166]

245.    On a monthly basis, DHHS "ask[s] [case management agencies] if there's any potential concerns or issues with CFI participants they're serving that need to be brought to our attention." *Id.* at 122:8-11.[167]

246.    If a CFI participant who is not receiving their authorized services is involved with Adult Protective Services ("APS"), APS may play a role in finding a provider or mitigating a barrier to getting services. *Id.* at 226:22- 227-16.[168]

247.    APS does not have authority to find a provider for a CFI participant. *Id* at 228:4-14.[169]

248.    Sentinel event reports are required when "someone has been injured, at risk of injury, police involvement, things like that," with case management agencies and some mental health providers as mandatory reporters. Ex. S-F, Ickes Dep. at 157:7-158: 12; 159:9-160:4. Accepted clarification: that the Sentinel Event Policy outlines when sentinel events must be reported to DHHS.[170]

249.    DHHS reviews a sentinel event report when DHHS receives one. However, sentinel events are sometimes missed due to late reports or lack of awareness by case management agencies. *Id.* at 161:1-163:7, 164:19-166:4.[171]

251.    DHHS does not log calls from case management agencies requesting assistance

---

[166] The parties agree that this fact is undisputed. Doc. 223-2 at 42; Doc. 228-1 at 18.
[167] The parties agree that this fact is undisputed. Doc. 223-2 at 42; Doc. 228-1 at 18.
[168] The parties agree that this fact is undisputed. Doc. 223-2 at 42; Doc. 228-1 at 19.
[169] The parties agree that this fact is undisputed. Doc. 223-2 at 42; Doc. 228-1 at 19.
[170] The Defendants' clarification, which Plaintiffs accepted, is shown in blue font. Doc. 223-2 at 42-43; Doc. 228-2 at 4.
[171] The parties agree that this fact is undisputed. Doc. 223-2 at 43; Doc. 228-1 at 19.

with finding providers outside of the monthly technical assistance meetings. Ex. S-G, Aultman 30(b)(6) Dep. at 48:15- 49:2-3.[172]

253.    According to Wendi Aultman, "we do look at service utilization in terms of authorized versus claimed services in a way to monitor and follow up when there are questions or indicators that may lead to us asking case management agencies to address needs or things that we're seeing and provide answers as to why we're seeing things that we're seeing." *Id.* at 280:17- 281:2.[173]

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td>Dated: October 27, 2025</td><td>EMILY FITZMORRIS, and KATHLEEN BATES<br>on behalf of themselves and all others similarly situated,<br><br>By Their Attorneys,</td></tr>
</table>

---

[172] The parties agree that this fact is undisputed. Doc. 223-2 at 43; Doc. 228-1 at 19.
[173] The parties agree that this fact is undisputed. Doc. 223-2 at 43; Doc. 228-1 at 19.

/s/ Cheryl Steinberg
Cheryl S. Steinberg (#10063)
NEW HAMPSHIRE LEGAL
ASSISTANCE
117 N. State Street
Concord, NH
03301
T: (603) 206-2210
csteinberg@nhla.org

Kay E.Drought
(#12851)
Jessica Morrissey-Jeffery
(#271978)
NEW HAMPSHIRE LEGAL
ASSISTANCE
154 High Street
Portsmouth, NH 0380 I
T: (603) 206-2253
kdrought@nhla.org
jmorrissey@nhla.org

Kierstan Schultz
Kierstan E. Schultz (#20682)
kschultz@nixonpeabody.com
W. Daniel Deane (#18700)
ddeane@nixonpeabody.com
Mark Tyler Knights (#670991)
mknights@nixonpeabody.com
Tammy Nguyen
tnguyen@nixonpeabody.com
NIXON PEABODY LLP
900 Elm Street, 14th Floor
Manchester, NH 0310 I
T: (603) 628-4000
F: (603) 628-4040

/s/ Jennifer Eber
Jennifer Eber (#8775)
Hannah Roberts (#272288)
jennifere@drcnh.org
hannahr@drcnh.org
DISABILITY RIGHTS
CENTER-
NEW HAMPSHIRE
64 North Main Street, Suite 2
Concord, NH 03301
T: (603) 228-0432
F: (603) 225-2077

Kelly Bagby
Kelly Bagby *pro hac vice*
Maame Gyamfi *pro hac vice*
Stefan Shaibani *pro hac vice*
Samantha Wehrle, *pro hac vice*
kbagby@aarp.org
mgyamfi@aarp.org
sshaibani@aarp.org
sgerleman@aarp.org
AARP
FOUNDATION
601 E Street NW
Washington, DC 20049
T: (202) 434-2103
F: (202) 434-6622

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the ___ day of October, 2025 the foregoing court paper will be filed through the ECF system and served electronically on the registered participants identified on the Notice of Electronic Filing (NEF).


Dated:  October __27__, 2025          _/s/ Kay E. Drought
                                        Kay E. Drought