**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

EMILY FITZMORRIS, ET AL.,

Case No. 21-cv-25-PB

Plaintiffs,

vs.

NEW HAMPSHIRE DEPARTMENT OF HEALTH AND HUMAN SERVICES, COMMISSIONER, ET AL.,

Defendants.

# PLAINTIFFS' UNOPPOSED MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

**Page(s)**


I. Introduction ..... 1

II. History of the Litigation ..... 3

A. Defendants' Motion to Dismiss and Defendants' Answer ..... 4

B. The Discovery Process ..... 4

C. The Parties' Reliance on Expert Witnesses ..... 5

D. Dismissal of the Medicaid and Constitutional Claims ..... 5

E. The Plaintiffs' Motion and Renewed Motion for Class Certification ..... 6

F. The Parties' Cross-Motions for Summary Judgment ..... 7

G. The Parties' July and August 2026 Trial Briefing ..... 8

H. The Parties' Settlement Efforts ..... 8

III. Summary of the Proposed Class Action Settlement ..... 9

A. Building an Adequate Provider Network ..... 9

B. Adjusting CFI Reimbursement Rates ..... 9

C. Maintaining an Online Portal and Directory of CFI Providers ..... 10

D. Identifying and Remedying Class Members Missing Authorized Services ..... 10

E. Expanding the Grievance System to Address Lack of Authorized CFI Services ..... 11

F. Creating Contingency Plans for Back-Up Coverage ..... 11

G. Reporting Data ..... 12

H. Miscellaneous Provisions ..... 12

IV. The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Preliminarily Approved ..... 12

A. The Class Representatives and Class Counsel Have Adequately Represented the Class and the Settlement was Negotiated at Arm's Length ..... 14

B. The Relief Provided to the Class is Adequate ..... 16

C. The Settlement Treats the Class Members Equitably to One Another ..... 17

V. The Proposed Class Notice and Notice Plan Satisfy Both Rule 23(e) and Due Process Requirements ..... 18

VI. Conclusion ..... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Cohen v. Brown Univ.*,
16 F.4th 935 (1st Cir. 2021), *cert. denied sub nom. Walsh v. Cohen*, --- U.S. ---, 142 S. Ct. 2667 (2022) .......... 14, 15

*Grenier v. Granite State Credit Union*,
344 F.R.D. 356 (D.N.H. 2023) (McCafferty, J.) .......... 13, 14

*Medina v. Planned Parenthood South Atlantic*,
606 U.S. 357 .......... 6

*Rapuano v. Trs. of Dartmouth Coll.*,
334 F.R.D. 637 (D.N.H. 2020) (McCafferty, J.) .......... 13, 14

*Robinson v. Nat'l Student Clearinghouse*,
14 F.4th 56 (1st Cir. 2021) .......... 16

*Yaffe v. Powers*,
454 F.2d 1362 (1st Cir. 1972) .......... 18

**Federal Statutes**

42 U.S.C. § 1983 .......... 1, 6

Americans with Disabilities Act Title II (ADA), 42 U.S.C. § 12131 et seq., § 504 of the Rehabilitation Act, 29 U.S.C. § 794 .......... *passim*

Medicaid Act, 42 U.S.C. § 1396 et seq. .......... *passim*

**Rules**

Federal Rule of Civil Procedure 23(c)(2)(A) .......... 18

Federal Rule of Civil Procedure 23(c)(2)(B) .......... 18

Federal Rule of Civil Procedure 23(e)(1)(A) .......... 18

Federal Rule of Civil Procedure 23(e)(1)(B) .......... 18, 19

Federal Rule of Civil Procedure 23(e)(2) .......... 3, 12

**Constitutional Provisions**

U.S. Constitution Fourteenth Amendment Due Process Clause .......... 1, 4

Named Plaintiffs Emily Fitzmorris and Kathleen Bates (Plaintiffs), on their own behalf and on behalf of the class certified by this Honorable Court on November 27, 2023 (collectively, the Class), submit this memorandum of law in support of Plaintiffs' and Defendants' (collectively, the Parties) Joint Motion for Preliminary Approval of Proposed Class Action Settlement. In support of that motion, Plaintiffs state as follows:

## I. Introduction

As detailed below, Plaintiffs filed this lawsuit on behalf of themselves and on behalf of the Class on January 11, 2021. Doc. 1. Plaintiffs requested declaratory and injunctive relief against Defendants, the New Hampshire Department of Health and Human Services (DHHS) and its Commissioner — then Lori Shibinette, now Lori Weaver — asserting claims under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, the Medicaid Act, 42 U.S.C. § 1396 et seq., and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Id*. Plaintiffs brought their Medicaid and Constitutional claims as civil rights claims pursuant to 42 U.S.C. § 1983. *Id*. The claims arose from issues with the New Hampshire Choices for Independence (CFI) program administered by DHHS. Plaintiffs asserted that DHHS's administration and management of the CFI program was causing CFI participants to face a heightened risk of unnecessary institutionalization contrary to Title II of the ADA and Section 504 of the Rehabilitation Act. *See generally* Doc. 1. Plaintiffs further asserted that Defendants were violating their rights under the Medicaid Act and the Due Process Clause of the U.S. Constitution. *Id*.[1]

As set forth in detail below, the Proposed Class Action Settlement (Settlement) merits preliminary approval. The Settlement addresses Plaintiffs' claims by, inter alia: (1) requiring

---

[1] The Medicaid Act and Due Process claims were later dismissed from the litigation. *See* Section II (D).

DHHS, with the aid of a Consultant, to analyze whether the CFI provider network is sufficient to meet the needs of CFI participants on both a state and county-wide basis, *see* Proposed Class Action Settlement, Exhibit 1 of the Joint Motion for Preliminary Approval (Ex. 1) at 4-5; (2) requiring DHHS to engage in a comprehensive review of CFI reimbursement rates and seeking legislative appropriations for rate increases recommended by those reviews, *id*. at 5-6; (3) requiring the creation and maintenance of an online portal of CFI providers to be available to CFI Case Management Agencies (CMA) and case managers, *id*. at 6-7; (4) requiring DHHS to identify Class Members[2] who have received less than 50% of “Hands-On CFI Services”[3] and to then take steps to connect those individual Class Members to CFI providers, *id*. at 7-8; (5) expanding the existing DHHS grievance process for CFI participants not receiving authorized CFI services, *id*. at 8-9; and (6) requiring DHHS to have oversight over CFI participant contingency plans, *id*. at 9. The Settlement also creates a reporting requirement and includes other miscellaneous terms to ensure that DHHS comes into and remains in compliance with the Settlement. *Id*. at 9-13.

The Settlement was reached after over five years of litigation, including a motion for class certification, a renewed motion for class certification, an interlocutory appeal to the Court of Appeals for the First Circuit, and cross motions for summary judgment, as well as two separate attempts at mediation in 2024 and 2026. The Parties reached agreement on a Settlement

---

[2] “Class Members” means CFI Waiver participants “who, during the pendency of this lawsuit, have been placed at serious risk of unjustified institutionalization because Defendants, by act or omission, fail to ensure that the CFI participants receive the community-based long term care services and supports through the waiver program for which they have been found eligible and assessed to need.” *See* Doc. 165 at 79.

[3] Plaintiffs’ medical expert, Dr. Mattan Schuchman, identified four services that, if not provided, place Class Members at serious risk of institutionalization. Doc. 165 at 26. Those four services (Hands-On CFI Services) are “personal care services, home maker services, skilled nursing services, and home care aide assistance.” *Id.*

Term Sheet (Term Sheet) on September 4, 2026, after extensive discovery, litigation, and arm's length negotiations. In short, the Settlement is "fair, reasonable, and adequate" and is likely to receive final approval pursuant to Federal Rule of Civil Procedure 23(e)(2). Accordingly, the Court should grant the Parties' request for preliminary approval and order the relief requested in the Joint Motion for Preliminary Approval of Proposed Class Action Settlement.

## II. History of the Litigation

On January 11, 2021, four Named Plaintiffs initiated this federal class action lawsuit on behalf of people participating in the CFI program. The four Named Plaintiffs were Stephanie Price, Emily Fitzmorris, Kathleen Bates, and Paul Scott. Doc. 1. Paul Scott passed away on February 22, 2021. Doc. 20. Stephanie Price submitted a Stipulation of Dismissal as a Named Plaintiff on November 4, 2022. Doc. 90. CFI participants Emily Fitzmorris and Kathleen Bates have served as Named Plaintiffs throughout this litigation. Doc. 1 – Doc. 281.

The Named Plaintiffs filed this litigation against DHHS and its Commissioner, alleging that CFI participants did not receive the CFI services that DHHS authorized and that they needed to remain safe in their homes and communities. Doc. 1. In their Complaint, Plaintiffs raised seven Counts:

- Counts I and III: Defendants' actions have placed the Plaintiffs and the Class at risk of unnecessary institutionalization in nursing facilities, hospitals, or similar facilities to obtain long-term care services, in violation of the integration mandates of the ADA and the Rehabilitation Act. Doc. 1 at 35, 37.

- Counts II and IV: Defendants use criteria and methods of administering the CFI program that subject Plaintiffs and the Class to discrimination on the basis of disability, in violation of the ADA and the Rehabilitation Act. Doc. 1 at 36, 38.

- Count V: By failing to provide CFI Waiver services to the Plaintiffs and the Class with reasonable promptness, or at all, the Defendant Commissioner violates the Medicaid reasonable promptness statute and its implementing regulations. Doc. 1 at 38.

- Counts VI and VII: By failing to provide Plaintiffs and the Class with written notices when CFI participants do not receive their authorized services, the Defendant Commissioner violates their rights under the Medicaid fair hearing statute and the United States Constitution. Doc. 1 at 40-41.

### A. Defendants' Motion to Dismiss and Defendants' Answer

On March 22, 2021, Defendants filed their motion to dismiss the lawsuit in its entirety. Doc. 23. Defendants raised multiple arguments in support of dismissal, including lack of liability for the actions of third-party licensees and that Plaintiffs' Medicaid and Fourteenth Amendment claims fail for lack of state action. *Id*. Plaintiffs filed an objection on April 30, 2021. Doc. 26. The Court held a hearing on June 28, 2021. On November 18, 2021, the Court issued its Memorandum and Order denying Defendants' Motion to Dismiss. Doc. 41 at 38. Defendants filed their Answer to the Complaint on December 20, 2021. Doc. 45. Defendants generally denied all of Plaintiffs' allegations. *Id*. Defendants further raised eighteen separate affirmative defenses. *Id*. at 20 – 23.

### B. The Discovery Process

Beginning with the Parties' Discovery Plan (Doc. 32) filed on June 25, 2021, and extending through August 28, 2026, the Parties conducted extensive discovery, including but not limited to:

- The Parties engaged in repeated negotiations about the discovery of Electronically Stored Information (ESI). They negotiated and filed a Joint Motion for Protective Order (Doc. 33); a Joint Motion for Order on Stipulation on Remote Deposition Protocols (Doc. 35); and a Stipulation Regarding Production of Electronically Stored Information (Doc. 38).

- Plaintiffs promulgated three sets of interrogatories, six sets of requests for production, and two sets of requests for admissions. Defendants promulgated seven sets of interrogatories, five sets of requests for production, and one set of requests for admissions.

- Plaintiffs conducted numerous fact witness and third-party depositions, including multiple Rule 30(b)(6) depositions.

- Plaintiffs and Defendants each exchanged expert reports and conducted a round of expert depositions. The Parties also exchanged supplemental expert reports and, in some instances, conducted a second round of expert depositions.

**C. The Parties' Reliance on Expert Witnesses**

The Parties relied heavily on expert witnesses during the class certification, summary judgment, and trial preparation stages of this litigation. Plaintiffs and Defendants both filed numerous motions to exclude or limit the opinions or testimony of the other's experts.

Plaintiffs relied on:

- Dr. Mattan Schuchman, a physician;
- Dr. David Blanchflower, a labor economist;
- Michael Petron, a statistician; and
- Nancy Weston and Randy Webster, former Massachusetts government officials.

Defendants relied on:

- Dr. David Polakoff, a physician;
- Dr. Alan Salzberg, a statistician;
- Leesa Allen, a former Pennsylvania government official; and
- Lisa Dunham, a current DHHS employee.

**D. Dismissal of the Medicaid and Constitutional Claims**

On November 22, 2022, Defendants filed a motion for summary judgment on Counts VI and VII of the Complaint — claims relating to how Class Members have the right to a written notice and a Fair Hearing when they do not receive authorized CFI services. Doc. 101. Plaintiffs contested the Defendants' motion. Doc. 112. On March 28, 2023, the Court granted the Defendants' motion and dismissed Counts VI and VII from this lawsuit. Doc. 126.

Later in the litigation, on July 18, 2025, Plaintiffs moved for a voluntary dismissal without prejudice of their Medicaid reasonable promptness claim, Count V. Doc. 230. Plaintiffs cited to the June 26, 2025, U.S. Supreme Court decision in *Medina v. Planned Parenthood South Atlantic*, 606 U.S. 357, holding that there is no private right of action under 42 U.S.C. § 1983 for Medicaid beneficiaries to enforce the "any-qualified-provider" provision of the Medicaid Act. Defendants objected, seeking dismissal with prejudice. Doc. 237. On March 31, 2026, the Court granted Plaintiffs' motion and dismissed Count V without prejudice. Plaintiffs proceeded to litigate Counts I through IV of their Complaint — the claims brought under the ADA and the Rehabilitation Act.

**E. The Plaintiffs' Motion and Renewed Motion for Class Certification**

Plaintiffs filed a motion for class certification on August 29, 2022 (Doc. 80), and then a renewed motion for class certification on May 15, 2023 (Doc. 134). Defendants opposed both motions. Doc. 96; Doc. 140. On December 21, 2022, the United States Department of Justice filed a Statement of Interest in Support of Class Certification. Doc. 106.

The Court held hearings on each of those motions. On April 14, 2023, the Court issued a Memorandum and Order denying Plaintiffs' Motion for Class Certification without prejudice. Doc. 127. Then on November 27, 2023, the Court issued a second Memorandum and Order, granting Plaintiffs' renewed motion for class certification. Doc. 165. The Court ruled as follows:

The [C]ourt certifies the class of:

> CFI Waiver participants who, during the pendency of this lawsuit, have been placed at serious risk of unjustified institutionalization because Defendants, by act or omission, fail to ensure that the CFI participants receive the community-based long term care services and supports through the waiver program for which they have been found eligible and assessed to need.
>
> Plaintiffs Emily Fitzmorris and Kathleen Bates are appointed as class representatives, and their chosen counsel are appointed as class counsel.

*Id.* at 79.

Defendants responded to the class certification order through an attempted interlocutory appeal with the United States Court of Appeals for the First Circuit.

On December 11, 2023, Defendants filed their Petition for Permission to Appeal Under Federal Rule of Civil Procedure 23(f) with the United States Court of Appeals for the First Circuit in what became Case 23-8047. That same month, Plaintiffs filed their Answer in Opposition to Defendants' Rule 23(f) Petition for Permission to Appeal. Contemporaneously on December 11, 2023, Defendants filed their Motion to Stay Proceedings Pending Appeal in this federal district court. Doc. 166. Plaintiffs objected. Doc. 168. On January 22, 2024, this Court denied Defendants' Motion to Stay without prejudice. Doc. 170.

On February 21, 2024, the Court of Appeals issued Judgment denying Defendants' attempted interlocutory appeal of the class certification decision:

> Pursuant to Fed. R. Civ. P. 23(f), the defendant-petitioners seek leave from this court to appeal the district court's grant of class certification. We conclude that the requirements for interlocutory review of a class certification ruling have not been met here. *See Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 293-94 (1st Cir. 2000) (setting out factors to be considered when deciding whether to allow review pursuant to Rule 23(f)). Accordingly, the petition for leave to appeal is DENIED.

Doc. 174.

**F. The Parties' Cross-Motions for Summary Judgment**

On May 15, 2025, Plaintiffs filed a Motion for Partial Summary Judgment. Doc. 199. Defendants filed a Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment. Doc. 233. Plaintiffs and Defendants each filed replies, *see* Doc. 229, 235 and amici filed an Amicus Brief in support of Plaintiffs' Motion for Partial Summary Judgment. *See* Doc. 236-2; and Doc 239. On April 17, 2026, the Court issued a Memorandum Opinion denying the Parties' cross motions for summary judgment. Doc. 261 at 53.

**G. The Parties' July and August 2026 Trial Briefing**

In preparation for the November 9, 2026, trial date and pursuant to the Court's May 22, 2026, Scheduling Order (Doc. 266), during the summer of 2026 the Parties each filed detailed legal trial memoranda and extensive factual/evidence summaries. Doc. 271 (Plaintiffs' Evidence in Support of Plaintiffs' Requested Injunctive Relief); Doc. 272 (Plaintiffs' Memorandum of Law In Support of their Requested Injunctive Relief); Doc. 275 (Defendants' Trial Memorandum Regarding Plaintiffs' Requested Injunctive Relief); Doc. 275-1 (Defendants' Statement of Facts and Citations to Evidence in Support of Defendants' Trial Memorandum Regarding Plaintiffs' Requested Injunctive Relief).

**H. The Parties' Settlement Efforts**

In both 2024 and 2026, the Parties participated in Court-ordered mediation conducted by U.S. Magistrate Judge Johnstone. Plaintiffs had representation from all four Class Counsel law firms during each mediation. In 2024, Judge Johnstone conducted mediation sessions from May 2, 2024, through July 30, 2024, before concluding that the "parties were unable to resolve their differences." Doc. 189. The case then returned to active litigation. In 2026, Magistrate Judge Johnstone conducted multiple mediation sessions from August 6, 2026, through September 4, 2026. On September 4, 2026, the Parties reached a tentative settlement agreement and memorialized it in a Term Sheet. The Term Sheet required approval from the necessary party representatives. On September 14, 2026, the Parties notified the Court that they had obtained the necessary approvals for the Term Sheet. Doc. 280. The Parties then drafted and agreed to a Proposed Class Action Settlement based on the Term Sheet. Contemporaneously, the Parties filed their Joint Motion for Preliminary Approval of Class Action Settlement, including as Exhibit 1 their Proposed Class Action Settlement.

## III. Summary of the Proposed Class Action Settlement

Plaintiffs asserted in their Complaint that the administration of the CFI program was leading to delayed or missing authorized services (Service Gaps). *See generally* Doc. 1. Plaintiffs assert that factors leading to Service Gaps include: (1) workforce shortages related to CFI reimbursement rates; (2) lack of real time information concerning CFI service provider availability – leading to difficulty connecting CFI participants with service providers; (3) inadequate contingency plans — documents that identify alternative workers when the regularly scheduled worker is unavailable — that can leave CFI participants without critical services; and (4) lack of accountability for DHHS and CMAs to identify and assist CFI participants experiencing Service Gaps. Doc. 261 at 29, 32, 35, 37. The terms of the Proposed Class Action Settlement (Settlement) are designed to address the identified factors that lead to Service Gaps with respect to the essential services. The Settlement includes the provisions below.

### A. Building an Adequate Provider Network

On an annual basis, DHHS must prepare a comprehensive analysis to determine whether the CFI service provider network "meets the aggregate authorized service needs of CFI Participants." Ex. 1 (Sec. II (A)). This comprehensive analysis will be based on agreed-to information such as county-by-county analysis of the Hands-On CFI Services that DHHS authorizes compared to the Hands-On CFI Services that CFI participants actually receive. *Id*. (Sec. II (A)(1-7)). If the comprehensive analysis shows that the provider network is insufficient to meet the needs of CFI participants either by state or county, then DHHS must take agreed-to steps to increase the CFI reimbursement rates. *Id*. (Sec. II (C)). DHHS has agreed to hire a Third-Party Consultant to conduct this comprehensive analysis. *Id*. (Sec. II (A)).

### B. Adjusting CFI Reimbursement Rates

DHHS has represented that it recently performed an inflation adjustment analysis of CFI

reimbursement rates and sought legislative appropriations to implement the inflation adjustment. *Id.* (Sec. III (A), (B)). DHHS will perform a comprehensive reimbursement rate review for CFI services, including by using New Hampshire specific data to reflect this State's own labor markets. *Id.* (Sec. III (A), (D)). If the reimbursement rate review recommends any rate adjustments, DHHS must seek legislative appropriations to fund rate increases. *Id.* (Sec. III (B)).

DHHS also agreed to make "specialized rates" easier for CFI CMAs and CFI participants to request and obtain when the CFI participant lacks a CFI provider. *Id.* (Sec. III (F)). DHHS will require CMAs to contact fewer providers than they were previously required to before they may seek a Specialized Rate, and DHHS must approve or deny a Specialized Rate request within three (3) business days. *Id.*

**C. Maintaining an Online Portal and Directory of CFI Providers**

DHHS agrees to maintain and provide information to CFI CMAs about which CFI providers have availability to provide authorized services. *Id.* (Sec. IV (A -D)). This information will be made available through an online provider portal that details: (1) CFI provider name; (2) contact information, including phone number and email; (3) website; (4) whether the CFI provider is accepting new clients, including any restrictions on availability; (5) counties served; and (6) types of services provided. *Id.* (Sec. IV (C-E)). Once active and available to the public as an online directory, the information must be searchable, accessible, and be updated monthly. *Id.* (Sec. IV (C), (E)).

**D. Identifying and Remedying Class Members Missing Authorized Services**

The Settlement creates an affirmative duty on DHHS to identify CFI participants receiving fewer than 50% of Hands-On CFI Services — see footnote 3 above. *Id.* (Sec. I (W), Sec. V (A)). Once identified, DHHS must notify the individual Class Member's CMA and then take possible additional steps to assist the Class Members experiencing Service Gaps. *Id.* (Sec. V

(B)). CMAs have three (3) business days to find a CFI provider, after which DHHS itself will have five (5) business days to take steps to find a CFI provider for the CFI participant missing authorized services. *Id*. (Sec. V (C-D)). If necessary, DHHS can approve specialized rates in order to recruit a CFI provider. *Id*. (Sec. V (D)).

### E. Expanding the Grievance System to Address Lack of Authorized CFI Services

DHHS agreed to provide notice to all CFI participants of its grievance procedure within ninety (90) days of Court approval of the Settlement. *Id*. (Sec. VI (A)). For any grievance filed, DHHS is required to contact the participant filing the grievance and, if appropriate, take steps to cure any Service Gaps identified through the filing of the grievance. *Id*. (Sec. VI (C)). In addition, DHHS shall propose an administrative rule requiring CMAs to use the "provider not available code" — a code within DHHS's NEW HEIGHTS computer system for CMAs to indicate that they have not located a service provider — when they are submitting a request for service authorization. DHHS will review the "provider not available" codes on a weekly basis and will then take additional steps to assist the Class Members who lack providers. *Id*. (Sec. VI (E)). Plaintiffs anticipate that the grievance system and the use of the "provider not available" code will allow for greater and earlier detection of when CFI participants are missing service providers to deliver their authorized services.

### F. Creating Contingency Plans for Back-Up Coverage

The Settlement creates a duty for DHHS to develop a plan to review contingency plans for CFI participants as part of its regular oversight activities. *Id*. (Sec. VII (A)). Those contingency plans are required to list alternative providers when the scheduled provider is unavailable. *See* AR He-E 805.02(1)(1). DHHS shall identify any deficient contingency plans and require CMAs to resolve those deficiencies. Ex. 1 (Sec. VII (B)).

### G. Reporting Data

Every six months, while the Settlement is in effect, DHHS will provide data and reporting to the Third-Party Consultant and to Class Counsel showing its progress under the Settlement. *Id*. (Sec. VIII (A-C)).

### H. Miscellaneous Provisions

While the Settlement is in effect, DHHS agrees not to seek to end the CFI program in New Hampshire. *Id*. (Sec. IX (D)). DHHS will hire a Third-Party Consultant to assist in implementing the terms of the Settlement. *Id*. (Sec. IX (F)). DHHS agrees that it cannot shield itself from responsibility for any alleged noncompliance with the Settlement by blaming the Third-Party Consultant or any other third party it has contracted with, or assigned duties to, under the Settlement. *Id*. (Sec. IX (H)). DHHS will pay all reasonable fees and costs of the Third-Party Consultant, up to $175,000 per year, for a total of $700,000. *Id*. (Sec. IX (G)). In addition, DHHS agrees to pay Class Counsel a total of $4,000,000 to reflect reasonable fees and costs expended through the litigation. *Id*. (Sec. IX (K)). DHHS will pay an additional $60,000 per year for four (4) years to Class Counsel for ongoing fees and costs. *Id*. The Settlement shall terminate four (4) years after the date of final approval by this Court. *Id*. (Sec. IX (J)). Certain provisions of the Settlement may be extended for an additional two (2) years by motion of Plaintiffs if DHHS is unable to secure requested appropriations from the General Court. *Id*. Lastly, the Settlement puts forth the procedure for dispute resolution and enforcement of the Settlement. *Id*. (Sec. X (A-D)).

## IV. The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Preliminarily Approved

When the parties to a class action lawsuit reach a settlement agreement, that agreement must be approved by the District Court before it goes into effect. *See* Fed. R. Civ. P. 23(e)(2).

"Courts approve class action settlements in stages." *Grenier v. Granite State Credit Union*, 344 F.R.D. 356, 362 (D.N.H. 2023) (McCafferty, J.). To receive final approval of a settlement agreement, the parties must first "present a proposed settlement to the court for 'preliminary approval' and ask the court to make a preliminary determination regarding class certification." *Rapuano v. Trs. of Dartmouth Coll.*, 334 F.R.D. 637, 642 (D.N.H. 2020) (McCafferty, J.).

This Court has already certified the Class and appointed four law firms (AARP Foundation, Disability Rights Center – New Hampshire, Nixon Peabody LLP, and New Hampshire Legal Assistance) as Class Counsel to represent the Class. Doc. 165. While the Court may "apply the criteria differently" depending on whether certifying a class for litigation or for settlement purposes, the requirements of Rule 23 are the same. *Rapuano*, 334 F.R.D. at 643 ("To certify either a settlement class or a litigation class, the court must find that the requirements of Federal Rule of Civil Procedure 23 are met . . . . Although these requirements apply to both settlement and litigation class certifications, a district court should apply the criteria differently depending on the purpose of certification."). "[W]hen considering whether to certify a class for the purposes of settlement only, a court 'need not inquire whether the case, if tried, would present intractable management problems.'" *Id*. at 643-44 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). However, the district court must be mindful of "overbroad class definitions" and give "undiluted, even heightened attention" to the class definition in the settlement context. *Id*. at 644 (quoting *Amchem*, 521 U.S. at 620).

The class definition for the purpose of settlement remains unchanged from that of the definition for purposes of litigation. As such, Plaintiffs incorporate by reference all arguments presented in favor of class certification contained in Plaintiffs' Renewed Motion to Certify Class and all related documents. *See* Doc 134. The circumstances and legal framework underlying the

Court's Class Certification remain unchanged, and there is no challenge to class certification for the purposes of settlement. The Class will have ample opportunity to learn more about the Settlement and file any objections they may have during the approval process. As such, the Court should reaffirm the certification of the Class for settlement purposes. *See* Doc. 165.

After the Court certifies the Class for settlement purposes, the Court must determine whether it "'will likely be able to' . . . approve the settlement proposal under Rule 23(e)(2)." *Rapuano* at 642 (quoting Fed. R. Civ. P. 23(e)(1)(b)). In order for the Court to preliminarily approve the Settlement, it must find that "the settlement is fair, reasonable, and adequate." *Id*. at 643. In conducting this inquiry, the Court "should consider the adequacy of representation and of the relief offered under the proposal, whether 'the proposal was negotiated at arm's length,' and whether 'the proposal treats class members equitably relative to each other.'" *Grenier*, 344 F.R.D. at 366 (quoting Fed. R. Civ. P. 23(e)(2)). "When 'the parties negotiated at arm's length and conducted sufficient discovery,' there is a presumption that a negotiated settlement is within the range of reasonableness." *Id*. (quoting *Cohen v. Brown Univ.*, 16 F.4th 935, 951 (1st Cir. 2021), *cert. denied sub nom. Walsh v. Cohen*, --- U.S. ----, 142 S. Ct. 2667 (2022)). As set forth in detail above, the Parties negotiated after a lengthy and significant discovery process and at arm's length through the mediation process. All four law firms appointed as Class Counsel participated on behalf of the Plaintiffs and the Class throughout the lengthy settlement and mediation processes. Accordingly, the presumption of reasonableness should apply. *Id*.

### A. The Class Representatives and Class Counsel Have Adequately Represented the Class and the Settlement was Negotiated at Arm's Length

The purpose of the "adequacy inquiry" is to "uncover conflicts of interest between named parties and the class they seek to represent." *Cohen*, 16 F.4th at 945 (quoting *Amchem*, 521 U.S. at 625). The Due Process Clause "requires that the named plaintiff at all times adequately

represent the interests of the absent class members." *Id.* (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)).

Here, there is no conflict of interest between Class Members. The Class is comprised of:

> CFI Waiver participants who, during the pendency of this lawsuit, have been placed at serious risk of unjustified institutionalization because Defendants, by act or omission, fail to ensure that the CFI participants receive the community-based long term care services and supports through the waiver program for which they have been found eligible and assessed to need.

Doc. 165 at 79. The proposed relief does not bind Class Members to any particular action. Class Members who would prefer to obtain their CFI Services through DHHS's person-directed model rather than an agency-directed model, for example, are not barred from doing so under the Settlement. Rather, the Settlement imposes a duty on DHHS to take new measures so that Class Members who are at risk of institutionalization have more robust opportunities to remain in the community.

In addition, Class Counsel has fairly and adequately represented Plaintiffs and the Class throughout the litigation and settlement process. Class Counsel is comprised of highly qualified and experienced attorneys from AARP Foundation, New Hampshire Legal Assistance, Disability Rights Center - New Hampshire, and Nixon Peabody LLP, well respected local and national law firms. As described in detail in Section II above, Class Counsel fully and fairly litigated the case, substantially succeeding at the motion to dismiss, class certification, and summary judgment stages of the litigation. Class Counsel engaged in extensive discovery, retaining experts and deposing the Defendants' experts at several stages of the litigation. Further, Class Counsel entered into mediation in good faith, and fully and fairly represented the interests of Named Plaintiffs and the Class Members through the mediation process.

Further, the Settlement was reached only after over five years of litigation, substantial

discovery, including expert depositions, and after extensive mediation ordered by the Court and presided over by Magistrate Judge Johnstone. The Settlement does provide for the payment of $4,000,000 in attorneys' fees and costs to Class Counsel; however, the amount represents only a portion of the time and costs expended on this litigation by Class Counsel.[4] Attorneys' fees and costs were negotiated in mediation after the Parties had reached substantial agreement on the other terms of the Settlement.

### B. The Relief Provided to the Class is Adequate

In determining whether the relief provided by a settlement agreement is adequate, the Court must consider "a 'laundry list[] of factors' pertaining to the reasonableness of a class action settlement, but 'the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Robinson v. Nat'l Student Clearinghouse*, 14 F.4th 56, 59 (1st Cir. 2021) (alteration in original) (quoting *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009)).

Here, the Settlement provides substantial benefit to the Class. As described in detail in Section III above, the Settlement requires DHHS to, among other things: (1) take steps to improve the CFI provider network to meet the needs of CFI participants; (2) examine and seek to improve reimbursement rates paid for CFI services; (3) refrain from seeking to end an optional Medicaid program during a time of national retrenchment in Medicaid spending; (4) establish a transparent and continuously updated list of available CFI providers, which will allow CFI

[4] According to the Parties' proposed schedule set forth in their Joint Motion, on or before December 22, 2026 Plaintiffs will file their Motion and Memorandum of Law in support of the agreed-to Attorneys' Fees and Costs.

participants or CMAs to more easily establish care by granting them access to information about providers available in their area; (5) maintain oversight so that deficient contingency plans are remedied; and (6) establish a grievance policy to allow Class Members to have Service Gaps addressed more immediately. The Settlement also establishes several mechanisms by which DHHS must identify Class Members and provide them additional support to remain in the community. Under the Settlement, relief would begin to flow to the Class Members beginning ninety (90) days from the date of this Court's final approval with additional benchmarks over the following year. It will also allow Class Counsel to monitor and, if necessary, enforce compliance with the terms of the Settlement while the Court retains jurisdiction.

In contrast, there is substantial risk to the Class of not having the Settlement approved. If the case were to go to trial, there are risks associated with litigation, including delay of any order taking effect through the trial process and any associated appeals. Mediation was attempted and failed once before in this litigation, so there is no guarantee that future or further negotiations would result in any greater relief for the Class. Given the demographics of the Class Member population — a population which includes older Granite Staters with disabilities — further delay or uncertainty of relief could have grave consequences. In light of the competing factors and the relief provided by the Settlement, the Settlement is fair and adequate to meet the needs of the Class.

### C. The Settlement Treats the Class Members Equitably to One Another

As explained above, the Class is comprised of CFI participants who meet the definition set forth in footnote 2 above. Under the Settlement, all members of that Class will be treated equally. The Named Plaintiffs will obtain no benefit other than the relief provided to all members of the Class. There is no differentiation within the Class predicated on any possible differentiating factor, for example, amount of total services authorized, rurality of location, or

historical availability of providers. Rather, DHHS has an affirmative duty under the Settlement to take action regarding CFI participants who are not receiving their authorized services, including identifying *anyone* who is receiving less than 50% of their authorized Hands-on CFI Services and to take steps to address those Service Gaps. Likewise, the other provisions of the Settlement benefit all Class Members.

## V. The Proposed Class Notice and Notice Plan Satisfy Both Rule 23(e) and Due Process Requirements

For a class certified under Rule 23(b)(2), notice to class members during litigation is discretionary. Rule 23(c)(2)(A) provides that "the court may direct appropriate notice to the class[,]" in contrast to the mandatory individual notice required for (b)(3) classes under Rule 23(c)(2)(B). *See Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) (holding that "notice to the members of a (b)(2) class is not required and the actual membership of the class need not therefore be precisely delimited"); *see also* Doc. 165 at 15-17 (this Court's discussion of the (b)(2) notice standard, relying on *Yaffe*).

At the preliminary approval stage, notice to the class should be approved based upon information provided to the Court sufficient to enable it to determine that notice is appropriate. Fed. R. Civ. P. 23(e)(1)(A). Once the Court has determined that it will likely be able to approve the proposal under Rule 23(e)(2), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal[….]" Fed. R. Civ. P. 23(e)(1)(B). This "reasonable manner" standard governs here – without the additional "best notice that is practicable under the circumstances" and individual notice standards applicable to (b)(3) classes. *See* Fed. R. Civ. P. 23(c)(2)(B). Because this Court has already certified the Class for litigation purposes (Doc. 165), and the Class definition for settlement purposes remains unchanged, the Court need only confirm that the Class remains certifiable for settlement purposes before

directing notice. LR 23.1(b)(2) adds the requirement that the Proposed Notice Order must "describe the form, manner, and time by which the class shall be notified of the proposed settlement and the time by which any objections to the proposed settlement shall be filed with the court[.]" The notice plan, as described herein, meets these local requirements and the substantive standard under Rule 23(e)(1)(B).

The Parties have agreed that DHHS, which has a repository of the contact information for CFI participants, shall send the Proposed Class Notice, attached to the Joint Motion for Preliminary Approval as Exhibit 1A, to all CFI participants who were enrolled in the program between January 11, 2021 and the date when the Court approves the Proposed Class Notice, in two parts. First, DHHS will identify all CFI participants who have opted into "going paperless" by receiving communication from DHHS via their NH EASY account. Ex. 1 (Sec. XI (G)). For those individuals who opted in to electronic communication, DHHS will send the Class Notice to those CFI participants or to their authorized representative via NH EASY. Second, DHHS will send notice by first class U.S. mail to the last known address of participants who did not voluntarily opt to "go paperless" (or to their authorized representative). *Id.* (Sec. XI (H)). Class Notices will be disseminated by November 6, 2026. The Proposed Class Notice includes (1) contact information for Class Counsel who can respond to questions or concerns from Class Members and CFI participants, and (2) instructions for submitting a written objection to the proposed Class Action Settlement together with the Court's mailing address and the objection deadline of December 7, 2026. *See* Proposed Class Notice, Exhibit 1A.

Through the Parties' Proposed Class Notice methods, the Court can be reasonably sure that all Class Members will receive real or constructive notice of the proposed Settlement.

## VI. Conclusion

For the foregoing reasons, Plaintiffs request that the Court grant all the relief requested in the Parties' Joint Motion for Preliminary Approval of Proposed Class Action Settlement.

Dated: October 5, 2026

Plaintiffs EMILY FITZMORRIS and KATHLEEN BATES, on behalf of themselves and all others similarly situated,

By their attorneys,

By: */s/ Mark Tyler Knights*
Mark Tyler Knights Esq.

Mark Tyler Knights (D.N.H. Bar #670991)
W. Daniel Deane (N.H. Bar #18700)
Kierstan E. Schultz (N.H. Bar #20682)
NIXON PEABODY LLP
900 Elm Street, 14th Floor
Manchester, NH 03101
T: (603) 628-4000
mknights@nixonpeabody.com
ddeane@nixonpeabody.com
kschultz@nixonpeabody.com

Kelly Bagby (*pro hac vice*)
Maame Gayamfi (*pro hac vice*)
Stefan Shaibani (*pro hac vice*)
Samantha Wehrle (*pro hac vice*)
AARP FOUNDATION
601 E Street NW
Washington, DC 20049
T: (202) 434-2060
kbagby@aarp.org
mgyamfi@aarp.org
sshaibani@aarp.org
swehrle@aarp.org

Kay E. Drought (#12851)
Alexandra Gennaro (#272324)
NEW HAMPSHIRE LEGAL ASSISTANCE
154 High Street
Portsmouth, NH 03801
T: (603) 206-2253
kdrought@nhla.org
agennaro@nhla.org

Jennifer A. Eber (#8775)
Hannah Roberts (#272288)
DISABILITY RIGHTS CENTER-NEW HAMPSHIRE
64 North Main Street, Suite 2
Concord, NH 03301
T: (603) 228-0432
jennifere@drcnh.org
hannahr@drcnha.org

**CERTIFICATE OF SERVICE**

I, Mark Tyler Knights, hereby certify that the foregoing pleading was filed through the Doc. system and served electronically on the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: October 5, 2026

*/s/ Mark Tyler Knights*
Mark Tyler Knights, Esq.